

# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

MOHAMMAD AMIN KAKEH
Vs.                                                  C.A. No.    2005 CA 004101 B
UNITED PLANNING ORGANIZATION, INC.

## INITIAL ORDER

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("SCR Civ") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the Summons, the Complaint, and this Initial Order, and any General Order issued by the judge to whom the case is assigned. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in SCR Civ 4(o).

(3) Within 20 days of service as described above, except as otherwise noted in SCR Civ 12, each defendant must respond to the Complaint by filing an Answer or other responsive reading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in SCR Civ 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge as an Initial Scheduling and Settlement Conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Civil Assignment Office (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than six business days before the scheduling conference date. No other continuance of the conference will be granted except upon motion for good cause shown.

Chief Judge Rufus G. King, III

Case Assigned to: Judge JOHN M CAMPBELL

Initial Conference: 9:30 am, Friday, September 02, 2005
Location:  Courtroom 517
           500 Indiana Avenue N.W.
           WASHINGTON, DC 20001

**FILED**
JUN 2 4 2005
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Caio.doc

CA Form 1

# Superior Court of the District of Columbia
## CIVIL DIVISION
500 Indiana Avenue, N.W., Room JM-170
Washington, D.C. 20001  Telephone: 879-1133

Mohammad Amin Kakeh
*Plaintiff*

vs.

United Planning Organization
*Defendant*

Civil Action No. 0004101-05

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government you have 60 days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Room JM 170 at 500 Indiana Avenue, N.W. between 9:00 am. and 4:00 pm., Mondays through Fridays or between 9:00 am. and 12:00 Noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

*Clerk of the Court*

Omar Melehy
Name of Plaintiff's Attorney

8403 Colesville Road, Suite 610
Address
Silver Spring, MD 20910

301-587-6364
Telephone

By: [signature]

Date: May 31, 2005

PUEDE OBTENERSE COPIAS DE ESTE FORMULARIO EN ESPANOL EN EL TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA, 500 INDIANA AVENUE, N.W., SALA JM 170

YOU MAY OBTAIN A COPY OF THIS FORM IN SPANISH AT THE SUPERIOR COURT OF D.C., 500 INDIANA AVENUE, N.W., ROOM JM 170

NOTE: SEE IMPORTANT INFORMATION ON BACK OF THIS FORM.

IMPORTANT: IF YOU FAIL TO SERVE AND FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, DO NOT *FAIL TO ANSWER WITHIN THE REQUIRED TIME*

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (628-1161) or the Neighborhood Legal Services (682-2700) for help or come to Room JM 170 at 500 Indiana Avenue, N.W., for more information concerning where you may ask for such help.

IN THE SUPERIOR COURT OF THE
DISTRICT OF COLUMBIA

MOHAMMAD AMIN KAKEH
7050 Leestone Street
Springfield, Virginia 22151

    Plaintiff,

v.

UNITED PLANNING ORGANIZATION, INC.
301 Rhode Island Avenue, N.W.
Washington, D.C. 20001

Serve:
    Dana M. Jones
    Interim Chief Executive Officer
    United Planning Organization
    301 Rhode Island Avenue, NW
    Washington, DC 20001-1826,

    Defendant.

0004101-05

CASE NO. _____



RECEIVED
CIVIL CLERK'S OFFICE
MAY 3 1 2005
SUPERIOR COURT
OF THE DISTRICT OF COLUMBIA
WASHINGTON, DC

## COMPLAINT

Plaintiff, Mohammad Amin Kakeh, by and through his undersigned counsel, Zipin & Melehy, LLC, hereby brings suit against Defendant United Planning Organization. Plaintiff alleges as follows:

### JURISDICTION

1.     Plaintiff brings suit against Defendants retaliation in violation of the Employees of District Contractors and Instrumentality Whistleblower Protection provisions set forth at DC ST §§ 2-223.01 through 2-223.07, common law wrongful discharge and retaliation for engaging in protected activity in violation of the District of Columbia Human Rights Act of 1977, as amended, DC ST § 2-1402.11(a)(1).

2.  The Jurisdiction of this Court is based upon DC ST § 11-921.

## VENUE

3.  Defendant United Planning Organization ("Defendant") is a private non-profit corporation that maintains its principal offices and does business in the District of Columbia.

4.  At all times relevant to this case, Plaintiff was employed by Defendant, United Planning Organization at its District of Columbia office.

5.  The cause of action arose in the District of Columbia, and the Defendant, United Planning Organization, maintained offices and conducted business in the District of Columbia, making venue proper in this Court.

## FACTS

6.  Defendant provides community based anti-poverty services to citizens of the District of Columbia. It is funded primarily by grants from the District of Columbia government and the federal government. At all times relevant to this law suit, Defendant was a contractor of the District of Columbia government within the meaning of D.C. ST. § 2-223.01. Defendant entered into a contract with the District of Columbia to administer the Headstart program, a program providing educational services to pre-school children from low income families. This program is funded by federal funds which are disbursed directly from the federal government to the Defendant through a grant and also by District of Columbia funds which are disbursed directly to the Defendant in the form a grant. Defendant also entered into a contract with the District of Columbia to administer the Community Service Block Grant ("CSBG"), a program funded by federal funds which are funneled to Defendant through the District of Columbia government. Defendant also has a contract with the District of Columbia Office on Aging to administer services for the elderly. The funding for this

2

program comes from the District of Columbia government which disburses these funds directly to Defendant. Defendant also has other contacts with the District of Columbia government for other services, which are funded in whole or in part by the District of Columbia.

7. Plaintiff began his employment with Defendant on June 28, 1998 as the Controller.

8. Plaintiff's job functions included establishing and maintaining the Organization's accounting principles, practices, and procedures; preparing financial reports and presenting subsequent findings and recommendations to top management; oversight of the computer accounting system; management of the cash flow and the revenue activities; preparation of overall financial statements annually and otherwise; preparation of the audit schedule and oversight of the audit preparation; management of the Organization's budget including all related disbursements and reporting requirements; acting as chief financial adviser to the Organization's managers and executives; development and training of staff; and design and operation of accounting computerized system.

9. On April 1, 2003, Defendant appointed Sheila Shears ("Shears") to the position of Chief Financial Officer. Shears did not meet the qualifications for the position. Defendant's Executive Director, Benjamin Jennings ("Jennings") hired Shears.

10. On June 6, 2003 Defendant's Deputy Director, Gladys Mack ("Mack") officially stripped Plaintiff of his duties during a manager's meeting. Specifically, Plaintiff was no longer invited to financial meetings, he was taken off the distribution list, and he was stripped of his authority and duties as Controller. Although Plaintiff still retained the title of Controller, his position was reduced to work in a more clerical capacity.

11. On October 3, 2003, Plaintiff wrote a memorandum to the Executive Director entitled "Controller's Status Alert". This memorandum alerted the Executive Director about the seriousness of the Defendant's financial operations and solvency. The Plaintiff also complained that he was being deprived of financial information necessary for him to carry out his job duties. Specifically, Plaintiff complained that he was not assisted by Shears, that he was no longer involved in meetings where Defendant's finances were discussed, that he was being denied information that was essential to the performance of his job, that his position had been reduced to a clerical position and that he had been stripped of his authority.

12. On October 20, 2003, Plaintiff sent a memorandum entitled "Urgent Request for Budget and Financial Information" to Mack and he carbon copied Jennings and Defendant's General Counsel. In this memorandum, Plaintiff complained about the fact that Defendant was depriving him of information necessary to perform the duties of his position as Controller.

13. In 2003, Plaintiff learned facts which caused him to reasonably believe that Defendant had engaged in the following: gross mismanagement in connection with the administration of a public program or the execution of a public contract; gross misuse or waste of public resources or funds; abuse of authority in connection with the administration of a public program or the execution of a public contract; and a violations of contractual terms and state, local and federal laws within the meaning of D.C. ST. § 2-223.01. Such actions shall hereinafter be referred to as "fraud, waste and abuse." Plaintiff's discovery of fraud, waste and abuse, included but was not limited to, the following, by way of example: (1) that employees or company officials were incurring exorbitant cellular telephone bills; (2) that money was paid to consultants of the Defendant, but the funds paid were not properly accounted for; (3) that the Defendant incurred $50,000 in questionable expenses

4

including expenditures for parking tickets, vehicle fines, consulting services and travel; (4) that Defendant provided luxury vehicles to the Board Chairman and Jennings; (5) that Jennings purchased a 46-foot fishing boat for his own personal use with Defendant's funds; (6) that Jennings incurred $221,000 in charges on Defendant's credit cards; (7) that Defendant awarded a contract non-competitively to Watkins Security, a company owned by a Board Member Richard Hamilton; (8) a large deficit had been incurred by the Defendant and (8) other fraud, waste and abuse.

14. Beginning in February, 2004, Plaintiff began making protected disclosures to public bodies as defined by D.C. ST § 2-223.01, by reporting Defendant's fraud, waste and abuse to public bodies and/or agencies of both the District of Columbia and the federal government.

15. For example, prior to February 10, 2004, Plaintiff contacted Mr. Tunde Eboda ("Eboda"), a Program Manager for the District of Columbia Department of Human Services, a public body within the meaning of D.C. ST § 2-223.01, and requested that Eboda meet with him to discuss his allegations that Defendant committed fraud, waste and abuse. Eboda was a member, agent, servant, or otherwise employed by a public body and Plaintiff's protected disclosures to him were disclosures to a public body. On February 10, 2004, Plaintiff met with Eboda at a location away from Defendant's office. During this meeting, Plaintiff informed Eboda of Defendant's fraud, waste and abuse. Eboda requested an official visit at Defendant's office to investigate Plaintiff's claims and requested a government audit.

16. On February 12, 2004, Plaintiff met with Dennis Ramprashad ("Ramprashad"), Director of Audit, and Nuhaylatta Idrisu ("Idrisu"), two auditors employed by Thompson, Cobb, Brazilio, and Associates, P.C. Defendant had hired Thompson, Cobb, Braxilio and Associates, P.C. to audit its financial records. Ramprashad and Idrisu were agents of a public body or supervisors

5

within the meaning of D.C. ST § 2-223.01. At this meeting, Plaintiff made public disclosures of his allegations that Defendant engaged in fraud, waste and abuse.

17. On February 16, 2004, Plaintiff spoke with Eboda and arranged to meet him at Plaintiff's office on February 19, 2004 concerning Plaintiff's allegations that Defendant had committed fraud, waste and abuse. On February 19, 2004, Plaintiff met with Eboda and Eboda's assistant at Plaintiff's office to discuss and review the evidence Plaintiff possessed which related to Defendant's fraud, waste and abuse. Eboda's assistant was a member, agent or servant of a public body or was otherwise employed by a public body. During this meeting, Plaintiff made protected disclosures of his allegations that Defendant had committed fraud, waste and abuse. Defendant became aware of Plaintiff's protected disclosures to a public body on or prior to February, 2004. On or about February 19, 2004, Eboda met with Shears and Mack, at different times, and discussed the Plaintiff's allegations that Defendant committed fraud, waste and abuse.

18. On March 1, 2004, Plaintiff met with Eboda, Eboda's assistant, and several auditors who were employed or commissioned by the District of Columbia Department of Human Services. The auditors were members, agents or otherwise employed by a public body. The meeting took place at Plaintiff's office. During this meeting, Plaintiff made protected disclosures to Eboda, Eboda's assistant and the auditors that Defendant had engaged in fraud, waste and abuse.

19. On March 3, 2004, Plaintiff met with Ramprashad, Eboda, and several auditors. The independent auditors accompanying them were members or agents of a public body. At this meeting, Plaintiff made protected disclosures to Ramprashad, Eboda and the auditors of his allegations of fraud, waste and abuse by the Defendant. The same day, Mack requested that Plaintiff alter one of

6

Defendant's financial statements to conceal the Defendant's fraud, waste and abuse. Plaintiff communicated to Mack that he would not alter or change the financial statement.

20. On or about March 11, 2004, as a result of Plaintiff's protected disclosure of fraud, waste and abuse, Defendant placed Jennings on administrative leave pending investigation.

21. On March 17, 2004, Plaintiff met with Eboda and two auditors from the Headstart program, members, agents or contractors of a public body within the meaning of D.C. ST § 2-223.01, to discuss Plaintiff's allegations that Defendant had committed fraud, waste and abuse. During this meeting, Plaintiff made protected disclosures of his allegations that Defendant engaged in fraud, waste and abuse.

22. On March 18, 2004, Eboda met with Defendant's Board of Trustees and provided the results of an audit which demonstrated that Defendant had engaged in fraud, waste and abuse. The delivery of this audit report to the Board of Trustees was a direct and proximate result of the Plaintiff's protected disclosures to public bodies that Defendant engaged in fraud, waste and abuse.

23. On March 19, 2004, Plaintiff met with the auditors from the Headstart program to discuss his allegations that Defendant engaged in fraud, waste and abuse, as it related to the Headstart program. The auditors of the Headstart program were agents of public bodies and Plaintiff made protected disclosures to them of information related to his allegations that Defendant engaged in fraud, waste and abuse.

24. On or about March 25, 2004 Jennings was terminated from his position with Defendant. Subsequently, Dana Jones ("Jones") was appointed Interim Executive Director.

25. On March 31, 2004, Plaintiff filed a charge of discrimination against Defendant for discrimination on the basis of his race, color, gender, national origin and religion with the District of Columbia Office of Human Rights. He alleged a pattern of harassment and discriminatory treatment.

26. On April 27, 2004, District of Colombia Councilmember-At-Large David Catania, Chairman of the Committee on Public Services, issued a letter to Jones, informing him that the Committee was commencing an investigation into Plaintiff's allegations that Defendant had committed fraud, waste and abuse and requested that Defendant supply information and documents related to the allegations. Councilmember Catania's investigation was a direct and proximate result of the Plaintiff's protected disclosure to public bodies of his allegations that Defendant committed fraud, waste and abuse.

27. On May 3, 2004, as a result of Plaintiff's protected disclosure that Defendant had engaged in fraud, waste and abuse, Special Agent Kenneth L. Marty ("Marty") contacted Plaintiff. Marty was a Special Agent with the United States Department of Health and Human Services, Office of Inspector General, Office of Investigations, a public body within the meaning of D.C. ST § 2-223.01. Marty informed Plaintiff that he had been assigned to investigate Plaintiff's allegations that Defendant had engaged in fraud, waste and abuse. During the meeting, Plaintiff made protected disclosures to Marty that Defendant engaged in fraud, waste and abuse.

28. On May 4, 2004, at the request of Marty, Plaintiff met with Federal Bureau of Investigation Agent Duncan ("Duncan") during which he made protected disclosure to a public body that Defendant had engaged in fraud, waste and abuse. Marty and Duncan were agents or members of pubic bodies.

8

29. On May 6, 2004, Plaintiff met with Marty, Duncan, Assistant U.S. Attorney Debra Long-Doyle ("Doyle"), and FBI Agent Hans ("Hans"). Marty, Duncan, Long-Doyle and Hans were agents of public bodies. During the meeting, Plaintiff made protected disclosures of his allegations that Defendant committed fraud, waste and abuse by providing documents and information to support his allegations of fraud, waste and abuse.

30. On May 12, 2004 Plaintiff spoke with Junius Nottingham ("Nottingham"), from the Office of Inspector General for the District of Columbia government. At that time, Nottingham was an agent of a public body. During Plaintiff's conversation Plaintiff made protected disclosures of his allegations that Defendant engaged in fraud, waste and abuse.

31. On May 12, 2004 and May 19, 2004, Plaintiff provided Marty with documents related to the Plaintiff's allegations that Defendant committed fraud, waste and abuse. The delivery of documents constituted protected disclosures to a public body within the meaning of D.C. ST. § 2-223.01.

32. On or about May 28, 2004, Russell D. Simmons, President of Defendant's Board of Directors, resigned as a result of an investigation surrounding his inappropriate use of a Mercury Mountaineer SUV provided to him by the Defendant. This investigation was a direct and proximate result of Plaintiff's protected disclosures to public bodies regarding Defendant's fraud, waste and abuse.

33. On May 28, 2004, Plaintiff met with Marty and Hans for approximately three hours to discuss their investigation of Plaintiff's allegations that Defendant committed fraud, waste and abuse. At this meeting, Plaintiff made public disclosures by providing to Marty and Hans the names

9

of persons who had knowledge related to Plaintiff's allegations that Defendant committed fraud, waste and abuse.

34. On June 1, 2004 Marty, Hans and a government attorney visited Defendant's office for the express purpose of investigating Plaintiff's allegations that Defendant engaged in fraud, waste and abuse. This visit was a direct and proximate result of the Plaintiff's protected disclosure to public bodies of information related to the fraud, waste and abuse committed by the Defendant. In plain view and during regular working hours, Plaintiff escorted these persons into Defendant's building and took them directly to his office. Beckman witnessed Plaintiff escorting the investigators into the building, and followed them to Plaintiff's office. Plaintiff then took Marty, Hans and the attorney to meet Beckman and Darlene Booker, the Executive Assistant of Defendant. During the meeting with Beckman and Booker, Marty, Hans and the attorney discussed Plaintiff's allegations that Defendant engaged in fraud, waste and abuse. Later that day, Marty, Hans and the attorney met with Mack and Jones, during which they discussed the Plaintiff's allegations of fraud, waste and abuse.

35. On June 2, 2004, Marty, Hans and several other government officials came to Defendant's office. This visit was a direct and proximate result of the Plaintiff's protected disclosures to public bodies of information about the Defendant's fraud, waste and abuse. Plaintiff escorted them into the building in plain view and during regular working hours. Later that same day, Defendant drafted and signed a letter notifying Plaintiff that he would be terminated from his position as Controller effective the close of business on June 30, 2004. The letter also informed him he was immediately placed on administrative leave. The stated reason for his termination was a

reduction-in-force made necessary by a reorganization of the Defendant's Office of Finance. Plaintiff learned of his termination on June 2, 2004.

36. On or about June 18, 2004, Plaintiff amended his Charge of Discrimination filed with the District of Columbia Office of Human Rights to allege that Defendant retaliated against him, for the exercise of protected activity, by terminating his employment on June 2, 2004.

37. On March 30, 2005, Plaintiff withdrew his Charge of Discrimination with the District of Columbia Office of Human Rights.

## COUNT I
### (VIOLATIONS OF THE WHISTLEBLOWER STATUTE – VIOLATION OF THE D.C. CODE 2-223.02)

38. Paragraphs 1-37 of this Complaint are hereby incorporated by reference.

39. As alleged above, beginning in February, 2004 and continuing through June 2, 2004, Plaintiff made several protected disclosures to members or agents of public bodies within the meaning of D.C. ST. § 2-223.01 (7), regarding the fact that Defendant had engaged in fraud, waste and abuse. Plaintiff reasonably believed that his protected disclosures involved gross mismanagement in connection with the administration of a public program or the execution of a public contract and/or gross misuse or waste of public resources or funds and/or abuse of authority in connection with the administration of a public program or the execution of a public contract and/or violations of contractual terms and state, local and federal laws within the meaning of D.C. ST. § 2-223.01.

40. Defendant was aware of the fact that Plaintiff had made protected disclosures to public bodies. By terminating his employment on June 2, 2004, the Defendant took a prohibited

11

personnel action against Plaintiff and/or retaliated against him as a result, in whole or in part, of his protected disclosures to public bodies of his allegations that Defendant engaged in fraud, waste and abuse.

41.  Plaintiff has been damaged economically by the defendant's actions as he lost the income and benefits of his position. He has also suffered humiliation, embarrassment, loss of self esteem and has otherwise been damaged psychologically and emotionally by the Defendant's actions.

WHEREFORE, Plaintiff requests the following relief: (a) reinstatement to his former position with back pay and benefits; (b) such compensatory damages as a jury might award; (c) such punitive damages as a jury might award; (d) such economic damages as a jury might award; (e) such other damages as a jury might award; and (f) attorney's fees and costs.

## COUNT II
## (WRONGFUL DISCHARGE)

42.  Paragraphs 1-41 of this Complaint are hereby incorporated by reference.

43.  At all times relevant to this case, Plaintiff was an at will employee of Defendant.

44.  Beginning in February of 2004 and continuing until his termination on June 2, 2004 Plaintiff made a series of disclosures regarding Defendant's fraud, waste and abuse to both federal and District of Columbia officials. Defendant was aware of Plaintiff's disclosures. Plaintiff was terminated in whole or in part for making said disclosures which falls within the exception to the employee at will doctrine.

45.  Further, Defendant requested that Plaintiff produce a fraudulent financial statement in order to conceal Defendant's fraud, waste, and abuse, an act which Plaintiff reasonably believed to be unlawful. Plaintiff refused. Plaintiff's refusal to participate in this and other illegal activities

12

resulted, in whole or in part, in his termination. Such a termination falls within the public policy exception to the employment at will doctrine.

46. Plaintiff has been damaged economically by the defendant's actions, as he lost the income and benefits of his position. He also suffered humiliation, embarrassment, loss of self esteem and has otherwise been damaged psychologically and emotionally by the defendant's actions.

WHEREFORE, Plaintiff requests the following relief: (a) reinstatement to his former position with back pay and benefits; (b) such compensatory damages as a jury might award; (c) such punitive damages as a jury might award; (d) such economic damages as a jury might award; (e) such other damages as a jury might award; and (f) attorney's fees and costs.

## COUNT III
## (RETALIATION)

47. Paragraphs 1-46 of this Complaint are hereby incorporated by reference.

48. Plaintiff is a member of the following protected classes, Syrian, Caucasian, Male, Muslim and light skinned.

49. On March 31, 2004 Plaintiff engaged in protected activity by filing a charge of discrimination with the D.C. Office of Human Rights alleging a series of discriminatory actions and harassment taken against him on the basis of his race, color, national origin, gender, and religion. Shortly thereafter, Defendant became aware of Plaintiff's protected activity.

50. Defendant terminated Plaintiff on June 2, 2004. Plaintiff's termination was motivated in whole or in part by retaliatory animus against the Plaintiff for his engaging in protected activity and a causal connection exists between Plaintiff's protected activity and his termination.

13

51.  Plaintiff has been damaged economically by the defendant's actions. He has also suffered humiliation, embarrassment, loss of self esteem and has otherwise been damaged psychologically and emotionally by the defendant's actions.

WHEREFORE, Plaintiff, prays that this Court enter judgment against Defendant for the following: (a) reinstatement to his former position with back pay and benefits; (b) such compensatory damages as a jury might award; (c) such punitive damages as a jury might award; (d) such economic damages as a jury might award; (e) such other damages as a jury might award; and (f) attorney's fees and costs.

### JURY DEMAND

Plaintiff demands a trial by jury on all issues triable to a jury as a matter of right.

Respectfully Submitted,

*[signature]*

Omar Vincent Melehy, Esq.
D.C. Bar No. 415849
Zipin & Melehy, LLC
8403 Colesville Rd., Suite 610
Silver Spring, MD 20910
Phone: (301) 587-6364
Fax:   (301) 587-6308
Email: ovmelehy@zmdlaw.com

Attorney for Plaintiff

14