**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

Mohammed Amin Kakeh,

    *Plaintiff*,

  v.

United Planning Organization, Inc.,

    *Defendant*.

Civil Case No. 1:05-cv-1271

**PLAINTIFF'S SECOND AMENDED COMPLAINT**

Plaintiff, Mohammad Amin Kakeh, by and through his undersigned counsel, Zipin & Melehy, LLC hereby amends the existing complaint against Defendant, United Planning Organization, Inc. ("Defendant") In support of the Second Amended Complaint, Plaintiff alleges as follows:

**JURISDICTION**

1. Plaintiff initially brought suit against Defendant for: retaliation in violation of the Employees of District Contractors and Instrumentality Whistleblower Protection at DC ST §§ 2-223.01 through 2-223.07 (Count I); common law wrongful discharge (Count II); and retaliation for engaging in protected activity in violation of the District of Columbia Human Rights Act of 1977, as amended, DC ST § 2-1402.11(a)(1) (Count III).

2. In this Second Amended Complaint, Plaintiff brings suit against Defendant for retaliation in violation of the Federal False Claims Act Whistleblower Protection provision, 31 U.S.C. §3729(h) (hereinafter "Federal False Claims Act") (Count IV) and the District of Columbia False Claims Act, DC ST §2-308.16 (hereinafter "District of Columbia False Claims Act") (Count V).

3.  The Jurisdiction of this Court is based upon 28 U.S.C. §1331 relating to "any civil action or proceeding arising under any Act of Congress regulating commerce" and 28 U.S.C. §1332 relating to diversity of citizenship of the parties.

**VENUE**

4.  Defendant is a private non-profit corporation that maintains its principal offices and does business in the District of Columbia.

5.  At all times relevant to this case, Plaintiff was employed by Defendant at its District of Columbia office.

6.  The cause of action arose in the District of Columbia, and the Defendant maintained offices and conducted business in the District of Columbia.

7.  Venue is proper pursuant to 28 U.S.C. § 1391.

**FACTS**

8.  Defendant provides community based anti-poverty services to citizens of the District of Columbia. It is funded primarily by grants from the District of Columbia government and the federal government. At all times relevant to this law suit, Defendant was a contractor of the District of Columbia government within the meaning of DC ST. § 2-223.01. Defendant entered into a contract or contracts with the District of Columbia to administer the Headstart program, a program providing educational services to pre-school children from low income families. This program is funded by federal funds which are disbursed directly from the federal government to the Defendant through a grant and also by District of Columbia funds which are disbursed directly to the Defendant from the District of Columbia in the form a grant. Defendant also entered into a contract or contracts with the District of Columbia to administer the Community Service Block Grant ("CSBG"), a program funded by federal funds which are funneled to Defendant through the District

of Columbia government. Defendant also had or has a contract or contracts with the District of Columbia Office on Aging to administer services for the elderly. The funding for this program comes from the District of Columbia government which disburses these funds directly to Defendant. Defendant also had or has other contacts with the District of Columbia government for other services, which are funded in whole or in part by the District of Columbia and/or the Federal Government.

9. Plaintiff began his employment with Defendant on June 28, 1998 as the Controller.

10. Plaintiff's job functions included: establishing and maintaining the Organization's accounting principles, practices, and procedures; preparing financial reports and presenting subsequent findings and recommendations to top management; overseeing the computer accounting system; management of the cash flow and the revenue activities; preparing the overall financial statements annually and otherwise; preparing the audit schedule and oversight of the audit preparation; managing the Organization's budget including all related disbursements and reporting requirements; acting as chief financial adviser to the Organization's managers and executives; developing and training of staff; and designing and operating the computerized accounting system.

11. On April 1, 2003, Defendant appointed Sheila Shears ("Shears") to the position of Chief Financial Officer. Shears did not meet the qualifications for the position. Defendant's Executive Director, Benjamin Jennings ("Jennings") hired Shears.

12. On June 6, 2003 Defendant's Deputy Director, Gladys Mack ("Mack") officially stripped Plaintiff of his duties during a manager's meeting. Specifically, Plaintiff was no longer invited to financial meetings, he was taken off the distribution list, and he was stripped of his authority and duties as Controller. Although Plaintiff still retained the title of Controller, his position was reduced to work in a more clerical capacity.

13. On October 3, 2003, Plaintiff wrote a memorandum to the Executive Director entitled "Controller's Status Alert". This memorandum alerted the Executive Director about the seriousness of the Defendant's financial operations and solvency. The Plaintiff also complained that he was being deprived of financial information necessary for him to carry out his job duties. Specifically, Plaintiff complained that he was not assisted by Shears, that he was no longer involved in meetings where Defendant's finances were discussed, that he was being denied information that was essential to the performance of his job, that his position had been reduced to a clerical position and that he had been stripped of his authority.

14. On October 20, 2003, Plaintiff sent a memorandum entitled "Urgent Request for Budget and Financial Information" to Mack and carbon copied Jennings and Defendant's General Counsel. In this memorandum, Plaintiff complained about the fact that Defendant was depriving him of information necessary to perform the duties of his position as Controller.

15. In 2003, Plaintiff learned facts which caused him to reasonably believe that Defendant had engaged in the following: gross mismanagement in connection with the administration of a public program or the execution of a public contract; gross misuse or waste of public resources or funds; abuse of authority in connection with the administration of a public program or the execution of a public contract; and violations of contractual terms and state, local and federal laws within the meaning of DC ST § 2-223.01. Additionally, Plaintiff learned facts which caused him to reasonably believe that Defendant was engaged in knowingly presenting a false claim for payment or approval to the District of Columbia and United States governments; conspiring to defraud the District of Columbia and United States governments; and knowingly making and using a false record to make a claim against the United States government. Such actions, as described in the full text of this paragraph, shall hereinafter be referred to as "fraud, waste and abuse." Plaintiff's

discovery of fraud, waste and abuse, included but was not limited to, the following, by way of example: (1) that employees or company officials were incurring exorbitant cellular telephone bills; (2) that money was paid to consultants of the Defendant, but the funds paid were not properly accounted for; (3) that the Defendant incurred $50,000 in questionable expenses including expenditures for parking tickets, vehicle fines, consulting services and travel; (4) that Defendant provided luxury vehicles to the Board Chairman and Jennings; (5) that Jennings purchased or leased a 46-foot fishing boat for his own personal use with Defendant's funds; (6) that Jennings incurred $221,000 in inappropriate charges on Defendant's credit cards; (7) that Defendant awarded a contract non-competitively to Watkins Security, a company owned by a Board Member Richard Hamilton; (8) a large deficit had been incurred by the Defendant and (8) other fraud, waste and abuse.

16.     Beginning in February, 2004, Plaintiff began making protected disclosures to supervisors and public bodies as defined by DC ST § 2-223.01 by reporting Defendant's fraud, waste and abuse to public bodies and/or agencies of both the District of Columbia and the federal government. Plaintiff's acts were taken in furtherance of an action under 31 U.S.C. §3729(h) and DC ST §2-308.16 or constitute assistance in an action to be filed under 31 U.S.C. §3729(h) and DC ST §2-308.16.

17.     For example, prior to February 10, 2004, Plaintiff contacted Mr. Tunde Eboda ("Eboda"), a Program Manager for the District of Columbia Department of Human Services, a public body within the meaning of D.C. ST § 2-223.01, and requested that Eboda meet with him to discuss his allegations that Defendant committed fraud, waste and abuse. Eboda was a member, agent, servant, or otherwise employed by a public body. Plaintiff's protected disclosures to him were disclosures to a public body that provided assistance in an investigation of false claims. On

5

February 10, 2004, Plaintiff met with Eboda at a location away from Defendant's office. During this meeting, Plaintiff informed Eboda of Defendant's fraud, waste and abuse. Plaintiff's acts were taken in furtherance of an action under 31 U.S.C. §3729(h) and DC ST §2-308.16 or constitute assistance in an action to be filed under 31 U.S.C. §3729(h) and DC ST §2-308.16. Eboda requested an official visit at Defendant's office to investigate Plaintiff's claims and requested a government audit.

18.     On February 12, 2004, Plaintiff met with Dennis Ramprashad ("Ramprashad"), Director of Audit, and Nuhaylatta Idrisu ("Idrisu"), two auditors employed by Thompson, Cobb, Brazilio, and Associates, P.C. Defendant had hired Thompson, Cobb, Braxilio and Associates, P.C. to audit its financial records. Ramprashad and Idrisu were agents of a public body or supervisors within the meaning of D.C. ST § 2-223.01. At this meeting, Plaintiff made public disclosures of his allegations that Defendant engaged in fraud, waste and abuse. Plaintiff's acts were taken in furtherance of an action under 31 U.S.C. §3729(h) and DC ST §2-308.16 or constitute assistance in an action to be filed under 31 U.S.C. §3729(h) and DC ST §2-308.16.

19.     On February 16, 2004, Plaintiff spoke with Eboda and arranged to meet him at Plaintiff's office on February 19, 2004 concerning Plaintiff's allegations that Defendant had committed fraud, waste and abuse. On February 19, 2004, Plaintiff met with Eboda and Eboda's assistant at Plaintiff's office to discuss and review the evidence Plaintiff possessed which related to Defendant's fraud, waste and abuse. Eboda's assistant was a member, agent or servant of a public body or was otherwise employed by a public body. During this meeting, Plaintiff made protected disclosures of his allegations that Defendant had committed fraud, waste and abuse. On or about February 19, 2004, Eboda met with Shears and Mack, at different times, and discussed the Plaintiff's allegations that Defendant committed fraud, waste and abuse. Plaintiff's acts constitute protected disclosures to supervisors or public bodies under DC ST §2-223.01. Plaintiff's acts were taken in

furtherance of an action under 31 U.S.C. §3729(h) and DC ST §2-308.16 or constitute assistance in an action to be filed under 31 U.S.C. §3729(h) and DC ST §2-308.16.  Defendant became aware of Plaintiff's protected disclosures to a public body on or prior to February, 2004.

20.  On March 1, 2004, Plaintiff met with Eboda, Eboda's assistant, and several auditors who were employed or commissioned by the District of Columbia Department of Human Services. The auditors were members, agents or otherwise employed by a public body.  The meeting took place at Plaintiff's office.  During this meeting, Plaintiff made protected disclosures to Eboda, Eboda's assistant and the auditors that Defendant had engaged in fraud, waste.  Plaintiff's acts were taken in furtherance of an action under 31 U.S.C. §3729(h) and DC ST §2-308.16 or constitute assistance in an action to be filed under 31 U.S.C. §3729(h) and DC ST §2-308.16.

21.  On March 3, 2004, Plaintiff met with Ramprashad, Eboda, and several auditors.  The independent auditors accompanying them were members or agents of a public body.  At this meeting, Plaintiff made protected disclosures to Ramprashad, Eboda and the auditors of his allegations of fraud, waste and abuse by the Defendant.  The same day, Mack requested that Plaintiff alter one of Defendant's financial statements to conceal the Defendant's fraud, waste and abuse. Plaintiff communicated to Mack that he would not alter or change the financial statement.  Plaintiff's acts were taken in furtherance of an action under 31 U.S.C. §3729(h) and DC ST §2-308.16 or constitute assistance in an action to be filed under 31 U.S.C. §3729(h) and DC ST §2-308.16.

22.  On or about March 11, 2004, as a result of Plaintiff's protected disclosure of fraud, waste and abuse, Defendant placed Jennings on administrative leave pending investigation.

23.  On March 17, 2004, Plaintiff met with Eboda and two auditors from the Headstart program, members, agents or contractors of a public body within the meaning of D.C. ST § 2-223.01, to discuss Plaintiff's allegations that Defendant had committed fraud, waste and abuse.

Plaintiff's acts constitute protected disclosures to supervisors or public bodies under DC ST §2-223.01. Plaintiff's acts were taken in furtherance of an action under 31 U.S.C. §3729(h) and DC ST §2-308.16 or constitute assistance in an action to be filed under 31 U.S.C. §3729(h) and DC ST §2-308.16.

24. On March 18, 2004, Eboda met with Defendant's Board of Trustees and provided the results of an audit which demonstrated that Defendant had engaged in fraud, waste and abuse. Plaintiff's acts constitute protected disclosures to supervisors or public bodies under DC ST §2-223.01.

25. On March 19, 2004, Plaintiff met with the auditors from the Headstart program to discuss his allegations that Defendant engaged in fraud, waste and abuse, as it related to the Headstart program. The auditors of the Headstart program were agents of public bodies and Plaintiff made protected disclosures to them of information related to his allegations that Defendant engaged in fraud, waste and abuse. Plaintiff's acts were taken in furtherance of an action under 31 U.S.C. §3729(h) and DC ST §2-308.16 or constitute assistance in an action to be filed under 31 U.S.C. §3729(h) and DC ST §2-308.16.

26. On or about March 25, 2004 Jennings was terminated from his position with Defendant. Subsequently, Dana Jones ("Jones") was appointed Interim Executive Director.

27. On March 31, 2004, Plaintiff filed a charge of discrimination against Defendant for discrimination on the basis of his race, color, gender, national origin and religion with the District of Columbia Office of Human Rights. He alleged a pattern of harassment and discriminatory treatment.

28. On April 1, 2004, Plaintiff sent a memorandum to Eboda and Defendant's Committee Chairperson Alexis Robertson regarding his concerns that Defendant was engaging in fraud , waste

and abuse. Plaintiff's memorandum was a protected disclosure to supervisors or public bodies under DC ST §2-223.01.

29. On April 11, 2004, Plaintiff sent another memorandum to Dana Jones. The memorandum addressed Defendant's unauthorized expenditures of HeadStart funds and the results of the audit. Plaintiff's acts constitute protected disclosures to supervisors or public bodies under DC ST §2-223.01.

30. On April 29, 2004, Plaintiff, on behalf of the entire Finance Department, sent a memorandum to Eboda, Clarence Cater or the Department of Health and Human Services, Thomas Davis of the House District Committee, Carol Schwartz of the District of Columbia City Council, and all Defendant Board members. The memorandum addressed Defendants fraud, waste and abuse. Specifically, the memorandum reported unauthorized personal vacations paid for by Defendant, unauthorized purchase of automobiles and other expenses. Plaintiff's acts constitute protected disclosures to supervisors or public bodies under DC ST §2-223.01. Other protected disclosures may come to light in the process of discovery.

31. On April 27, 2004, District of Colombia Councilmember-At-Large David Catania, Chairman of the Committee on Public Services, issued a letter to Jones, informing him that the Committee was commencing an investigation into Plaintiff's allegations that Defendant had committed fraud, waste and abuse and requested that Defendant supply information and documents related to the allegations. Councilmember Catania's investigation was a direct and proximate result of the Plaintiff's protected disclosure to supervisors and public bodies of his allegations that Defendant committed fraud, waste and abuse.

32. On May 3, 2004, as a result of Plaintiff's protected disclosure that Defendant had engaged in fraud, waste and abuse, Special Agent Kenneth L. Marty ("Marty") contacted Plaintiff.

Marty was a Special Agent with the United States Department of Health and Human Services, Office of Inspector General, Office of Investigations, a public body within the meaning of D.C. ST § 2-223.01. Marty informed Plaintiff that he had been assigned to investigate Plaintiff's allegations that Defendant had engaged in fraud, waste and abuse. During the meeting, Plaintiff made protected disclosures to Marty that Defendant engaged in fraud, waste and abuse. Plaintiff's acts were taken in furtherance of an action under 31 U.S.C. §3729(h) and DC ST §2-308.16 or constitute assistance in an action to be filed under 31 U.S.C. §3729(h) and DC ST §2-308.16.

33.     On May 4, 2004, at the request of Marty, Plaintiff met with Federal Bureau of Investigation Agent Duncan ("Duncan") during which he made protected disclosures to a public body that Defendant had engaged in fraud, waste and abuse. Marty and Duncan were agents or members of pubic bodies. Plaintiff's acts were taken in furtherance of an action under 31 U.S.C. §3729(h) and DC ST §2-308.16 or constitute assistance in an action to be filed under 31 U.S.C. §3729(h) and DC ST §2-308.16.

34.     On May 6, 2004, Plaintiff met with Marty, Duncan, Assistant U.S. Attorney Debra Long-Doyle ("Doyle"), and FBI Agent Hans ("Hans"). Marty, Duncan, Long-Doyle and Hans were agents of public bodies. During the meeting, Plaintiff made protected disclosures of his allegations that Defendant committed fraud, waste and abuse by providing documents and information to support his allegations of fraud, waste and abuse. Plaintiff's acts were taken in furtherance of an action under 31 U.S.C. §3729(h) and DC ST §2-308.16 or constitute assistance in an action to be filed under 31 U.S.C. §3729(h) and DC ST §2-308.16.

35.     On May 12, 2004, Plaintiff spoke with Junius Nottingham ("Nottingham"), from the Office of Inspector General for the District of Columbia government. At that time, Nottingham was an agent of a public body. During this conversation, Plaintiff made protected disclosures of his

allegations that Defendant engaged in fraud, waste and abuse. Plaintiff's acts were taken in furtherance of an action under 31 U.S.C. §3729(h) and DC ST §2-308.16 or constitute assistance in an action to be filed under 31 U.S.C. §3729(h) and DC ST §2-308.16.

36.    On May 12, 2004 and May 19, 2004, Plaintiff provided Marty with documents related to the Plaintiff's allegations that Defendant committed fraud, waste and abuse. The delivery of documents constituted protected disclosures to a public body within the meaning of D.C. ST. § 2-223.01, acts taken in furtherance of an action under 31 U.S.C. §3729(h) and DC ST §2-308.16 and assistance in an action to be filed under 31 U.S.C. §3729(h) and DC ST §2-308.16.

37.    On or about May 28, 2004, Russell D. Simmons, President of Defendant's Board of Directors, resigned as a result of an investigation surrounding his inappropriate use of a Mercury Mountaineer SUV provided to him by the Defendant. This investigation was a direct and proximate result of Plaintiff's protected disclosures to public bodies regarding Defendant's fraud, waste and abuse.

38.    On May 28, 2004, Plaintiff met with Marty and Hans for approximately three hours to discuss their investigation of Plaintiff's allegations that Defendant committed fraud, waste and abuse and other information. At this meeting, Plaintiff made public disclosures by providing to Marty and Hans the names of persons who had knowledge related to Plaintiff's allegations that Defendant committed fraud, waste and abuse. Plaintiff's acts were taken in furtherance of an action under 31 U.S.C. §3729(h) and DC ST §2-308.16 or constitute assistance in an action to be filed under 31 U.S.C. §3729(h) and DC ST §2-308.16.

39.    On June 1, 2004 Marty, Hans and a government attorney visited Defendant's office for the express purpose of investigating Plaintiff's allegations that Defendant engaged in fraud, waste and abuse. This visit was a direct and proximate result of the Plaintiff's protected disclosure

to supervisors and public bodies of information related to the fraud, waste and abuse committed by the Defendant. In plain view and during regular working hours, Plaintiff escorted these persons into Defendant's building and took them directly to his office. Beckman witnessed Plaintiff escorting the investigators into the building, and followed them to Plaintiff's office. Plaintiff then took Marty, Hans and the attorney to meet Beckman and Darlene Booker, the Executive Assistant of Defendant. During the meeting with Beckman and Booker, Marty, Hans and the attorney discussed Plaintiff's allegations that Defendant engaged in fraud, waste and abuse. Later that day, Marty, Hans and the attorney met with Mack and Jones, during which they discussed the Plaintiff's allegations of fraud, waste and abuse.

40. On June 2, 2004, Marty, Hans and several other government officials came to Defendant's office. This visit was a direct and proximate result of the Plaintiff's protected disclosures to supervisors and public bodies of information about the Defendant's fraud, waste and abuse. Plaintiff escorted them into the building in plain view and during regular working hours. Plaintiff's acts were taken in furtherance of an action under 31 U.S.C. §3729(h) and DC ST §2-308.16 or constitute assistance in an action to be filed under 31 U.S.C. §3729(h) and DC ST §2-308.16. Later that same day, Defendant drafted and signed a letter notifying Plaintiff that he would be terminated from his position as Controller effective the close of business on June 30, 2004. The letter also informed him he was immediately placed on administrative leave. The stated reason for his termination was a reduction-in-force made necessary by a reorganization of the Defendant's Office of Finance. Plaintiff learned of his termination on June 2, 2004.

41. On or about June 18, 2004, Plaintiff amended his Charge of Discrimination filed with the District of Columbia Office of Human Rights to allege that Defendant retaliated against him, for the exercise of protected activity, by terminating his employment on June 2, 2004.

42. On March 30, 2005, Plaintiff withdrew his Charge of Discrimination with the District of Columbia Office of Human Rights.

**COUNT I**
**(VIOLATIONS OF THE D.C. WHISTLEBLOWER STATUTE --**
**VIOLATION OF THE D.C. CODE 2-223.02)**

43. Paragraphs 1-39 of this Complaint are hereby incorporated by reference.

44. As alleged above, beginning in February, 2004 and continuing through June 2, 2004, Plaintiff made several protected disclosures to supervisors and members or agents of public bodies within the meaning of D.C. ST. § 2-223.01 (7), regarding the fact that Defendant had engaged in fraud, waste and abuse. Plaintiff reasonably believed that his protected disclosures involved gross mismanagement in connection with the administration of a public program or the execution of a public contract and/or gross misuse or waste of public resources or funds and/or abuse of authority in connection with the administration of a public program or the execution of a public contract and/or violations of contractual terms and state, local and federal laws within the meaning of D.C. ST. § 2-223.01.

45. Defendant was aware of the fact that Plaintiff had made protected disclosures to supervisors and public bodies. By terminating his employment on June 2, 2004, the Defendant took a prohibited personnel action against Plaintiff and/or retaliated against him as a result, in whole or in part, of his protected disclosures to supervisors and public bodies of his allegations that Defendant engaged in fraud, waste and abuse.

46. Plaintiff has been damaged economically by the defendant's actions as he lost the income and benefits of his position. He has also suffered humiliation, embarrassment, loss of self esteem and has otherwise been damaged psychologically and emotionally by the Defendant's actions.

WHEREFORE, Plaintiff requests the following relief: (a) reinstatement to his former position with back pay and benefits; (b) front-pay, if reinstatement is determined to be unfeasible;

(c) such compensatory damages as a jury might award; (d) such punitive damages as a jury might award; (e) such economic damages as a jury might award; (f) such other damages as a jury might award; and (g) attorney's fees and costs.

## COUNT II
## (WRONGFUL DISCHARGE)

47. Paragraphs 1-43 of this Complaint are hereby incorporated by reference.

48. At all times relevant to this case, Plaintiff was an at will employee of Defendant.

49. Beginning in February of 2004 and continuing until his termination on June 2, 2004 Plaintiff made a series of disclosures regarding Defendant's fraud, waste and abuse to both federal and District of Columbia officials. Defendant was aware of Plaintiff's disclosures. Plaintiff was terminated in whole or in part for making said disclosures which falls within the exception to the employee at will doctrine.

50. Further, Defendant requested that Plaintiff produce a fraudulent financial statement in order to conceal Defendant's fraud, waste, and abuse, an act which Plaintiff reasonably believed to be unlawful. Plaintiff refused. Plaintiff's refusal to participate in this and other illegal activities resulted, in whole or in part, in his termination. Such a termination falls within the public policy exception to the employment at will doctrine.

51. Plaintiff has been damaged economically by the defendant's actions, as he lost the income and benefits of his position. He also suffered humiliation, embarrassment, loss of self esteem and has otherwise been damaged psychologically and emotionally by the defendant's actions.

WHEREFORE, Plaintiff requests the following relief: (a) reinstatement to his former position with back pay and benefits; (b) front-pay, if reinstatement is determined to be unfeasible; (c) such compensatory damages as a jury might award; (d) such punitive damages as a jury might

award; (e) such economic damages as a jury might award; (f) such other damages as a jury might award; and (g) attorney's fees and costs.

## COUNT III
### (RETALIATION FOR DISCRIMINATION COMPLAINT)

52. Paragraphs 1-48 of this Complaint are hereby incorporated by reference.

53. Plaintiff is a member of the following protected classes, Syrian, Caucasian, Male, Muslim and light skinned.

54. On March 31, 2004 Plaintiff engaged in protected activity by filing a charge of discrimination with the D.C. Office of Human Rights alleging a series of discriminatory actions and harassment taken against him on the basis of his race, color, national origin, gender, and religion. Shortly thereafter, Defendant became aware of Plaintiff's protected activity.

55. Defendant terminated Plaintiff on June 2, 2004. Plaintiff's termination was motivated in whole or in part by retaliatory animus against the Plaintiff for his engaging in protected activity and a causal connection exists between Plaintiff's protected activity and his termination.

56. Plaintiff has been damaged economically by the defendant's actions. He has also suffered humiliation, embarrassment, loss of self esteem and has otherwise been damaged psychologically and emotionally by the defendant's actions.

WHEREFORE, Plaintiff, prays that this Court enter judgment against Defendant for the following: (a) reinstatement to his former position with back pay and benefits; (b) front-pay, if reinstatement is determined to be unfeasible; (c) such compensatory damages as a jury might award; (d) such punitive damages as a jury might award; (e) such economic damages as a jury might award; (f) such other damages as a jury might award; and (g) attorney's fees and costs.

## COUNT IV

16

## (VIOLATIONS OF THE FEDERAL FALSE CLAIMS ACT WHISTLEBLOWER PROTECTION PROVISION, 31 U.S.C §3730(H))

57. Paragraphs 1-53 of this Complaint are hereby incorporated by reference.

58. As alleged above, beginning in February, 2004 and continuing through June 2, 2004, Plaintiff engaged in an investigation Defendant's activities that violate the False Claims Act, 31 U.S.C. §3729. Plaintiff reported Defendant's mismanagement of federal funds, including expenditures for questionable expenses, non-competitive contract awards, and improper accounting of funds. These activities constitute "false or fraudulent claims" for purposes of 31 U.S.C. §3729(a). Plaintiff's investigation and reporting of these false claims constitute protected activity under 31 U.S.C. §3730(h).

59. At all relevant times, Defendant had knowledge of Plaintiff's protected activity.

60. Defendant was discharged and discriminated against in the terms and conditions of his employment. The termination was motivated in whole or in part by retaliatory animus against Plaintiff for his engaging in protected activity under 31 U.S.C. §3730(h).

61. Plaintiff has been damaged economically by Defendant's actions as he lost the income and benefits of his position. He has also suffered humiliation, embarrassment, loss of self esteem and has otherwise been damaged psychologically and emotionally by the Defendant's actions.

WHEREFORE, Plaintiff requests the following relief: (a) an award of back pay, including interest; (b) front-pay, if reinstatement is determined to be unfeasible; (c) such liquidated damages as the jury might award; (d) compensatory damages as a jury might award; (e) such punitive damages as a jury might award; (f) such economic damages as a jury might award; (g) reinstatement with the same seniority status; (h) such other damages as a jury might award; and (i) attorney's fees and

costs.

## COUNT V
### (VIOLATIONS OF THE DISTRICT OF COLUMBIA FALSE CLAIMS ACT WHISTLEBLOWER PROTECTION PROVISION, DC CODE § 2-308)

62. Paragraphs 1-58 of this Complaint are hereby incorporated by reference.

63. As alleged above, beginning in February, 2004 and continuing through June 2, 2004, Plaintiff engaged in an investigation of Defendant's activities that violate the False Claims provisions of DC STAT § 2.308.14. Plaintiff reported potential mismanagement of District of Columbia funds, including expenditures for questionable expenses, non-competitive contract awards, and improper accounting of funds. These activities constitute "false claim for payment or approval" for purposes of DC STAT § 2.308.14(1). Plaintiff's investigation and report constitute protected activity.

64. At all relevant times Defendant had knowledge of Plaintiff's protected activity.

65. Defendant was discharged and discriminated against in the terms and conditions of his employment. The termination was motivated in whole or in part by retaliatory animus against Plaintiff for his engaging in protected activity under DC STAT § 2.308.14.

66. Plaintiff has been damaged economically by Defendant's actions as he lost the income and benefits of his position. He has also suffered humiliation, embarrassment, loss of self esteem and has otherwise been damaged psychologically and emotionally by the Defendant's actions.

WHEREFORE, Plaintiff requests the following relief: (a) an award of back pay, including interest; (b) front-pay, if reinstatement is determined to be unfeasible; (c) such liquidated damages as the jury might award; (d) compensatory damages as a jury might award; (e) such punitive damages as a jury might award; (f) such economic damages as a jury might award; (g) reinstatement with the

same seniority status; (h) such other damages as a jury might award; and (i) attorney's fees and costs.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues triable to a jury as a matter of right.

Respectfully Submitted,

__/s/_____
Omar Vincent Melehy, Esq.
D.C. Bar No. 415849
Andrew J. Perlmutter
D.C. Bar No. 489601
Zipin & Melehy, LLC
8403 Colesville Rd., Suite 610
Silver Spring, MD 20910
Phone: (301) 587-6364
Fax:    (301) 587-6308
Email: ovmelehy@zmdlaw.com

Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 9th day of December, 2005, a copy of the foregoing Amended Complaint was sent via regular mail to:

> Alison Davis, Esquire
> Kevin M. Kraham, Esquire
> Ford & Harrison LLP
> 1300 19th Street NW
> Washington, D.C. 20036
>
> Attorneys for Defendant

__/s/_____
Omar Vincent Melehy