**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

Mohammed Amin Kakeh,

  *Plaintiff,*

  v.

United Planning Organization, Inc.,

  *Defendant.*

Civil Case No. 1:05-cv-1271 (GK/JF)

**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF**
**HIS MOTION TO EXCEED DEPOSITION LIMIT**

Defendant opposes Plaintiff's motion to exceed the deposition limit of 10 depositions by three depositions on the following grounds: (1) that the motion is premature because Plaintiff has only taken 8 of the 10 depositions thus far; (2) the deposition of Monica Beckham will not yield any non-privileged discoverable information because she is Defendant's General Counsel; (3) the depositions of two allegedly RIF'd employees, David Quashie and William Isaac, will yield only duplicative evidence; and (4) Plaintiff has failed to demonstrate good cause for the additional depositions. (Defendant's Opposition at 3-7.) Plaintiff has demonstrated good cause for obtaining leave to exceed the deposition limit of 10 by three depositions, as each witness has information that Plaintiff needs in the development of his case.

At the onset, Plaintiff would like to emphasize that the discussion about Monica Beckham and whether she possesses discoverable information has no bearing on the issue of whether Plaintiff should be granted leave to exceed the deposition limit. Plaintiff has notified opposing counsel by electronic mail that David Quashie and Beckham will be deposition numbers 9 and 10. Depositions 11 and 12 will be Alexus Roberson of Defendant's Ad Hoc Management Committee and a Rule 30(b)(6) designee or designees

of Defendant. Deposition 13 will be William Isaac. To the extent that Defendant is objecting to the taking of Monica Beckham's deposition, that objection is indeed premature since her deposition has not been taken and she is within the ten depositions that Plaintiff has been allotted under the Rules.

### I.    THE MOTION IS NOT PREMATURE

Although it is true that Plaintiff has only taken eight depositions, Plaintiff has taken steps to schedule the other depositions, but has been stonewalled by the Defendant. On April 10, 2006, Plaintiff's Counsel wrote to Defense Counsel and indicated that Plaintiff wished to take seven additional depositions. (Email Correspondence between Counsel, attached as Exh. 1.) Three of the depositions were non-party federal law enforcement personnel who have since become unavailable. Plaintiff only wished to take four additional depositions of Defendant's employees which Plaintiff identified in the April 10, 2006 email as Monica Beckham, Alexis Roberson, David Quashie and a Rule 30(b)(6) deposition. (*Id.*) Plaintiff also asked Defense counsel whether Defendant would object to exceeding the 10-deposition limit. (*Id.*) Defense counsel failed to provide any dates for the proposed deponents and either failed to respond or indicated that Defendant would object to any depositions beyond the 10-deposition limit.

Since Defendant did not consent to any depositions beyond the 10-deposition limit, the motion is not premature. Plaintiff should not have to wait until the discovery deadline to learn whether he can exceed the deposition limit.

### II.    PLAINTIFF'S PLANNED DEPOSITION OF MONICA BECKHAM WILL NOT IMPINGE ON THE ATTORNEY CLIENT PRIVILEGE

As stated previously, it is premature for the Defendant to object Beckham's deposition at this stage, as she is deposition number 10 in this case and thus within the

limit allowed and outside the scope of this motion.   However, to the extent that Defendant is suggesting that she possesses no non-privileged discoverable information, it is simply wrong for the reasons stated below.

"The attorney client privilege is narrowly circumscribed to shield from disclosure only those communications from a client to an attorney made in confidence and for the purpose of securing legal advice." *Athridge v. Aetna* 184 F.R.D. 200, 204 (D.D.C. 1998). It is well-established that the party asserting attorney-client privilege and work product protection bears the burden of proving that the privilege exists and that it has not been waived. *Id.* "If a client wishes to preserve a privilege, it must treat the confidentiality of the attorney-client communications like jewels – if not crown jewels." *In Re Sealed Case,* 877 F.2d 976, 980 (D.C. Cir. 1989); *Minebea Co. Ltd. v. Papst,* 228 F.R.D. 34, 35 (D.D.C. 2005). "Because of this principle, a waiver of the privilege in any attorney client communication, even an inadvertent one, 'extends to all other communications related to the same subject matter.'" *Id.* (Citations omitted.)

On June 2, 2004, the Defendant delivered a letter to Plaintiff stating that he had been terminated due to a reduction in force ("RIF").   (Plaintiff's RIF Letter, Exh. 2.) The letter is almost three pages and contains extensive reasoning for the decision to terminate Plaintiff.   The letter purports to rely upon various internal memoranda and states that "[t]he reason for this action is that the United Planning Organization is forced to declare a Reduction in Force affecting, four employees in the Office of Finance which is made necessary due to the reorganization and the abolishment of positions in the Office of Finance." (*Id.* at 1.)   For the purposes of Plaintiff's retention rights, Beckham determined that Plaintiff fell within the Group VI Competitive Level, that he was grouped

with his subordinate, David Quashie, the Deputy Comptroller, and that because Quashie had more seniority than Plaintiff, he was retained and Plaintiff was not. (*Id.* at 2.) Quashie was also subjected to a RIF, but he was immediately reassigned and continued to work in the same position which had been renamed. (Quashie RIF Letter, Exh. 3.)

Beckham's rationale for the decision to group Plaintiff in Competitive VI was contained in the letter to Plaintiff, any privilege related to communications regarding the subject matter – Plaintiff's termination – is waived. Jones admitted that Beckham wrote the letter and that she decided to place Plaintiff in Competitive Level VI with Quashie. (Jones Dep. at 52-56, 81, Exh. 4.) Jones also indicated that Beckham and a member of the Human Resources Office decided that Plaintiff was to be grouped at Competitive Level VI. (*Id.* at 78-80.) Beckham's decision to place Plaintiff in Competitive Level VI had a direct bearing on whether or not he would be terminated and goes to the core subject mater of this dispute. Defendant has maintained that since Quashie and Plaintiff were grouped together in Level VI and Quashie had more seniority than Plaintiff, Quashie was retained and Plaintiff was not. (Defendant's Position Statement dated August 31, 2004 at 5-6, Exh. 5.)

As such the Defendant has waived the attorney client privilege with respect to any communications that Beckham had with any employee, agent or official of Defendant which relate the Plaintiff's termination. This would include the rationales and communications related to the RIF actions of Quashie, McLean and Isaac.

Additionally, the Plaintiff believes that Beckham had meetings with federal and District of Columbia regulatory and law enforcement officials regarding fraud, waste and abuse at Defendant. Defendant has maintained that it had no knowledge of Plaintiff's

whistle-blowing activities prior to its decision to terminate him.    To the extent that discussions were held with these regulatory and law enforcement officials, where Plaintiff's whistle-blowing activities were discussed, any privilege that existed has been waived as third parties were present during these meetings.  Finally, Beckham may have additional non-privileged information that has a bearing on this case.

### III.    PLAINTIFF'S DEPOSITIONS DAVID QUASHIE AND WILLIAM ISAAC ARE NOT DUPLICATIVE

Defendant argues that the depositions of David Quashie and William Isaac would be duplicative and therefore, the Court should not allow either one as deposition 11, 12 or 13.   In fact, David Quashie will be deposition number 9 and therefore, should not factor into the Court's decision whether to extend the deposition limit.

However, both Quashie and Isaac are important witnesses in the case.   Plaintiff's position in this case is that the RIF was merely a pretextual reason for the Plaintiff's unlawful termination and that the RIF specifically targeted the Plaintiff.    In fact both Quashie and Isaac were never terminated from Defendant as a result of the RIF.   Each was simultaneously reassigned, according to the Defendant.   Although Isaac eventually resigned, he was not terminated.  Although Nona McLean was terminated, she was not part of the management of the Finance Office and therefore did not fit within the rationale of the RIF – to outsource the management of the Finance Office – and she had a sexual relationship with Benjamin Jennings who as former Executive Director was terminated for misappropriation of funds.   Quashie and Isaac will be able to testify as to whether they were told they were subject to a RIF, the reasons they were given for being subject to a RIF, if the were, the reasons they were given for being reassigned, the reasons they were given for Plaintiff's termination and other pertinent information.

IV.     **PLAINTIFF HAS DEMONSTRATED GOOD CAUSE FOR EXCEEDING THE DEPOSITION LIMIT BY THREE DEPOSITIONS.**

In short, Plaintiff has demonstrated good cause for taking three depositions beyond the ten deposition limit.   However, the depositions that Defendant vigorously opposes are deposition numbers 9 (Quashie) and 10 (Beckham) which are not the subject of this motion.   Even if they were they are important witnesses who possess discoverable information.   Plaintiff has shown good cause for taking the deposition of Alexus Roberson a Co-Chair of the Ad Hoc Management Committee, which Defendant does not appear to oppose.   The Board allegedly approved the RIF and Roberson can testify as to whether or not that is actually the case and the information that the Board had when it did so.  Plaintiff has also shown good cause for taking the depositions of and Isaac because they can shed light on the issue of whether the RIF was bona fide or merely a pretextual reason for Plaintiff's unlawful termination.   Plaintiff also has shown good cause for taking a deposition of Defendant's Rule 30(b)(6) deposition to address: (1) document preservation and destruction; (2) RIF policies and procedures; and (3) the full rationale for Plaintiff's termination.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to exceed the limit of ten depositions should be granted.

Respectfully Submitted,

  /s/ _____

Omar Vincent Melehy, Esq.
D.C. Bar No. 415849
Melehy & Associates, LLC
8403 Colesville Rd., Suite 610
Silver Spring, MD 20910
Phone: (301) 587-6364
Fax:    (301) 587-6308
Email: ovmelehy@zmdlaw.com

*Attorneys for Plaintiff*

## Kate McFarland

**From:**    Alison Davis [ADavis@fordharrison.com]

**Sent:**    Monday, April 17, 2006 10:57 AM

**To:**    'Kate McFarland'

**Cc:**    Kevin Kraham

**Subject:** RE: Kakeh v. UPO: Depositions

In your email, you only identify four additional witnesses.  Who are the other three?

-----Original Message-----
**From:** Kate McFarland [mailto:kmcfarland@zmdlaw.com]
**Sent:** Monday, April 17, 2006 10:54 AM
**To:** 'Alison Davis'
**Subject:** FW: Kakeh v. UPO: Depositions

Alison:

I am waiting for a response regarding these depositions.  Please forward dates that the individuals will be available.

Sincerely,
Kate McFarland, Esquire
Zipin & Melehy, LLC
8303 Colesville Road
Suite 610
Silver Spring, MD 20910
(301) 587-6464


-----Original Message-----
**From:** Kate McFarland [mailto:kmcfarland@zmdlaw.com]
**Sent:** Monday, April 10, 2006 11:04 AM
**To:** 'Alison Davis'
**Subject:** Kakeh v. UPO: Depositions

Alison:

       We plan to schedule seven more depositions.  If Defendant intends to object to these depositions, please let me know so that we can file a Motion for Leave to Exceed the Limit.  We plan to note four more UPO depositions: Monica Beckham, Alexis Roberson, David Quashie and a 30(b)(6) regarding computer records.  We suggest April 17-18, 21, 26-28 or May 1-5.  Please let me know what dates will work for the deponents.

Sincerely,
Kate McFarland, Esquire
Zipin & Melehy, LLC
8303 Colesville Road
Suite 610
Silver Spring, MD 20910
(301) 587-6464

## EXHIBIT 1

 **UNITED PLANNING ORGANIZATION**
DC COMMUNITY ACTION
301 Rhode Island Avenue, NW ■ Washington, DC 20001-1826

June 2, 2004

Mr. M. Amin Kakeh
7050 Lee Stone Dr
Springfield, VA 22151

RE: Specific Notice of Reduction-In-Force

Dear Mr. Kakeh:

In accordance with the provisions of UPO Administrative Memorandum No. E-107 dated July 22, 1985, (Part 5, Notice to Employees, 5.2. General and Specific Notice); UPO Administrative Memorandum NO. E-119 dated November 8, 1989; UPO Administrative Memorandum NO. E-124 dated July 11, 1990 and UPO Administrative Memorandum No. E-125 dated August 2, 1990; I am herewith notifying you that your current employment in the position Controller with the Office of Finance, United Planning Organization will be adversely affected effective the close of business on **June 30, 2004.** This means that as of that date, you will be released from your current competitive level by separation from employment. The reason for this action is that the United Planning Organization is forced to declare a Reduction-In-Force affecting, four employees in Office of Finance which is made necessary due to the reorganization and the abolishment of positions in the Office of Finance.

Further, you are advised **that effective immediately you are placed on paid administrative leave from June 2, 2004 through close of business on June 30, 2004.** You are to immediately turn in all keys, cell phones or other equipment issued to you by UPO and remove your personal affects. Any personal items not immediately removed will be packed for you and arrangements for pick-up will be made for a later date.

The competitive area affected is the Office of Finance.

The competitive levels which control the agreed upon scope of competition in this Reduction-In-Force are those grouping of positions by funding source, which are so similar in all important aspects that an employee can move from one position to another within that funding source without significant training and without

**EXHIBIT 2**

undue interruption of the work program. All positions in the same competitive level are characterized by a similarity of duties, functions, responsibilities and pay schedules. Job titles and job descriptions are indicative, but not conclusive, in determining the composition of competitive levels. A competitive level may consist of only one job when that job is so nearly unique that it is not interchangeable with similar jobs. The principal guide to determining competitive levels in each office shall be the job classification grouping.

Thus, for purposes of the Reduction-In-Force, your competitive level is that group of jobs which fall within the job family grouping in Group VI of UPO's Office of Finance Job Family Grouping List (See Attachment A). For purposes of this Reduction-In-Force, your entrance on duty date (EOD) June 29, 1998, a date which was established by your Job Family Grouping by reason of (see reason checked below):

__X__    Your initial dates of employment by the United Planning Organization;

_____    Your length of creditable service as an employee based on your current employment service, plus allowance for your prior years of service resulting from your previous employment with UPO, minus any time disallowed for lose of seniority or minus any periods of temporary employment.

This action therefore is being taken based on the number of jobs available in the Office of Finance to be filled in the Office of Finance Grouping VI and your relative standing among other UPO Office of Finance employees in the Job Family Grouping, based on your allowable length of creditable service.

The Official UPO Retention Register, which is available for your inspection in the UPO Office of Human Resources during normal duty hours, documents a listing of all competing employees within your Job Family Grouping (your competitive level) in the order of their seniority as indicated by their length of allowable UPO creditable service. You are urged to examine this Retention Register so that you can ascertain the correctness of your retention standing relative to all other competing UPO Office of Executive Director employees in the order of their seniority within your Job Family Grouping.

UPO Administrative Memorandum NO. E-107, Part 6, Subsection 6.1 thru 6.6 (see Attachment B) governs all appeals from this action. You are encouraged to examine the attached appeal provisions and fully utilize same should you determine that any one or more of the enumerated grounds for appeals is applicable to you.

Should you decide to appeal this reduction-in-force action taken against you, it is emphasized that your notice of appeal must set forth specific reasons for believing the action is improper. The UPO Office of Human Resources is available to assist you in perfecting your appeal or to answer any questions you may have concerning these appeal provisions.

You are requested to complete a UPO Resignation/Termination Form and process it through the respective UPO components designated on the form.

Attached (see Attachment C) is information regarding your rights and obligations for group health continuation coverage under COBRA. The UPO Office of Human Resources will notify you as to your continuation and conversion privileges under the UPO medical expense/health care/life insurance plans in which you are a participant and with respect to your retirement income plan benefits.

Your final paycheck will be available for you by close of business on the next UPO workday following your date of termination. You must report to Cash and Reports Branch, UPO Office of Finance to sign for and receive your final paycheck or it will be subsequently mailed to your last forwarding address. The Cash and Reports Branch is located at the UPO Headquarters Building, 301 Rhode Island Avenue, N.W., WASHINGTON, D.C. 20001.

Please accept our appreciation for the services you rendered as an employee of the United Planning Organization.

Sincerely,

Dana M. Jones
Interim Executive Director

Attachment(s)
    A - Job Family Grouping List
    B - UPO Administrative Memorandum Nos. E-107, E-119, E-124 & E-125
    C - Group Health Continuation Coverage Under Cobra

DMJ/dlb

cc: Office of Executive Director
    General Counsel
    Office of Finance
    Office of Human Resources
    File

ATTACHMENT A

Non-Bargaining Unit Employees Family Grouping List

Office of Controller

<u>Number of Positions in each group</u>

**Group I**

| No. | Title | Salary | EOD |
|---|---|---|---|
| 1 | Office Coordinator | $41,617 | 07/29/71 |

**Group II**

| No. | Title | Salary | EOD |
|---|---|---|---|
| 1 | Revenue Acct | $52,000 | 02/20/01 |

**Group III**

| No. | Title | Salary | EOD |
|---|---|---|---|
| 1 | Sr. External Auditor | $55,194 | 08/01/67 |

**Group IV**

| No. | Title | Salary | EOD |
|---|---|---|---|
| 1 | Chief, Budget | $52,494 | 05/22/68 |
| 1 | Chief, Cash Reports | $53,168 | 07/20/81 |

**Group V**

| No. | Title | Salary | EOD |
|---|---|---|---|
| 1 | Facilities/IS Manager | $56,844 | 01/05/99 |

**Group VI**

| No. | Title | Salary | EOD |
|---|---|---|---|
| 1 | Atg Deputy Controller | $78,232 | 09/23/74 |
| 1 | Controller | $87,550 | 06/29/98 |

Dated: 5/27/04

# UNITED PLANNING ORGANIZATION
## DC COMMUNITY ACTION
### 301 Rhode Island Avenue, NW ■ Washington, DC 20001-1826

June 2, 2004

Mr. Davidson Quashie
12418 Littleten St
Silver Spring, MD 20906

RE: Specific Notice of Reduction-In-Force

Dear Mr. Quashie:

In accordance with the provisions of UPO Administrative Memorandum No. E-107 dated July 22, 1985, (Part 5, Notice to Employees, 5.2. General and Specific Notice); UPO Administrative Memorandum NO. E-119 dated November 8, 1989; UPO Administrative Memorandum NO. E-124 dated July 11, 1990 and UPO Administrative Memorandum No. E-125 dated August 2, 1990; I am herewith notifying you that your current employment in the position Acting Deputy Controller with the Office of Finance, United Planning Organization will be adversely affected effective the close of business on June 30, 2004. This means that as of that date, you will be released from your current competitive level by separation from employment. The reason for this action is that the United Planning Organization is forced to declare a Reduction-In-Force affecting, four employees in Office of Finance which is made necessary due to the reorganization and the abolishment of positions in the Office of Finance.

Further, you are advised that effective June 2, 2004 you are hereby reassigned to the position Accounting Director, Office of Finance. You will be acting in this position until filled.

The competitive area affected is the Office of Finance.

The competitive levels which control the agreed upon scope of competition in this Reduction-In-Force are those grouping of positions by funding source, which are so similar in all important apects that an employee can move from one position to another within that funding source without significant training and without undue interruption of the work program. All positions in the same competitive level are characterized by a similarity of duties, functions, responsibilities and pay schedules. Job titles and job descriptions are indicative, but not conclusive in determining the composition of competitive levels. A competitive level may consist of only one job when that job is so nearly unique that it is not interchangeable with similar jobs. The principal guide to

CONFID
MAK
) Websi

determining competitive levels in each office shall be the job classification grouping.

Thus, for purposes of the Reduction-In-Force, your competitive level is that group of jobs which fall within the job family grouping in Group VI of UPO's Office of Finance Job Family Grouping List (See Attachment A). For purposes of this Reduction-In-Force, your entrance on duty date (EOD) September 23, 1974, a date which was established by your Job Family Grouping by reason of (see reason checked below):

  ___X___  Your initial dates of employment by the United Planning Organization;

  _____  Your length of creditable service as an employee based on your current employment service, plus allowance for your prior years of service resulting from your previous employment with UPO, minus any time disallowed for lose of seniority or minus any periods of temporary employment.

This action therefore is being taken based on the number of jobs available in the Office of Finance to be filled in the Office of Finance Grouping VI and your relative standing among other UPO Office of Finance employees in the Job Family Grouping, based on your allowable length of creditable service.

The Official UPO Retention Register, which is available for your inspection in the UPO Office of Human Resources during normal duty hours, documents a listing of all competing employees within your Job Family Grouping (your competitive level) in the order of their seniority as indicated by their length of allowable UPO creditable service. You are urged to examine this Retention Register so that you can ascertain the correctness of your retention standing relative to all other competing UPO Office of Executive Director employees in the order of their seniority within your Job Family Grouping.

UPO Administrative Memorandum NO. E-107, Part 6, Subsection 6.1 thru 6.6 (see Attachment B) governs all appeals from this action. You are encouraged to examine the attached appeal provisions and fully utilize same should you determine that any one or more of the enumerated grounds for appeals is applicable to you. Should you decide to appeal this reduction-in-force action taken against you, it is emphasized that your notice of appeal must set forth specific reasons for believing the action is improper. The UPO Office of Human Resources is available to assist you in perfecting your appeal or to answer any questions you may have concerning these appeal provisions.

CONFIDENTIAL
MAK 0170

You are requested to complete a UPO Resignation/Termination Form and process it through the respective UPO components designated on the form.

Attached (see Attachment C) is information regarding your rights and obligations for group health continuation coverage under COBRA.   The UPO Office of Human Resources will notify you as to your continuation and conversion privileges under the UPO medical expense/health care/life insurance plans in which you are a participant and with respect to your retirement income plan benefits.

Your final paycheck will be available for you by close of business on the next UPO workday following your date of termination.   You must report to Cash and Reports Branch, UPO Office of Finance to sign for and receive your final paycheck or it will be subsequently mailed to your last forwarding address.   The Cash and Reports Branch is located at the UPO Headquarters Building, 301 Rhode Island Avenue, N.W., WASHINGTON, D.C. 20001.

Please accept our appreciation for the services you rendered as an employee of the United Planning Organization.

Sincerely,

Dana M. Jones
Interim Executive Director

Attachment(s)
    A - Job Family Grouping List
    B - UPO Administrative Memorandum Nos. E-107, E-119, E-124 & E-125
    C - Group Health Continuation Coverage Under Cobra

DMJ/dlb

cc:  Office of Executive Director
     General Counsel
     Office of Finance
     Office of Human Resources
     File

CONFIDENTIAL
MAK 0171

DEPOSITION OF DANA JONES
CONDUCTED ON MONDAY, FEBRUARY 27, 2006

Page 1

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA


----------------------------------x

MOHAMMED AMIN KAKEH,                    x

          Plaintiff,         x Civil Case No.

          v.                 x 1:05-CV-1271

UNITED PLANNING ORGANIZATION, INC.,x

          Defendant.         x

---------------------------------- x

                    Monday, February 27, 2006
                    Silver Spring, Maryland

The deposition of DANA JONES called for examination

by counsel for Plaintiff in the above-titled

matter, pursuant to notice, in the Offices of Zipin

& Melehy, 8403 Colesville Road, Silver Spring,

Maryland, before Jonell Easton, Notary public, at

10 a.m., when were present on behalf of

respective parties:

**EXHIBIT 4**

DEPOSITION OF DANA JONES
CONDUCTED ON MONDAY, FEBRUARY 27, 2006

Page 52

1    in?

2        A.    Roy Lanyne Roy.

3        Q.    Did Walker & Company bring in a grants

4    manager?

5        A.    No, Walker provided other support staff,

6    other CPA on staff came in and filled roles at

7    various times and that included general

8    accountants, but when the position was filled full

9    time, it was filled by an in-house applicant.

10        Q.    Who was the in-house applicant?

11        A.    Lillian Jones.

12        MR. MELEHY:    I will show you what we will

13    mark as Exhibit 3.

14        (Jones Deposition Exhibit No. 3 was marked

15    for identification.)

16        BY MR. MELEHY:

17        Q.    I am showing you Jones Number 3, a letter

18    to Amin Kakeh dated June 2, 2004, which appears to

19    have been signed by you.  Is that correct?

20        A.    Yes, that is my signature.

21        Q.    That is, the subject of the letter is

PRECISE REPORTING SERVICES
(301) 210-5092 (877) 4 A STENO

DEPOSITION OF DANA JONES
CONDUCTED ON MONDAY, FEBRUARY 27, 2006

Page 53

1    special notice of reduction in force.

2         Is that correct?

3    A.    Yes.

4    Q.    Mr. Kakeh was given, was paid through

5    June 30, 2004.  Correct?

6    A.    Yes.

7    Q.    Is there a reason why you paid Mr. Kakeh,

8    UPO paid Mr. Kakeh through June 30, but did not

9    allow him to work during the period?

10   A.    Yes.

11   Q.    What was the reason?

12   A.    The reason is that we RIFed the position.

13   It is--the position was, the sensitivity to the

14   laws of the District of Columbia permitted such

15   positions to be RIFed immediately and we followed

16   those laws.

17   Q.    Do your own RIF policies require ten days

18   notice, minimum, of a RIF to an employee?

19   A.    I am not familiar with such.

20   Q.    Were you familiar with the RIF policies?

21   A.    Yes, we provided the notice within the

4d933ef4-d185-467d-9550-efc51beb3e0d0

DEPOSITION OF DANA JONES
CONDUCTED ON MONDAY, FEBRUARY 27, 2006

Page 54

1  timeframe permitted and the virtue of monetary

2  compensation and administrative leave, so my notice

3  would have been covered within that timeframe.

4  Q.    Look at the fifth full paragraph, the

5  fourth.

6  A.    Page?

7  Q.    The first page, The competitive levels

8  which control the agreed upon scope of competition

9  in this reduction in force are those groupings of

10  positions by funding sources, which are so similar

11  in all important aspects that an employee can move

12  from one position to another within that funding

13  source without significant training and without

14  undue interruption of the work program.

15         Do you see that?

16  A.    Yes.

17  Q.    Move down to the next paragraph, For

18  purposes of the reduction in force, your

19  competitive level is that group of jobs which fall

20  within the job family grouping, Group VI of UPO's

21  Office of Finance job family grouping list, see

DEPOSITION OF DANA JONES
CONDUCTED ON MONDAY, FEBRUARY 27, 2006

Page 55

1    attachment A.

2              Do you see that?

3        A.    Yes.

4        Q.    The question, go to attachment A, last

5    page of this exhibit, do you see that?

6        A.    Yes.

7        Q.    That is a list of groupings in each

8    position.   Correct?

9        A.    Yes.

10       Q.    That is attachment A?

11       A.    Yes.

12       Q.    If you go down to the next paragraph on

13   page 2, go to the following paragraph, last full

14   paragraph, The official UPO Retention Register,

15   which is available for your inspection in the UPO

16   office of Human Resources during normal duty hours,

17   documents a listing of all competing employees

18   within your job family grouping parens your

19   competitive level parens in the order of creditable

20   service.

21             Do you see that?

DEPOSITION OF DANA JONES
CONDUCTED ON MONDAY, FEBRUARY 27, 2006

Page 56

1      A.    Yes.

2      Q.    You wrote that.  Correct?

3      A.    No, this is a standard RIF letter that is

4  in the policy.

5      Q.    So who drafted this letter, to your

6  knowledge?

7      A.    The general counsel's office in

8  consultation with the human resources office.

9      Q.    You said you have a retention register?

10     A.    Someone has it.  I don't have it in my

11  possession.

12     Q.    But why wasn't the retention register

13  attached to this letter?  Do you know?

14     A.    I would have no way of knowing.

15          That letter is a form letter that UPO has

16  used in every reduction in force I have been

17  involved with and that is consistent with its

18  policies.

19          MR. MELEHY:  Have this marked as Exhibit

20  4, please.

21

4d933ef4-d185-467d-9550-fc61beb3e0d0

DEPOSITION OF DANA JONES
CONDUCTED ON MONDAY, FEBRUARY 27, 2006

Page 79

1      A.   I don't have knowledge as to what the

2  policy says.

3      Q.   Who decided that Mr. Kakeh should be in

4  group six?

5      A.   General counsel's office and human

6  resources office.

7      Q.   Who in the general counsel office decided

8  that?

9      A.   Monica Beckman.

10     Q.   Who in human resources decided that?

11     A.   Richardson, he was the director.

12     Q.   What is his first name?

13     A.   Robert Richardson.

14     Q.   It was not your doing to put Mr. Kakeh in

15  category four?

16     A.   No, I produced none of the documents or

17  provided none of the interpretation for them.

18          MR. MELEHY:  Excuse me.  I left me

19  documents in the other room.  I will be right back.

20          (Pause in the proceedings.)

21          MR. MELEHY:  Let's have these marked as

4d933ef4-d185-467d-9550-ef16beb3e0d0

DEPOSITION OF DANA JONES
CONDUCTED ON MONDAY, FEBRUARY 27, 2006

Page 80

1    the next exhibits.

2              (Jones Deposition Exhibits Nos. 7, 8 and 9

3    were marked for identification.)

4              Have this marked as Number 8.

5              And this one marked as Number 9.

6              BY MR. MELEHY:

7        Q.    I will show you Exhibits 7, 8 and 9.

8              Mr. Jones, I will ask you to look at

9    Exhibit 7.

10       A.    Okay.

11       Q.    Do you see that?

12       A.    Yes.

13       Q.    See that block, you can look at the whole

14   thing if you would like and read it, if you feel

15   more comfortable.

16             The block at the top that is shaded, do

17   you see that and you see letters there, the date up

18   there, do you see that date?

19       A.    No.

20       Q.    I believe the date is March 29, 2004.

21   Let's verify that.

DEPOSITION OF DANA JONES
CONDUCTED ON MONDAY, FEBRUARY 27, 2006

Page 81

1          Exhibit 7 is a letter you wrote to Amin

2     Kakeh, correct, and signed.  Is that correct?

3          A.    It is a letter I signed.

4          Q.    You wrote to it Amin Kakeh.  Correct?

5          A.    It is addressed to Mr. Kakeh.

6          Q.    Did you write the letter?

7          A.    No.

8          Q.    Who did?

9          A.    It would have been either the general

10    counsel's office or the finance office, I don't

11    know which one, but I didn't write it.

12         Q.    Did you read it before you signed it?

13         A.    Yes.

14         Q.    Did you have an understanding of its

15    contents?

16         A.    Yes.

17         Q.    I will show you Exhibit 8.

18               Take a look at Exhibit 8.

19         A.    Okay.

20         Q.    Did you sign that letter, as well?

21         A.    Yes.

## DISTRICT OF COLUMBIA OFFICE OF HUMAN RIGHTS

AMIN KAKEH

      Charging Party

     v.                              Docket No.: 04-204-P(CN)

UNITED PLANNING ORGANIZATION, INC.

      Respondent

### UNITED PLANNING ORGANIZATION, INC.'S POSITION STATEMENT

As set forth in detail below, and as the attached Exhibits demonstrate, Mr. Amin Kakeh ("Charging Party" or "Kakeh") is not a victim of retaliation in any matter whatsoever. Moreover, as also discussed below, Charging Party cannot establish a *prima facie* case of retaliation under applicable law. As such, Mr. Kakeh's Amended Complaint must be dismissed as a matter of law.[1]

### I.

### BACKGROUND STATEMENT

On or about June 18, 2004, Charging Party filed an amendment to his original Complaint, maintaining, "on June 3, 2004, I was informed that my employment was being terminated, effective June 30, 2004, as part of a reduction-in-force." Such amendment, on its face, however, is wholly deficient for the reasons set forth below and must be dismissed as a matter of law. Moreover, as also discussed in detail below,

---

[1] This position statement to the District of Columbia Office of Human Rights ("DCOHR") is based upon our understanding and investigation of the facts at this time. By submitting this position statement, United Planning Organization, Inc. in no way waives its right to present new, different, or additional facts, arguments, or objections based upon subsequently acquired information or evidence. Moreover, this position statement, while believed to be true and accurate in all respects, does not constitute an affidavit and is not to be used as evidence in any proceeding in connection with the above-referenced charge.

— **EXHIBIT 5** — CONFIDENTIAL
MAK 2130

As a result of its decision to reorganize its finance department, and outsource that department's principal managerial functions and duties to Walker & Company[6], the following managerial jobs were eliminated, as they had now become superfluous in the face of such reorganization: Controller; Facilities Manager; Senior External Auditor; and Acting Deputy Controller.[7]  See Exhibits F and G, which reflect UPO's finance department's structure, pre and post – reorganization.

So, in early June, 2004, the affected employees, including Charging Party, received Reduction-In-Force notices.  See attached Exhibits H, I, J and K.

As Mr. Dana Jones' June 2, 2004 letter states, consistent with United Planning Organization, Inc.'s ("UPO's") established reduction-in-force policies and procedures, Charging Party fell into Group VI, along with the position of Acting Deputy Controller, by virtue of those jobs' "similarity of duties, functions, responsibilities and pay schedules."  Consequently, Mr. Kakeh's position as Deputy Controller fell into the same group -- Group VI -- as that of the Acting Deputy Controller, David Quashie.  Inasmuch as Charging Party was hired on June 29, 1998, as compared to David Quashie, who was hired on or about September 23, 1974, Mr. Quashie had more seniority.  As such, and again, consistent with UPO's procedures and policies, Charging Party was not eligible to be considered for the newly created position of Accounting Director.  See Exhibit H.

---

[6] By virtue of this outsourcing, among other duties, Walker & Company performs the duties previously performed by UPO's CFO, and also is directly responsible for UPO's cash management functions. Moreover, Walker & Company also oversees the functions of payroll, accounts payable, billing and accounts receivable, as well as UPO's grant program and funds, and it coordinates the preparation of reports to federal and D.C. governmental agencies.

[7] The then vacant position of "Accounts Receivable/Payroll Accountant" was also eliminated: it is now called "Accounts Payable."

CONFIDENTIAL
MAK 2134

Due to having more seniority than Charging Party, Mr. Quashie was offered the newly created job of Accounting Director, consistent with UPO's established reduction-in-force policies and procedures, "and Kakeh was so advised: "[t]his action therefore is being taken based on the number of jobs available in the Office of Finance to be filled in the Office of Finance Grouping VI and your relative standing among other UPO Office of Finance employees in the Job Family Grouping, based on your allowable length of creditable service." See Exhibit H.[8]

In view of the above, Charging Party cannot establish that his separation from employment was due to any involvement in any protective activity. Consequently, his claim of retaliation fails as a matter of law. *See Guerrero v. University of District of Columbia,* 251 F. Supp.2d 13 (Dist. D.C. 2003); *Millstein v. Henske,* 722 A.2d 850 (1999).

## II.  LEGAL ARGUMENT

### A.  Charging Party's Amended Complaint Fails to Present a Cognizable Claim and, therefore, Must be Dismissed.

Charging Party fails to advance a justiciable claim of retaliation.  In his amended Complaint, Charging Party merely states that [he] "was informed that my employment was being terminated, effective June 30, 2004, as part of a reduction-in-force."  Nowhere in his amended Complaint does Charging Party articulate the elements necessary to establish a *prima facie* case of retaliation under applicable law:

---

[8] Importantly, UPO invited Kakeh, as well as the other affected employees, to examine its Retention Register, so as to verify the "correctness of your retention standing relative to all other competing employees in the order of their seniority within your Job Family Grouping."  See Exhibit H.  Clearly, UPO had nothing to hide concerning the organization's Job Family Grouping and its records concerning allowable UPO creditable service.

CONFIDENTIAL
MAK 2135

Dated: this 31st day of August, 2004        Respectfully submitted,

By: _David A. Rosenberg_

David A. Rosenberg
Kevin M. Kraham
FORD & HARRISON LLP
1300 19th Street, N.W., Suite 700
Washington, DC 20036
TEL (202) 719-2000
FAX (202) 719-2077

Attorneys for Respondent UNITED PLANNING
ORGANIZATION, INC.

CONFIDENTIAL
MAK 2142