Westlaw.

Not Reported in F.Supp. Page 1
Not Reported in F.Supp., 1987 WL 8728 (D.D.C.), 47 Fair Empl.Prac.Cas. (BNA) 680, 7 Fed.R.Serv.3d 1289
**(Cite as: Not Reported in F.Supp.)**

United States District Court, District of Columbia.
SAMUEL COX, Plaintiff,
v.
CONSOLIDATED RAIL CORPORATION,
Defendant.
LAWTON FRAZIER, et al., Plaintiffs,
v.
CONSOLIDATED RAIL CORPORATION, et al.,
Defendants.
**Civ. A. Nos. 83-0514, 85-0845.**

March 12, 1987.

MEMORANDUM OPINION
FLANNERY, Senior District Judge.
*1 This matter comes before the court upon defendant United Transportation Union's motion to strike certain witness designations and upon defendant Consolidated Rail Corporation's motion in limine. After hearing oral argument, and after considering defendants' motions, plaintiffs' opposition, and the entire record in this case, defendants' motions will be granted in part and denied in part for the reasons stated below.

I. BACKGROUND

The case at bar is an action based on allegations of race and sex discrimination. The first complaint was filed with this court by plaintiff, Samuel Cox, against Consolidated Rail Corporation ('Conrail') on February 22, 1983. A separate action was filed in the United States District Court for the Eastern District of Pennsylvania by plaintiffs Lawton Frazier, Odyssey Gray, William Harling, Denise Johnson, Beachey Thompson, and three branches of the National Association for the Advancement of Colored People ('NAACP') against Conrail and the United Transportation Union ('UTU') on September 28, 1984.

The Pennsylvania District Court granted Conrail's motion to transfer the Frazier action to this court on February 7, 1985. The Cox and Frazier actions were subsequently consolidated. Plaintiffs' motions for class certification were denied. The matter is therefore before the court in regard to the individual claims of the plaintiffs in the Cox and Frazier cases.

Discovery proceeded for almost four years in the Cox case and for approximately two years in the Frazier case. All discovery was finally concluded by December 24, 1986, with the minor exception of a few expert witness depositions and plaintiffs filing supplemental responses to defendant Conrail's second set of interrogatories and second request for the production of documents (all of which are now complete). The trial has been bifurcated into issues of liability and damages, and is scheduled to commence on March 23, 1987.

On January 28, 1987, plaintiffs filed a pre-trial brief naming thirty-seven fact witnesses and two expert witnesses. On February 3, 1987, defendant UTU filed a motion to strike fourteen of the fact witnesses and Dr. Herbert Hill, one of the expert witnesses. On February 5, 1987, defendant Conrail filed a motion in limine to preclude the testimony of the fourteen fact witnesses contested by UTU, the testimony of four other fact witnesses, the expert testimony of Dr. Herbert Hill, and the portion of Dr. Richard Andrulis' expert testimony relating to the issue of whether Conrail's ETP testing program has a statistically significant adverse impact on blacks and females. These are the two motions pending before the court.

II. THE FOURTEEN FACT WITNESSES

Plaintiffs designated the following individuals to ' testify on direct or rebuttal, if appropriate, as to discrimination suffered by [him or her] and other blacks as firemen and in the ETP program by Conrail and the United Transportation Union':

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                                    Page 2

Not Reported in F.Supp., 1987 WL 8728 (D.D.C.), 47 Fair Empl.Prac.Cas. (BNA) 680, 7 Fed.R.Serv.3d 1289
**(Cite as: Not Reported in F.Supp.)**

1. A.B. Campbell
2. Alvin B. Crosby
3. Theodore Green
*2 4. Linwood M. Lyles
5. John D. Mack
6. Willie McClure
7. E.E. Pettiford
8. John C. Randolph
9. James V. Reese
10. Paul D. Robertson
11. Bradford G. Thompson
12. Wayne Worth
13. Marian J. Williams
14. Edward L. Youngblood

PRETRIAL BRIEF OF PLAINTIFFS LAWTON FRAZIER, ET AL. [hereinafter PRETRIAL BRIEF], at 47-50.

Defendants contend that despite numerous interrogatories whose scope clearly encompassed the proposed testimony outlined above, plaintiffs failed to identify these fourteen witnesses at any time prior to the close of discovery. Defendants argue, therefore, that given this eleventh hour identification, plaintiffs should be precluded from introducing testimony from these witnesses.

Plaintiffs attempt to justify their failure to identify the witnesses earlier by contending that the identities could not be uncovered any sooner. This position is simply untenable. The instant case does not involve a situation where plaintiff has just discovered one or two new witnesses who are able to provide additional support to its central claim. Plaintiffs here used the discovery process to find the vast majority of the witnesses to be used to support one of the key allegations of their complaints-that Conrail engaged in systematic and pervasive discrimination.

Of the twenty witnesses (excluding the plaintiffs themselves) designated to testify about the discrimination they have suffered, only six were identified prior to the close of discovery. This situation suggests that plaintiffs did not have a proper basis for bringing some of their allegations. Plaintiffs should have been aware of the circumstances supporting the allegations of their complaints at the time they filed this action. Relying on a review of defendants' records to determine the facts supporting their allegations reflects plaintiffs' misuse of the discovery process.

Furthermore, plaintiffs had two years, at a minimum, to conduct discovery. Yet they waited until the eve of trial before finally identifying so many witnesses. Even if plaintiffs did not deliberately withhold the identities of these individuals, they obviously failed to plan their discovery appropriately. If plaintiffs knew of the existence of these witnesses but could not provide their names and addresses until the receipt of explicitly designated records from defendants, then plaintiffs should have either informed this court and sought an adjustment in the discovery schedule to make appropriate time allowances, or, at the very least, informed defendants in the responses to their interrogatories. It is patently absurd for plaintiffs to suggest that the answer '[a]ny and all minorities working for Conrail . . .' could have adequately notified defendants that there would be such a late identification of so many witnesses.

As a result of plaintiffs' failure to identify the new witnesses in a timely manner, defendants are unable to take their depositions or to otherwise prepare for their anticipated testimony. If these belatedly identified witnesses are permitted to testify, defendants clearly will be prejudiced. Plaintiffs have attempted to interject a very large number of new witnesses shortly before trial. They have been unable to credibly justify their delay in this matter. This consolidated action has been pending for several years. The court cannot countenance plaintiffs' actions in this regard. The primary purpose of the discovery rules, prevention of surprise to one's opponent, would be undermined if these fourteen witnesses were permitted to testify. See Davis v. Marathon Oil Co., 528 F.2d 395, 403-04 (6th Cir. 1975). Plaintiffs are therefore precluded from introducing the testimony of any of these fourteen new fact witnesses.

III. NAACP FACT WITNESSES

*3 Plaintiffs have designated the following

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  Page 3

Not Reported in F.Supp., 1987 WL 8728 (D.D.C.), 47 Fair Empl.Prac.Cas. (BNA) 680, 7 Fed.R.Serv.3d 1289
**(Cite as: Not Reported in F.Supp.)**

Presidents of NAACP branch offices to 'testify about the historical efforts of the NAACP, and specifically the [witness'] Branch, to seek the total elimination of discrimination based on race practiced against persons already employed in the railroad industry, including Conrail, and to open the doors of employment in the railroad industry to additional blacks':
1. Alphonso Deal (Philadelphia branch)
2. Enolia P. McMillan (Baltimore branch)
3. Dr. Edward A. Hailes, Sr. (D.C. branch)

PRETRIAL BRIEF, supra, at 47-48. Additionally, plaintiffs have designated Ms. Olinda Moyd, a paralegal with the NAACP, to 'testify as to calculations, individual and summary exhibits she prepared' from the records of the defendants. PRETRIAL BRIEF, supra, at 49.

Conrail contends, for the same reasons noted previously with regard to the fourteen fact witnesses, that plaintiffs' failure to identify these four witnesses during discovery should result in their preclusion at trial. Indeed, as this court pointed out during the oral argument on February 13, 1987, these four witnesses could easily have been identified earlier. Plaintiffs attempt to justify the failure to identify these witnesses by contending that defendants should have known to pursue discovery related to the NAACP because three of its branches are named as plaintiffs. It does not follow, however, that because an organization is named as a party its officials necessarily intend to testify. Further, plaintiffs did not put defendants on notice as to which NAACP officials would testify.

Nevertheless, this court will not preclude plaintiffs from introducing the testimony of these witnesses at trial. This court is not convinced defendants will suffer significant prejudice if the witnesses are allowed to testify and defendants are permitted to depose them between now and the start of trial. The paralegal's proposed testimony does not appear to be very substantial. While the issue is a closer call with respect to the branch presidents, because the NAACP branches are named plaintiffs the harm they would suffer if their officials were barred from testifying appears to be much greater than any potential prejudice to the defendants. Therefore, in the exercise of this court's discretion, plaintiffs may introduce the testimony of the four NAACP fact witnesses at trial, and defendants may depose those witnesses between now and March 23, 1987.

### IV. DR. HERBERT HILL

Plaintiffs have designated Dr. Herbert Hill as one of their two expert witnesses. Plaintiffs stated in their pre-trial brief that 'Dr. Hill is anticipated to testify regarding the history of racial discrimination experienced by blacks in the Railroad Industry and as to the NAACP involvement to eliminate racial discrimination by the railroads and railroad unions.' PRETRIAL BRIEF, supra, at 52. Both defendants argue that Dr. Hill should be precluded from testifying since plaintiffs failed to identify him earlier.

*4 Plaintiffs' only justification for failing to identify Dr. Hill before the close of discovery is the bald assertion that '[i]t was only after determining the full extent and relationship of the ETP program to Conrail's and the UTU's predecessors did it become obvious that testimony from Professor Hill would be necessary . . ..' PLAINTIFFS' OPPOSITION TO DEFENDANT UTU'S MOTION TO STRIKE CERTAIN WITNESS DESIGNATIONS OF PLAINTIFFS and OPPOSITION TO DEFENDANT CONRAIL'S MOTION IN LIMINE TO PRECLUDE THE TESTIMONY OF CERTAIN WITNESSES DESIGNATED BY PLAINTIFFS [hereinafter PLAINTIFFS' OPPOSITION], at 10.

It is clear Dr. Hill must be precluded from testifying as an expert witness. Plaintiffs were specifically ordered on August 28, 1986 to designate their expert witnesses no later than September 16, 1986. Because of a dispute involving the order of proof with regard to statistical and job-relatedness issues, this court issued a further order on November 24, 1986 regarding the designation of experts testifying to those particular issues. That later order did not otherwise modify the August 28th order. Since Dr. Hill will not be testifying as to statistical or job-relatedness issues, plaintiffs were bound by the August 28th order to designate him no later than

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.    Page 4
Not Reported in F.Supp., 1987 WL 8728 (D.D.C.), 47 Fair Empl.Prac.Cas. (BNA) 680, 7 Fed.R.Serv.3d 1289
**(Cite as: Not Reported in F.Supp.)**

September 16, 1986. The designation of Dr. Hill as an expert witness in the pre-trial brief is patently a violation of this court's orders.

Plaintiffs also seem to contend that Dr. Hill may testify as a fact witness with regard to 'the actual efforts of the [NAACP] to document and eradicate the referenced discriminatory activities in the railroad industry by Defendants and their predecessors.' PLAINTIFFS' OPPOSITION, supra, at 10. As defendants point out, however, Dr. Hill's designation as a fact witness suffers from the same disability as the previously discussed fourteen new fact witnesses-plaintiffs failed to identify him during discovery.

Nevertheless, this court will permit plaintiffs to call Dr. Hill solely in his capacity as a fact witness, not as an expert. As discussed earlier with regards to plaintiffs' designation of the NAACP branch presidents, this court is not convinced defendants are so unfairly prejudiced by this proposed testimony as to justify its exclusion at trial. Defendants, of course, may depose Dr. Hill before trial commences.

### V. DR. RICHARD ANDRULIS

Plaintiffs have designated Dr. Richard Andrulis as a rebuttal expert witness on two issues. First, he is expected to testify as to the 'non-job-relatedness' of defendants' ETP testing program. Second, he is expected to testify as to the statistical significant adverse impact of the ETP testing program on blacks and females. Defendant Conrail has no objection to Dr. Andrulis testifying with regard to the former issue. Conrail contends, however, that Dr. Andrulis should be barred from testifying with regards to the latter issue since this court ordered on November 24, 1986 that plaintiffs were precluded from introducing expert testimony to establish their prima facie case of discriminatory impact.

*5 Plaintiffs point out, however, that Dr. Andrulis will not be used to establish their prima facie case. He is simply a rebuttal witness. The point is well taken. Dr. Andrulis' testimony on statistics cannot be barred on the basis of the November 24th order.

In the memorandum supporting their Fed. R. Civ. Pro. 26(b)(4) statement, plaintiffs stated that they had chosen not to use expert testimony to establish discriminatory impact but that if defendants decided to utilize an expert to show lack of adverse impact, then as part of their case in rebuttal, plaintiffs might designate an expert on the issue.

Had plaintiffs identified Dr. Andrulis as their rebuttal expert on the statistical issue before the close of discovery, his testimony clearly would be admissible. By once again waiting until this late date to give defendants notice, however, plaintiffs have unnecessarily complicated matters. In spite of this delay, this court will not preclude this expert testimony. Defendants did not designate their expert on the statistics issue until December 15, 1986-that is, until shortly before the discovery cutoff on December 24, 1986. Admittedly, plaintiffs should have requested an extension of time to designate a rebuttal expert. They knew this court had granted enlargements of time for other, narrowly-defined matters. Furthermore, plaintiffs have offered no reason at all for not identifying Dr. Andrulis earlier.

Despite these shortcomings, however, Dr. Andrulis' testimony as rebuttal evidence regarding the statistics issue will not be barred. As noted in this court's November 24, 1986 order, defendants had wrongfully refused to designate their expert on the statistics issue. The result was that defendants did not finally designate their expert on the matter until December 15th. In the normal course of handling such matters, this court would have given plaintiffs another thirty days to designate a rebuttal expert, or until about January 15, 1987. Since plaintiffs' pre-trial brief was filed shortly after that date (i.e., on January 28th), it does not appear that defendants will be significantly prejudiced if this rebuttal testimony is admitted at trial.

Of course, defendants may depose Dr. Andrulis before trial, but only with regard to his proposed testimony on the statistics issue. Finally, it must be emphasized that plaintiffs may only introduce Dr. Andrulis' testimony on the statistics issue if defendants choose to utilize their expert on the subject to show a lack of adverse impact.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-01271-GK    Document 57-5    Filed 06/05/2006    Page 5 of 5

Not Reported in F.Supp.                                                                                                     Page 5
Not Reported in F.Supp., 1987 WL 8728 (D.D.C.), 47 Fair Empl.Prac.Cas. (BNA) 680, 7 Fed.R.Serv.3d 1289
**(Cite as: Not Reported in F.Supp.)**

### VI. CONCLUSION

Plaintiffs' have not justified their failure to identify, prior to the close of discovery, the fourteen new fact witnesses designated in their pre-trial brief. The prejudice to defendants from interjecting so many new witnesses on the eve of trial is obvious. Defendants' motions to preclude those witnesses' testimony are therefore granted. The prejudicial impact regarding the four NAACP fact witnesses, Dr. Herbert Hill, and Dr. Richard Andrulis, however, is not deemed as significant. Defendants' motions to preclude those witnesses' testimony are thus denied. An appropriate Order accompanies this Memorandum Opinion.

### ORDER

*6 This matter came before the court upon defendant United Transportation Union's motion to strike certain witness designations and upon defendant Consolidated Rail Corporation's motion in limine. After hearing oral argument, and after considering defendants' motions, plaintiffs' opposition, and the entire record in this case, it is, by the court, this 12th day of March, 1987,

ORDERED that for the reasons stated in the accompanying Memorandum Opinion, defendants' motions are granted in part and denied in part; and it is further

ORDERED that plaintiffs shall be precluded from introducing any testimony from the following witnesses:
1. A.B. Campbell
2. Alvin B. Crosby
3. Theodore Green
4. Linwood M. Lyles
5. John D. Mack
6. Willie McClure
7. E.E. Pettiford
8. John C. Randolph
9. James V. Reese
10. Paul D. Robertson
11. Bradford G. Thompson
12. Wayne Worth
13. Marian J. Williams
14. Edward L. Youngblood

and it is further

ORDERED that plaintiffs shall be precluded from introducing the testimony of Dr. Herbert Hill as expert opinion, but may utilize him to the extent he testifies as a fact witness; and it is further

ORDERED that defendants may depose Dr. Hill regarding his proposed testimony at any time prior to the commencement of trial; and it is further

ORDERED that plaintiffs may introduce the testimony of the four NAACP fact witnesses (Alphonso Deal, Enolia McMillan, Dr. Edward A. Hailes, Sr., and Olinda Moyd), and defendants may depose those witnesses at any time prior to the commencement of trial; and it is further

ORDERED that plaintiffs may introduce as rebuttal evidence the testimony of Dr. Richard Andrulis regarding the issue of whether defendants' ETP testing program has a statistically significant adverse impact on blacks and females, but only if defendants utilize their expert on that issue to show a lack of adverse impact; and it is further

ORDERED that defendants may depose Dr. Andrulis at any time prior to the commencement of trial, but only regarding his proposed rebuttal testimony on the statistics issue.

D.D.C., 1987.
Cox v. Consolidated Rail Corp.
Not Reported in F.Supp., 1987 WL 8728 (D.D.C.), 47 Fair Empl.Prac.Cas. (BNA) 680, 7 Fed.R.Serv.3d 1289

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.