# EXHIBIT 14

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MOHAMMED AMIN KAKEH,

      Plaintiff,

  v.

UNITED PLANNING ORGANIZATION,

      Defendant.

CIVIL ACTION NO. 1:05-CV-1271
(GK/JF)

### DECLARATION OF DANA JONES

I, Dana Jones, make the following declaration under penalty of perjury pursuant to 28 U.S.C §1746 and declare that the following is true and correct:

1.    I am over the age of 18, am under no legal disability, and make this declaration based upon my personal knowledge.

2.    I am employed with the United Planning Organization, Inc. ("UPO") as the Chief Executive Officer.

3.    The Chief Executive Officer is responsible to the Board of Directors for the day-to-day management of UPO. The Board is comprised of judges, lawyers, District of Columbia Mayoral appointees and other representative of the community in the District of Columbia. The day-to-day management of UPO is led by a Chief Executive Office, Chief Operating Officer, Chief Financial Officer, Program Directors and the General Counsel.

4.    UPO is the designated community action agency for the District of Columbia which receives the Community Services Block Grant ("CSBG") in the District of Columbia. The Department of Human Services ("DHS") provides programmatic and financial oversight for

the CSBG. The Office of CSBG at DHS provides training resources to UPO, meets quarterly with UPO employees to monitor UPO's service delivery, and conducts regular in-depth monitoring site visits.

5.    Shortly after I was hired, I immediately focused on the financial management of UPO which was the primary area that DHS identified as problematic.

6.    UPO also receives funding from the U.S. Department of Health and Human Services ("DHHS") to administer the Head Start program, which provides pre-school education and services.

7.    On April 26, 2004, DHHS designated UPO as a high-risk grantee. A "high-risk organization is one whose management practices raise serious questions about its ability to assure proper financial stewardship of grant funds." *See* Exhibit A. As a result of its high risk status, UPO had to immediately establish proper internal controls to safeguard federal funds and avoid a recurrence of the financial compliance deficiencies. UPO could not risk losing its Head Start funding.

8.    UPO sent requests for proposals ("RFPs") to a number of independent accounting and financial firms for proposals to manage the UPO Finance Office.

9.    UPO initially received proposals from F.S. Taylor and Thompson Cobb Bazilio & Associates ("TCBA").

10.    On April 20, 2004, I was present at a meeting of UPO's Ad Hoc Management Committee, which is a subcommittee of the Board of Trustees, during which it voted to recommend to the full Board of Trustees that F. S. Taylor be retained to perform functions in the

Finance Office for one year and to conduct a reduction-in-force in the Finance Office. *See* Exhibit B.

11.     On April 27, 2004, the Board of Trustees approved my recommendation to retain F. S. Taylor and conduct a reduction-in-force in the Finance Office. *See* Exhibit C.

12.     On April 27, 2004, I advised the Board of Trustees that it would have to obtain approval from DHS to use $1.5 million in CSBG funds to help reduce the UPO debt. *See* Exhibit C

13.     When employees learned about the effort to outsource the entire Finance Office, they complained to me that the nonmanagement employees had not received proper training or performance evaluations.

14.     Gladys Mack, then Deputy Executive Director, had received a referral to Walker & Company, LLP ("Walker") and recommended to me that UPO send an RFP to the firm. UPO sent Walker an RFP, and Walker submitted a proposal.

15.     After reviewing Walker's proposal, Ms. Mack and I met with Ron Walker, Roy Layne and another Walker employee. I informed Mr. Walker that UPO still intended to outsource the management of the Finance Office, but UPO employees would continue to fill the staff positions. Mr. Walker still was interested, and was agreeable to being responsible for the filling of the positions of Chief Financial Officer, Accounting Director, Finance Director and Grants Manager with Walker employees.

16.     On June 3, 2004, I received a request from Mohammed Amin Kakeh to reconsider UPO's decision to place him on administrative leave from June 2, 2004 through June 30, 2004,

- 3 -

and the abolishment of his position as Controller under the reduction-in-force policy. *See*

Exhibit D.

17.    His appeal was denied because he failed to explain how the RIF notice was not in

compliance with the UPO RIF policy and the reason why he believed his position should not be

eliminated.

I declare under the penalty of perjury that the contents of the foregoing Declaration are

true and correct.

Executed this 27 th day of November, 2006.

Dana Jones

DC 63287 1

- 4 -

# EXHIBIT A





*KP Bea  Chair*
*Bill Hughey*
*GlAdy MACE*

**DEPARTMENT OF HEALTH & HUMAN SERVICES**
Administration for Children and Families, Region III

Suite 864
150 S. Independence Mall West
Philadelphia, PA 19106-3499

*Return Thanks*

APR 2 6 2004

Mr. Russell Simmons, Board Chairperson
United Planning Organization
301 Rhode Island Avenue, N.W.
Washington, DC 20001

Reference: Head Start/Early Head Start

Grant No.: 03CH0380

Dear Mr. Simmons:

The purpose of this letter is to inform you of my decision to designate the United Planning Organization (UPO) as a high-risk grantee, effective with the date of this correspondence. A high-risk organization is one whose management practices raise serious questions about its ability to assure proper financial stewardship of grant funds. I am taking this action in accordance with 45 CFR Parts 74.20-74.28, Financial and Program Management and 45 CFR 74.50-74.53, Reports and records.

Grantees must meet all the financial management standards at 45 C.F.R. Part 74.20-74.28 and 45 C.F.R. 74.50-74.53, Reports and Records, including those related to (1) accounting records, (2) internal control, (3) budgetary control, (4) allowable costs, allocable costs, and (5) source documentation. The inability of UPO to meet the standards noted above demonstrates that financial management systems have failed to implement adequate internal controls to adequately safeguard federal funds.

Our onsite PRISM review during the week of March 15-19, 2004 revealed a complete absence of senior management and Board accountability relative to the management of and financial charges to the Head Start program. To the extent that the Director and staff of the Head Start program had authority over expenditures, this lack of accountability was not evident at the Head Start program level. Internal controls designed to manage cash drawdowns were bypassed by UPO executive management; payments to contracts were made without source documentation showing benefits accruing to the Head Start program; and indirect charges in excess of the allowable rate may have been charged to the federal grants. This latter finding was developed in the absence of any direct relationship between charges reported in the UPO general ledger and those charges reported on the SF 269's provided to the Regional Office.

CONFIDENTIAL
MAK 0178

The high-risk status and the heightened reporting requirements will remain in effect until I am assured that appropriate internal control has been established to safeguard federal funds, and systems have been implemented to prevent recurrence of this situation. You must also demonstrate that UPO has an accounting system that is certified as capable of safeguarding federal funds.

As a result of your high-risk designation this office will closely monitor your grant activities. Our staff can assist you in reviewing progress and providing information regarding Federal regulations and guidelines. In addition, the resources of the Region III Head Start Technical Assistance System are available to assist with corrective action. Please let us know if you require technical assistance in addressing these issues.

My decision to designate UPO as High Risk, effective immediately is final. However, within 30 calendar days after the date of this letter, you may submit by certified mail a written request for reconsideration. This request should state why UPO should not be classified as high-risk, and include sufficient documentation to support your position. A final decision on such a request will be made within fifteen (15) days of receipt of your request.

Meeting these additional reporting requirements does not eliminate your responsibility to resolve the findings requiring corrective action that resulted from your March 15-19, 2004 Head Start PRISM review.

I urge you to contact Burma Paige Stokes, Head Start Program Specialist, at (215) 861-4042 or Ed Wisniewski, Financial Operations Specialist, at (215) 861-4003.

Sincerely,

David J Lett
Regional Administrator

cc: Ms. Alexis Robeson, Oversight Committee Chairperson

CONFIDENTIAL
MAK 0179

# EXHIBIT B



# UNITED PLANNING ORGANIZATION

## MINUTES OF AD HOC MANAGEMENT COMMITTEE

**April 20, 2004**
**6:30 p.m.**

**PRESENT:**    Members Attending:

Mrs. F. Alexis H. Roberson, Temporary Chair
Ms. S. Kathryn Allen
Judge Rafael Diaz
Judge Henry Greene
Mr. Nathaniel Howard
Ms. Brenda Kelly
Hon. Annice M. Wagner

Members Absent:    Mrs. Carol Caldwell

Staff Attending:

Mr. Dana Jones, Interim Executive Director
Mrs. Gladys Mack, Deputy Executive Director
Ms. Josephine F. Thompson, Special Assistant to UPO President/Recorder

I.    **AGENDA** - An Agenda was distributed and discussed as follows:

**Approval of Minutes from the Meeting on April 6, 2004**

The April 6, 2004, Minutes were approved as corrected.

**Issues Discussed on April 6, 2004, but Not Resolved**

- 

1.

**CONFIDENTIAL**
**MAK 5898**

2.    UPO's 501(c)3 Status

Mr. Jones reported that UPO is in compliance and staff is following through *was*
The major issue for staying in compliance is the completion of the audit by *this done*
June 30, 2004. The audit will be two months ahead of schedule. Then we will
have to file the Form 990 and appropriate documents to stay in compliance.
The Form 990 is required to be posted, which can be done on the UPO
website.

3.    Discussion of claims to retrieve misused funds

(a)    It was explained that UPO received a letter that indicated that a
$10,000 check from John Poulos, owner of the boat, was all the
money that would be returned.

There is about $84,000 involved
in this transaction. The committee agreed to recommend to the Board
that staff (Interim Executive Director and General Counsel) be
authorized to pursue legal action to retrieve any and all payments
made by Mr. Benjamin Jennings for the unauthorized purchase of the
boat, "My Fine Lady," against the owner, John Poulos.

(b)    There was a discussion on settling the account regarding the lease
with Watkins Security. Mr. Jones reported that Watkins Security
owes UPO some $27,000 in utility costs and UPO owes Watkins
Security approximately $81,000. Watkins has agreed to offset their
billing by what they owe UPO. Mr. Jones also reported that we are
awaiting a report on Watkins Security from the Inspector General.

(c)    With respect to the $108,000 loan to the North Capital Area Business
Association, a $20,000 check from NCABA bounced and staff
recommended taking all necessary steps to retrieve the full $108,000
from NCABA. Therefore, the Committee agreed to recommend to
the Board that staff be authorized to take all necessary steps to
retrieve money loaned to the North Capital Area Business
Association.

CONFIDENTIAL
MAK 5899

(d)    Mr. Jones reported that when the D.C. Prevention Partnership went out of business, Mr. Jennings loaned from UPO funds $65,000 - $70,000 for moving expenses, storage fees and payment for some of their bills.

Following a discussion the Committee agreed to recommend to the Board that staff be authorized to pursue all legal avenues to collect money loaned to the D.C. Prevention Partnership.

(e)    Mr. Jones reported that there are two discrimination claims against UPO with the Office of the D.C. Office of Human Rights. Both individuals are in the UPO Finance Office - Ms. Elahe Madani and Mr. Amin Kakeh. Hartford Insurance has assigned Ford & Harrison to represent UPO in these cases.

• Review of the status of the committees of the Board and the need for Bylaws review

Chief Judge Wagner pointed that there are a number of committees listed in the Bylaws which have not functioned for a very long time and that modifications of the bylaws could address some of the issues discussed. Therefore, it was recommended that the UPO President appoint a Bylaws Committee to review and make recommendations concerning necessary changes in the bylaws, including, among others, examining the position treasurer, the position of secretary, term limits, the size of the Board, the meeting schedule of the Board, the committee structure and responsibilities, and signature authority on bank accounts, and that the committee include at least two members of the Ad Hoc Management Committee.

Mr. Jones commented that the Board needs to think about whether or not it needs Executive Director who is also the Secretary of the Board.

• Monthly financial reports (budget to spending report)

Mrs. Mack explained the Revised Fiscal Year 2004 Operating Budget Summary by

CONFIDENTIAL
MAK 5900

Program dated April 19, 2004, covering the period October 2003 through March 2004. She presented the summary in detail and entertained questions regarding the revised budget. The summary also showed the budget for the following programs, as well as expenses year-to-date and the projections for the balance of the year:

(1)    Community Services Block Grant Program
(2)    Head Start Program
(3)    Early Head Start Program
(4)    Day Care & Related Programs
(5)    Aging Programs
(6)    Energy and Home Preservation
(7)    Special Emphasis Programs
(8)    Other Grants
(9)    Private Funds
(10)   MLK Breakfast

Detailed explanations were also included in the report. Mr. Jones also presented a preliminary breakdown of the FY 2003 deficit. In response to questions on the report, Mr. Jones pointed out it is apparent that UPO needs to change its spending pattern, mainly reducing the spending. The office directors are aware of where the red flags are and know where the budget cuts need to be made. Therefore, the report will be revised for presentation at the April 27, 2004 Board meeting.

**Policy and Procedures for Authorization of Check Signing**

Mr. Jones reported that staff is developing a draft manual which would address all financial policies and procedures to cover out-of-town travel, credit card use, utilization of vehicles, the procedures for the purchase of goods and services, etc. He will review the draft manual with the office directors. He will then present the draft manual to the Ad Hoc Management Committee, the appropriate Board committee and full Board for review.

**Update from the Interim Executive Director**

•    Discussion of 2003 Audit Report

Mr. Jones stated that the FY 2003 audit report will be ready for submission to the Bank on April 22, 2004.

Mr. Jones referred to a Preliminary Breakdown of the UPO Deficit for FY 2003. He explained that ad a result of a meeting with Thompson, Cobb, Bazilio and Associates (TCBA), it is expected that the FY'03 change in net assets to be -$1.7. The break down of the deficit is as follows:

CONFIDENTIAL
MAK 5901

| | | | |
|---|---|---|---|
| CSBG | | +$1,500,000 |
| Head Start | | - 1,300,000 |
| Day Care | | - 300,000 |
| Office on Aging | | - 300,000 |
| Other Programs | | - 400,000 |
| Unrestricted | | - 500,000 |
| Bad Debts | | - 200,000 |
| SCCDS | -74,000 | |
| Boat | -71,000 | |
| Fishing Trips | - 4,000 | |
| DCCPP | - 7,000 | |
| Depreciation | | - 200,000 |

Mr. Jones explained that these figures include $211,000 in credit card charges not yet allocated to programs and $520,000 related to accounting errors Head Start. Mr. Jones stated that staff obtained every credit card bill and reviewed all credit card receipts and about one half of the receipts are allowable costs. The other half are not allowable costs.

Mr. Jones reported that by the end of the month, UPO will have a qualified compliance report - A-133. He also stated there needs to be a meeting with Dr. Eboda about using the leftover $1.5 million in CSBG funds to apply to some of UPO's debt and that Dr. Eboda has a reluctance, but will give his answer soon.

Mr. Jones also reported that the CSBG Monitoring Team has returned for followup. There was a mutual agreement as part of the process to try to do an open disclosure piece, while the audit is cleaned up, so that the Team can see actually for themselves that some of these things they made assumptions about, in terms of costs, are not real but rather here in the statements by an independent CPA. Therefore, when a final report is released , the numbers will be closer to right.

Mr. Jones explained that the Bank has the most to lose from this process and we have to bring them as partners, because part of the issue should be to protect their debt. There is an unsecured line of credit of $1.8 million which is equivalent to the debt.

- Debt Reduction

In terms of debt reduction, Mr. Jones stated that UPO needs to obtain current appraisals on the properties and he will approach the Bank on using the equity to pay down some of the bad debt that cannot be applied to government funds. He said that the Bank should be willing to do this because it can apply the $1.8 million to a fixed asset which will appreciate in value and it is less risk to his bank in having a $1.8

CONFIDENTIAL
MAK 5902

million non-collectable line of credit that's tied to an operational account.  It would be in the Bank's best interest to pursue this avenue with UPO because it protects that line of credit and the Bank does have $1 million in CDs as collateral that belong to this agency.  It was recommended that staff contact a financial advisor before pursuing this.

Mr. Jones shared some of these strategies for submitting the proposal to the Bank and there was additional discussion as to how large the deficit is.

- Accounting - Forward

Mr. Jones reported that he had received three (3) bids for outsourcing services performed by the Finance Office, as follows:

| | | |
|---|---|---|
| TCBA | - | $1,010,232 for one year |
| KPMG | - | $890,000 for one year (which is the current cost) |
| F.S. Taylor | - | $847,000 for one year. |

## INCLUDE THE RATIONALE FOR OUTSOURCING SERVICES

Mr. Jones recommended F. S. Taylor and Associates because of their experience and knowledge of UPO's System, its history with performing services for UPO, as well as having the lowest bid.  The Committee members expressed their concern that we make sure that UPO is in compliance with the procurement policies for issuing a sole source contract.

Following a discussion, the following motion was approved:

That the Ad Hoc Management Committee recommend to the UPO Board of Trustees that UPO enter into a contract with F. S. Taylor & Associates to perform functions in the Finance Office for a period of one year and that the Interim Executive Director and General Counsel be authorized to issue simultaneously a reduction-in-force in the Finance Office to include the offer of a thirty-day paid notice and up to one and a half (1 ½) months earned annual leave.

Another part of the justification for using F. S. Taylor & Associates was that three proposals were received and the federal policy allows ON AN EMERGENCY BASIS the issuance of the contract without a wide spread request for bids.

There also was a discussion on the cost of a reduction-in-force, notification requirements under the collective bargaining agreement and the availability of an employee retirement plan. The time frame for notification to employees is dependent

CONFIDENTIAL
MAK 5903

upon the completion of the FY 2003 audit.

- Vehicles

With respect to the use of the vehicle by the UPO President, the UPO President will file Form 1099s to amend tax returns from two years ago. With respect to the five (5) vehicles, Mr. Jones stated that staff is working with car dealerships to dispose of them and he will provide a report on the progress of that issue.

- Other Matters

(CSBG Team)

Mr. Jones reported that the CSBG Monitoring Team, at the invitation of Dr. Eboda, has returned to UPO to review what corrective actions had been taken since the draft report was issued.

It was pointed out that during the presentation of the CSBG draft report, Dr. Eboda had recommended that UPO obtain an outside group to investigate the allegations contained in the report and that his office may be able to assist with the cost of such an investigation. These was a lengthy discussion on whether there still is a need for an outside group to conduct an investigation of the allegations of improprieties or whether the hiring of an Interim Executive Director and corrective actions already taken would be sufficient. Because the original recommendation by Dr. Eboda had not been discussed with Mr. Jones, Mr. Jones stated that he will talk with Dr. Eboda and if it was felt that it was needed, then he would request financial assistance from DHS.

Mr. Jones also pointed out that what the public wants UPO to do is to establish the precedent to safeguard public money.

Mr. Jones stated that when the final report of the CSBG Monitoring Team is presented, UPO will have a corrective action plan, reviewed and approved by the Ad Hoc Management Committee, that will address the issues, as well as provide future steps to follow.

(Meals for the Office on Aging Program)

CONFIDENTIAL
MAK 5904

Mr. Jones reported that in spite of all our challenges, UPO was asked by the Office on Aging to serve an additional 105 people on a temporary basis. These services were originally contracted to the Senior Citizens Counseling & Delivery Service (SCCDS), which was underperforming on the contract. That contract has been defunded.

(Staff Meetings)

Mr. Jones reported that the staff meetings have been going well and that the staff welcomed the opportunity for input, because they felt that it was not taking place. Therefore, progress is being made

Mr. Jones reported that he has a meeting scheduled with Peter Jones, from the Mayor's office, who focuses on Ward 6 issues. He will provide a report on that meeting.

Mr. Jones stated that he will propose at the next Ad Hoc Management Committee meeting, a reorganization that limits the control of the Executive Director, as it relates to staff management. He stated that the former executive director had 29 people reporting directly to him and he felt that this could not be done. Mr. Jones wants to significantly reduce that number and, as well as reorganize the agency for more accountability.

Mr. Jones recommended that when the Bylaws are completed, the Board needs to plan the orientation for all board members. He said he has already started pulling together information on what that needs to look like and that Dr. Eboda has agreed to be a part of the orientation.

(New Opportunities)

Mr. Jones reported that UPO has a couple of new grant opportunities it will pursue: one for an addiction prevention program and one for a women's business center to put into the Petey Greene Center. In addition to that, UPO is in discussion with the Department of Health about a $600,000 program to provide assistance to people with AIDS who need rental assistance. Dialogue is continuing with funding sources to assure them that UPO can competently manage their money.

**Report of Nominating Committee**

The Nominating Committee reported the following:

1.   It will recommend to the Board that Ms. Joan Phillips, CEO at Greater Southeast Community Hospital, fill a vacancy under the category of Major

CONFIDENTIAL
MAK 5905

Groups & Interests.

2.  It will request that the UPO President send a letter to the Mayor to consider two people the Committee has interviewed to fill the vacancies under the category Public Officials (designated by the Mayor). The two individuals are Ms. Brenda Donald Walker and Mr. Neil Albert.

3.  Letters will be sent to the delegate agencies which have vacancies on the board.

4.  The Committee, along with the Interim Executive Director, will be working on a proposed structure for the selection of an executive director.

## II.  SUMMARY OF RECOMMENDATIONS TO THE BOARD:

1.  That staff (Interim Executive Director and General Counsel) be authorized to pursue legal action to retrieve any and all payments to purchase the boat, "My Fine Lady," from the owner, John Poulos.

2.  That staff be authorized to take all necessary steps to retrieve money loaned to the National Capital Area Business Association.

3.  That staff be authorized to pursue all legal avenues to collect money paid on behalf of the D.C. Prevention Partnership for moving and storage fees.

4.  That a Bylaws committee be appointed to review and make recommendations concerning necessary changes in the bylaws, including, among others, examining the position treasurer, the position of secretary, term limits, the size of the Board, the meeting schedule of the Board, the committee structure and responsibilities, and signature authority on bank accounts, and that the committee include at least two members of the Ad Hoc Management Committee.

5.  That UPO enter into a contract with F. S. Taylor & Associates to perform functions in the Finance Office for a period of one year and that the Interim Executive Director and General Counsel be authorized to issue simultaneously a reduction-in-force in the Finance Office to include the offer of a thirty-day paid notice and one and a half (1 ½) months paid leave.

## III.  SUMMARY OF STAFF ASSIGNMENTS:

CONFIDENTIAL
MAK 5906

3.    That copies of all financial operating policies be provided to the Management Committee.

4.    That the UPO procurement policy be thoroughly reviewed regarding the issuance of a sole source contract.

5.    That a corrective action plan be developed.

6.    That a proposed selection process for executive director be developed and recommended to the Ad Hoc Management Committee.

IV.    **NEXT COMMITTEE MEETING DATES SUBJECT TO CHANGE:**

Tuesday, April 27, 2004 - 5:30 p.m.

V.    **SUGGESTED DATE FOR NEXT BOARD MEETING:**

Tuesday, April 27, 2004 - 6:30 p.m.

VI.    **ADJOURNMENT**

The meeting adjourned at 10:47 p.m.

**RECORDER:**    Josephine F. Thompson, Special Assistant to UPO President

CONFIDENTIAL
MAK 5907

# EXHIBIT C



# UNITED PLANNING ORGANIZATION

## AD HOC MANAGEMENT COMMITTEE REPORT

DATE: April 27, 2004

REPORT TO:        UPO Board of Trustees

REPORT FROM:    Mrs. F. Alexis H. Roberson, Temporary Chairperson

**I.**  **Dates of Meeting**: April 20, 2004      **Time**: from 6:30 p.m. to 11:05 p.m.

Other Members Attending:                    Staff Attending:

Ms. S. Kathryn Allen                    Monica Scott Beckham, Esq.
Judge Rafael Diaz                       Mr. Dana M. Jones
Judge Henry Greene                     Mrs. Gladys Mack
Mr. Nathaniel Howard                   Ms. Josephine F. Thompson
Ms. Brenda Kelly
Chief Judge Annice Wagner

Members Absent:      Mrs. Carol Caldwell

**II.**  **TOPIC(S) OF DISCUSSION (Agenda):**

1.  **Approval of Minutes from the Meeting on April 6, 2004**

2.  **Issues Discussed on April 6, 2004, but Not Resolved**

- Review of the status of the committees of the Board
- The need for Bylaw review and possible change (time table -- assignments)
- Out-of-town travel policy (written and distributed to staff)
- Credit card use and policy (written and distributed to staff)
- Policy on utilization of vehicles (written and distributed to staff)
- Procedure for the purchase of goods and services (written and distributed to staff)
- Monthly financial reports (budget to spending report)

**CONFIDENTIAL**
**MAK 5908**

**UPO AD HOC MANAGEMENT COMMITTEE REPORT OF MEETING ON April 20, 2004**

3.  **Policy and Procedures for Authorization of Check Signing**

4.  **In-service Training for Staff**

5.  **Update from the Interim Executive Director**

    - Discussion of 2003 Audit Report
    - Discussion on Financial Department
    - Plan for addressing deficit
    - Discussion of meeting with Dr. Eboda
    - Report on meetings with media
    - Comments on the financial status of UPO
    - Discussion of the search process for the new director
    - Accomplishments since April 6, 2004
    - Problems Encountered that Need Board Attention
    - Additional Support Needed (If Any)

5.  **Update from the Nominating Committee**

    - Vacancies on the Board
    - Treasurer's Position

6.  **Next Meeting Dates Subject to Change**

    - Tuesday        4/27/04        5:30 PM

III.  **RECOMMENDATIONS:**

1.  That staff (Interim Executive Director and General Counsel) be authorized to pursue legal action to retrieve any and all payments to purchase the boat, "My Fine Lady," from owner, John Poulos.

2.  That staff be authorized to take all necessary steps to retrieve money loaned to the North Capitol Area Business Association.

3.  That staff be authorized to pursue all legal avenues to collect money paid on behalf of the D.C. Prevention Partnership for moving and storage fees.

4.  That a Bylaws committee be appointed to review and make recommendations concerning necessary changes in the bylaws, including, among others, examining the position treasurer, the position of secretary, term limits, the size of the Board, the meeting schedule of the Board, the committee structure and responsibilities, and signature authority on bank accounts, and that the committee include at least two

2

CONFIDENTIAL
MAK 5909

**UPO AD HOC MANAGEMENT COMMITTEE REPORT OF MEETING ON
April 20, 2004**

members of the Ad Hoc Management Committee.

5.   That UPO enter into a contract with F. S. Taylor & Associates to perform functions
     in the Finance Office for a period of one year and that the Interim Executive Director
     and General Counsel be authorized to issue simultaneously a reduction-in-force in the
     Finance Office to include the offer of a thirty-day paid notice and one and a half (1 ½)
     months paid leave.

**IV.    STAFF ASSIGNMENTS:**

3.   That copies of all financial operating policies be provided to the Management
     Committee.

4.   That the UPO procurement policy be thoroughly reviewed regarding the issuance of
     a sole source contract.

5.   That a corrective action plan be developed.

6.   That a proposed selection process for executive director be developed and
     recommended to the Ad Hoc Management Committee.

**CONFIDENTIAL
MAK 5910**

# UNITED PLANNING ORGANIZATION
## BOARD OF TRUSTEES SPECIAL MEETING

### April 27, 2004

**PRESENT:**

S. Kathryn Allen, Esq.
Rev. Dr. William H. Bennett II
Mrs. Dorothy M. Brown
Mrs. Carol Caldwell
Ms. Janice Eichhorn
Mrs. Ruth Ellerbe
Hon. Henry F. Greene
Mr. Clyde E. Howard, Jr.
Mr. Nathaniel Howard
Mrs. Doris V. Johnson
Ms. Carrolena Key
Ms. H. Alexis F. Roberson
Mr. Russell D. Simmons
Hon. Annice M. Wagner
Ms. Emma Ward
Ms. Daria Winter
Ms. Elva Worthington

**ABSENT:**

Mrs. Theresa F. Brown
Hon. Rafael Diaz
Ms. Brenda Kelly
Rev. Frank D. Tucker
Mr. Therman Walker

Mr. Dana M. Jones,  Interim Executive Director/Acting Secretary

**GUESTS:**     Dr. Tunde Eboda, CSBG Program Manager

**STAFF:**

Monica Scott Beckham, Esq.
Mr. William Hughey (for presentation only)
Mrs. Gladys W. Mack
Ms. Sheila Shears
Ms. Josephine F. Thompson

The Board of Trustees of the United Planning Organization met at 6:30 p.m. in Executive Session on Tuesday, April 27, 2004, in the Russell D. Simmons Board Room at 301 Rhode Island Avenue, N.W., Washington, D.C.  The UPO President, Mr. Russell D. Simmons, called the meeting to order at 7:00 p.m.

A Revised Agenda was distributed and adopted as presented.

**AGENDA:**

**MINUTES:**

The Minutes of the Board of Trustees meetings on January 29, 2004 and April 1, 2004, were approved as submitted.

Mr. Dana M. Jones, Interim Executive Director, called the members' attention to the Revised Summary of the Fiscal Year 2004 Operating Budget by Program which was distributed.  The Summary covered the period October 2003 through March 2004, showing

CONFIDENTIAL
MAK 5911

**UPO BOARD OF TRUSTEES SPECIAL MEETING**                    -2-
April 27, 2004

**PRESENTA-
TION OF
FINANCIAL
REPORT:**

the total budget, actual expenditures to date and forecasts for expenditures. Mr. Jones stated that starting with this meeting, the Board will receive monthly financial expenditure reports.

Mrs. Gladys Mack, Deputy Executive Director, was asked to present the budget. She referred to page two of the summary, which showed the budget for the following major programs, as well as expenses year-to-date and the projections for the balance of the year:

(1)    Community Services Block Grant Program
(2)    Head Start Program
(3)    Early Head Start Program
(4)    Day Care & Related Programs
(5)    Aging Programs
(6)    Energy and Home Preservation
(7)    Special Emphasis Programs
(8)    Other Grants]
(9)    Private Funds
(10)   MLK Breakfast

Mrs. Mack explained that the forecast is based on the spending as it has been recorded year-to-date with a projection based on the budget for each of the programs and what would be spent by the end of the year. She stated that there are some implications in this report for either reprogramming line items or budget reductions. Mrs. Mack said that all of the differences will be reconciled by the next time the report is presented. Mrs. Mack and Mr. Jones entertained questions regarding the report.

Mrs. Alexis Roberson, Temporary Chairperson of the Ad Hoc Management Committee, referred to two (2) Ad Hoc Management Committee reports, which were

**COMMITTEE
REPORTS:**

**Ad Hoc
Management
Committee**

**(Recommenda-
tions)**

distributed at the meeting. She stated that the Ad Hoc Management Committee was commissioned to start taking some corrective actions on many of the things that were contained in the preliminary report from the CSBG Team. Mrs. Roberson reported that there were a number of topics discussed at both meetings and that the members could read the reports in detail at a later date. In the interest of saving time, she only reported on the Committee recommendations.

Mrs. Roberson reported that at the April 6, 2004 Ad Hoc Committee Meeting, the following recommendations were made:

1.    That, after interviews, the Nominating Committee will recommend nominees to fill vacancies under Mayoral Appointments and Major Groups & Interests.

2.    That the Ad Hoc Management Committee recommends that UPO President request Mr. Therman Walker, who is on a leave of absence from the Board, to resign as Treasurer.

3.    That the Nominating Committee, in consultation with the Interim Director, will recommend a search process for a new executive director.

CONFIDENTIAL
MAK 5912

**UPO BOARD OF TRUSTEES SPECIAL MEETING**
**April 27, 2004**

-3-

**COMMITTEE REPORTS (Cont'd.):**

**Ad Hoc Management Committee**

4.  That Board Orientation for all board members be planned.

5.  That the Audit Policy be reviewed to make sure it allows periodic changing of auditors.

Mrs. Roberson stated that she believed that the Ad Hoc Management Committee had been empowered to act on most of the recommendations. However, with respect to the Treasurer's position, Board action was required. There was a discussion on the requirements of the treasurer's position, namely a financial background. Also discussed was, that due to the investigations being conducted and conflicts of interest issues on UPO involving the current treasurer, it would be best to ask Mr. Walker to resign from the Board and request that his designating agency, CHANGE, Inc., appoint a new representative.

Following a discussion on the Ad Hoc Management Committee April 6, 2004 report, and upon motion duly made, seconded and approved, it was resolved that:

**Action Item**

The Board of Trustees of the United Planning Organization approves the recommendation by the Ad Hoc Management Committee that the UPO President request Mr. Therman Walker, who is on a leave of absence from the Board, to resign from the Board of Trustees and if Mr. Walker refuses to resign from the Board, then the Board will act in accordance with the Bylaws provision for removal of a Board member.

Mrs. Roberson reported on the recommendations from the April 20, 2004 Ad Hoc Committee Meeting. Following a discussion on the April 20, 2004 report, and upon motion duly made, seconded and approved, it was resolved that:

The Board of Trustees of the United Planning Organization affirms the following recommendations by the Ad Hoc Management Committee from it's April 20, 2004 meeting:

**Action Items**

1.  That staff (Interim Executive Director and General Counsel) be authorized to pursue legal action to retrieve any and all payments to purchase the boat, "My Fine Lady," from the owner, John Poulos.

2.  That staff be authorized to take all necessary steps to retrieve money loaned to the North Capital Area Business Association.

3.  That staff be authorized to pursue all legal avenues to collect money paid on behalf of the D.C. Prevention Partnership for moving and storage fees.

4.  That a Bylaws Committee be appointed to review and make recommendations concerning necessary changes in the bylaws, including, among others, examining the position treasurer, the position of secretary, term limits, the size of the Board, the meeting schedule of the Board, the committee structure and responsibilities, and signature authority on bank accounts, and that the committee include at least two members of the Ad Hoc Management Committee.

**CONFIDENTIAL**
**MAK 5913**

**UPO BOARD OF TRUSTEES SPECIAL MEETING**                                      -4-
April 27, 2004

COMMITTEE
REPORTS
(Cont'd.):

5.    That UPO enter into a contract with F. S. Taylor & Associates to perform functions in the Finance Office for a period of one year and that the Interim Executive Director and General Counsel be authorized to issue simultaneously a reduction-in-force in the Finance Office to include the offer of a thirty-day paid notice and up to one and a half (1 ½) months of earned vacation annual leave.

Mrs. Roberson stated that a number of staff assignments were made at both meetings and that those assignments were being completed.

In the absence of Ms. Brenda Kelly, Chairperson of the Nominating Committee, Judge Greene reported that the Committee had met and they recommended that Dr. Joan Phillips, CEO of Greater Southeast Hospital, fill one of the vacancies under the category of Major Groups and Interests, identified from the medical profession. He stated that the committee interviewed Dr. Phillips and all three committee members were very impressed by her qualifications and personal commitment to the mission of the United Planning Organization. Judge Greene stated that Dr. Phillips has agreed to serve on UPO's Board.

Nominating
Committee

(Recommenda-
tion to Fill
Vacancy
Under Major
Groups &
Interests)

Upon motion duly made, seconded and approved, it was resolved that:

The Board of Trustees of the United Planning Organization approves the recommendation by the Nominating Committee that Dr. Joan Phillips be elected to UPO's Board to serve under the category of Major Groups & Interests.

Mr. Simmons was requested to send a letter of welcome to Dr. Phillips.

Ms. S. Kathryn Allen, member of the Nominating Committee, reported that the Committee has been recruiting to fill the vacancies under on the category of Public Officials designated by the Mayor of the District of Columbia. Therefore, the Committee requested that Mr. Simmons send a letter to the Mayor recommending Brenda Donald Walker, who is the Interim Director for D.C. Family Child & Family Services with outstanding credentials; and Mr. Neil Albert, who is the current Director of the D.C. Department of Recreation and Parks with a background in financial management and strategic planning. Ms. Allen provided additional background information on both candidates.

(Recommenda-
tion for Mayoral
Appointments)

Following a discussion, and upon motion duly made, seconded and approved, it was resolved that:

The Board of Trustees of the United Planning Organization authorizes the President to send a letter to the Mayor of the District of Columbia recommending the appointment of Ms. Brenda Donald Walker and Mr. Neil Albert to the UPO Board of Trustees, under the Public Officials category.

Ms. Allen also reported that letters have been sent to the agencies with vacancies under the category of Representatives of the Poor to request that they appoint a representative in accordance with the proper procedures.

CONFIDENTIAL
MAK 5914

**UPO BOARD OF TRUSTEES SPECIAL MEETING**                                              -5-
**April 27, 2004**

COMMITTEE
REPORTS
(Cont'd.):

Nominating
Committee

(Executive
Search Process)

Head Start &
Day Care
Committee

(FY 2004-2005
Head Start &
Early Head Start
Refunding
Application)

(Head Start
On-Site Review)

Proposed
Yearly Work
Plan for UPO
Board

Ms. Allen stated that the Nominating Committee also was charged with the responsibility of putting together a process by which UPO will conduct a search for the position of executive director. She reported that the Committee met and have begun developing a process and will make a presentation to the Board. She shared some of the areas of discussion by the committee regarding this process. She also requested any recommendations from the members regarding the search process.

Judge Henry Greene, Chairman of the Head Start and Day Care Committee, called the members' attention to his report dated April 27, 2004, regarding the UPO Head Start and Early Head Start Refunding Application for FY 2004-2005 in the amount of $14,727,105 in federal funds and $5,659,416 as a local match to serve 1,873 Head Start and 132 Early Head Start children and families. He reported that the UPO Parent Policy Council convened and approved the application and the Head Start & Day Care Committee convened and unanimously approved the application. He pointed out that two of the most outstanding features of the application are as follows:

1.  Request to DHHS, Region III to authorize UPO to convert up to 10% of preschool-age Head Start slots to Early Head Start as necessary based on UPO's Community Assessment.

2.  The D.C. Schools Board of Education, after lengthy deliberation with the Regional Office and UPO voted to provide at least a 37.5% local match to Head Start instead of the minimum requirement of 20% in the interest of maintaining a viable staffing infrastructure.

Following a discussion on the application, upon motion made, seconded and approved, it was resolved that:

The Board of Trustees of the United Planning Organization approves the recommendation by the Head Start and Day Care Committee for the submission of the Fiscal Year 2004-2005 Head Start and Early Head Start refunding application in the amount of $14,727,105 in federal funds and $5,659,416 as a local match to serve 1,873 Head Start and 132 Early Head Start children and families to the Department of Health and Human Services, for the period of August 1, 2004 to July 31, 2005.

Judge Greene and Mr. Jones shared some of the information regarding the results of the on-site monitoring review which as conducted by DHHS from March 15 to March 19, 2004. Mr. Jones stated UPO has 30 days to respond the findings and that staff is preparing a response to the issues raised in the DHHS report, which will be shared with the Board.

Mr. Jones stated that he will develop, in partnership with the Board, a yearly work plan that sets standards for the Board it can measure itself against — matters that are manageable and accountable — not just a role of responsibility.

CONFIDENTIAL
MAK 5915

**UPO BOARD OF TRUSTEES SPECIAL MEETING**                                    -6-
**April 27, 2004**

**REPORT OF INTERIM EXECUTIVE DIRECTOR:**

      Mr. Dana M. Jones, Interim Executive Director, reported that a two-week extension on the completion of the Fiscal Year 2003 Audit was granted by the Bank. He stated that it is anticipated that UPO will a qualified compliance report and explained in detail what is involved with getting a qualified compliance report from the audit firm, Thompson, Cobb, Bazilio & Associates. He also explained the debt issue which could range from $1.7 million to $3.2 million and that $1.3 million of that is in the Head Start Program due to under recovery of indirect costs and about $300,000 of the debt is in Office on Aging programs. Mr. Jones explained that UPO needs approval from the Office of the CSBG Program Manager to use $1.5 million in CSBG funds to apply to its fund balance in order to help reduce the debt.

**FY 2003 Audit**

      Mr. Jones reported on his meeting with M&T Bank and explained the background relating to the line of credit. He said that when UPO obtained the line of credit in 2001 for $3 million to help with the operational line, at the same time it arranged for bond financing to go through properties. He explained that UPO has the responsibility of producing $2,750,000 in equity above the bond financing and in going through this process, cost overruns occurred and there was the need to develop equity, which was closer to $3,311,000. As a result of that, he explained that UPO used the line of credit to pay the equity that was not raised. This happened from the very beginning at the closing on the property.

**Line of Credit**

      Mr. Jones explained that the meeting with M&T Bank also involved a discussion on liquidity formulas that basically straps UPO financially and requires receivables to be at a certain level. Therefore, Mr. Jones proposed having the three properties reappraised and using the equity out of the properties, if any, to the point that the $1.8 million is returned to the bank. Mr. Jones also talked about the Certificates of Deposit (CDs) totaling about $1 million that were pledged as collateral to M&T Bank. Ms. Sheila Shears, Chief Financial Officer, explained that the CDs are long standing CDs that are considered earned income, which is in a reserve account against the accrued annual leave of the employees. Ms. Shears stated that the annual leave balance is at about $500,000.

      In response to questions, Mr. Jones stated that UPO will ask M&T to go along with the concept provided that we can identify a source allowable for capitalized debt. If this is accepted, this will relieve UPO from an annual renewal process on the line of credit and get into a fixed long-term debt situation, hopefully fixed for 25 years, at a lower rate. This would put UPO into an equity position. Mr. Jones elaborated on how he proposed to negotiate this proposal with the bank. Mr. Jones stated that UPO needs to pay its debts on time, reduce expenditures, change spending patterns and that a comprehensive debt reduction plan is being developed for presentation to the Board.

      There was a discussion on long-term fund raising. However, it was stressed that restoring public trust was first priority and a plan can be developed for fund raising in the near

CONFIDENTIAL
MAK 5916

**UPO BOARD OF TRUSTEES SPECIAL MEETING**                                    -7-
**April 27, 2004**

**REPORT OF INTERIM EXECUTIVE DIRECTOR (Cont'd.):**

future.

    Mr. Jones briefed the members on its strategies relating to the legal issues facing UPO and the impact upon UPO as a whole.

    With respect to accounting issues, Mr. Jones reported that he had informed the staff in the Finance Office about the possibility of outsourcing the accounting process. In addition to that, he reported that UPO is finally current on all major bank reconciliations.

    With respect to the media, Mr. Jones reported that the Ad Hoc Management Committee had requested him to utilize a UPO publication to communicate with employees. He added that, with respect to external media, he will rely on the guidance of the Ad Hoc Management Committee.

    Mr. Jones reported that the Anacostia Community Services Center was scheduled to move on May 3, 2004. He referred to a fact sheet which provided a "Summary of UPO Funds Needed to Complete Construction Projects as @ 4/27/04." He explained that the cost to complete the construction projects for the Anacostia Community Services Center and Petey Greene Center is $489,740 beyond what bond proceeds available for disbursement. Mr. Jones explained that there are some payments due on invoices for construction projects, and in order to meet this shortfall in money, he recommended borrowing from the Scholarship Program account with a payback schedule, with interest, within four quarters over the next year.

**Construction Projects**

    There was a lengthy discussion on the critical need to meet the construction obligation and the pros and cons of using the scholarship funds. Following the discussion, and upon motion duly made, seconded and approved, it was resolved that:

> The Board of Trustees of the United Planning Organization approves the recommendation by the Interim Executive Director to borrow $150,000 from the Scholarship Fund to pay for construction cost overruns at the Petey Greene Center by way of a repayment agreement to include interest.

For the record, the vote was: 12 For and 5 Against.

**Other Operational Issues**

**(Comments by State CSBG Program Manager)**

    Mr. Jones reported that the State CSBG Office had returned to UPO for a followup review to their preliminary report and he relinquished the floor to Dr. Tunde Eboda, CSBG Program Manager. Dr. Eboda made general comments on the process taking place and stated that he felt comfortable that the Board was given the opportunity to take corrective actions and that UPO will be able to respond positively to its funding sources, its stakeholders and its creditors. He stated that it was expected that a final report would be published in 30 days and will be shared with the Board. Mr. Jones commented that Dr. Eboda and his office have supported UPO throughout this process and that there have been very rare cases where a person such as Dr. Eboda has been more committed in giving an organization an opportunity to survive. He added that a partnership has been created working toward the same goal.

**CONFIDENTIAL**
**MAK 5917**

**UPO BOARD OF TRUSTEES SPECIAL MEETING**                    -8-
April 27, 2004

REPORT OF
INTERIM
EXECUTIVE
DIRECTOR
(Cont'd.):

Mr. Jones shared information with the Board regarding a draft fiscal manual that includes policies to include the changes in financial management requested by the Board. That manual will be presented to the Ad Hoc Management Committee and ultimately to the Board for approval.

Mr. Jones reported that he had met with the managers in the field and the office directors and that they have an agreement to work together and move forward on some very crucial issues. He stated that they will be included in a lot of things, such as the policy manuals.

Mr. Jones reported that he was scheduled to meet this week with a Mr. Peter Jones from the Mayor's office about issues in Ward 6.

Mr. Jones reported on a discussion with David Bradley from the National Community Action Foundation (NCAF), the national lobbying organization for community action, regarding questions raised by members of Congress on the media coverage on UPO. He stated that UPO is being as informative as possible as it moves forward.

General
Information

Another issue of concern expressed by Mr. Jones was the presentation of an organizational chart to the Ad Hoc Management Committee reorganizing the span of control mainly the Executive Office. He stated that there were too many people reporting directly to the Executive Director.

Mr. Jones also reported that new opportunities are being explored in areas such as drug rehabilitation, training programs relative to Electronic Benefit Card .

With respect to the FY 2003 Audit, Mr. Jones stated that it will be presented to the Board in the month of May because there is a federal requirement as part of UPO's 501(c)3 status to release that audit by June 30th of each year.

Mr. Jones assured the Board that UPO will balance the Fiscal Year 2004 on September 30, 2004, and he explained how he could accomplish that.

**NEW
BUSINESS:**

Appointment of
Ad Hoc Bylaws
Committee

As recommended by the Ad Hoc Management Committee, Mr. Simmons appointed the following Ad Hoc Bylaws Committee to review and make recommendations concerning necessary changes in the bylaws, including, among others, examining the position treasurer, the position of secretary, term limits, the size of the Board, the meeting schedule of the Board, the committee structure and responsibilities, and signature authority on bank accounts:

Judge Rafael Diaz, Chairman
Ms. Janice Eichhorn
Mr. Clyde Howard
Mr. Nathaniel Howard
Chief Judge Annice Wagner
Ms. Elva Worthington

Appointment to
MLK, Jr.
Memorial
Committee

Mrs. Caldwell requested additional appointments to the Martin Luther King, Jr. Memorial Committee. Mr. Simmons appointed Mrs. Carrolena Key and Ms. Daria Winter to the committee.

CONFIDENTIAL
MAK 5918

**UPO BOARD OF TRUSTEES SPECIAL MEETING**                                    -9-
April 27, 2004

      Mrs. Roberson thanked Dana for all the hard work he and staff had done.  Mr. Jones thanked everyone for their support an stated that UPO will continue to work to make this the great organization that we all want it to be.

      There being no further business to discuss, the meeting adjourned at 11:12 p.m.

**AJOURN-
MENT:**

              Respectfully submitted:

              Dana M. Jones, Acting Secretary

REPORTER:  Ms. Josephine F. Thompson
              Special Assistant to the UPO President

**CONFIDENTIAL
MAK 5919**

# EXHIBIT D

June 3, 2004


Mr. Dana M. Jones
Interim Executive Director
United Planning Organization
301 Rhode Island Avenue, NW
Washington, DC 20001-1826

RE: Appeal to Specific Notice of Reduction-In-Force

Dear Mr. Jones:

This letter is my official appeal to the United Planning Organization to immediately reverse the Specific Notice of Reduction-In-Force letter dated June 2, 2004, which you gave me in person. I have been an experienced, talented, dedicated, hard-working, loyal, competent, honest and knowledgeable controller with integrity for the United Planning Organization. To place me on administrative leave from June 2, 2004 through June 30, 2004, and then to terminate my position as Controller is incomprehensible and improper.

Sincerely,

M. Amin Kakeh
7050 Leestone Street
Springfield, VA 22151-3518
703-642-8921

CONFIDENTIAL
MAK 5480