# EXHIBIT 27

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Mohammed Amin Kakeh,

    *Plaintiff,*

v.

United Planning Organization, Inc.,

    *Defendant.*

Civil Case No. 1:05-cv-1271 (GK/JMF)

Next Scheduled Event:
Pretrial Conference
April 11, 2007, 4:15 P.M.

## DECLARATION OF MOHAMMAD AMIN KAKEH

I, MOHAMMAD AMIN KAKEH, make the following declaration under penalty of perjury pursuant to 28 U.S.C. §1746 and declare that the following is true and correct:

1.    I am over the age of 18, am under no legal disability, and make this declaration based upon my personal knowledge.

2.    I am the Plaintiff in the above-captioned matter.

3.    In investigating the fraud, waste and abuse of the employees and board members of United Planning Organization, Inc. ("UPO" or "Defendant"), I discovered that Defendant had expended grant money to cover credit card charges on Defendant's corporate credit card related to one of former UPO Executive Director Benjamin Jennings' assistants having procured cash advances from certain pawn shops. I discovered this fraud, waste and abuse from examination of the applicable credit card receipts once those receipts were recovered from Jennings and Shears.

4.    Upon reviewing my prior deposition testimony in this case, it appears that I misspoke with respect to the correct acronym for the electronic payment system used by the U.S. Department of Health and Human Services ("HHS") to distribute Head Start money to program participants such as Defendant. The correct acronym is "PMS", not "PMA".



1

5. A. Sue Brown, the owner of A. Sue Brown Associates (a former contractor of Defendant's), was a person friend of former Jennings.

6. On May 4, 2004, I met with FBI Agent Duncan and with Special Agent Kenneth L. Marty at the offices of the FBI.

7. Under Defendant's standard policy, whenever a personnel action occurred which changed the status of a UPO employee for any duration—including naming an employee to an acting position—Defendant's HR office issued a "Personnel Action" form for the change in status which was circulated to the employee's supervisors and other persons. To my understanding, the personnel action was not properly processed if such a "Personnel Action" form was not properly issued and distributed.

8. I was the supervisor of Davidson Quashie when Quashie was Defendant's Chief Accountant. I never received a copy of any "Personnel Action" form associated with Quashie being properly appointed to the position of Acting Deputy Controller. According to my understanding of Defendant's standard policies, Quashie was therefore never properly placed in the position of Acting Deputy Controller.

9. The job duties of the positions of Controller and Acting Deputy Controller are markedly different: specifically, during the time where he was acting in the role of Acting Deputy Controller, Quashie did not carry anywhere near the same scope of supervisory authority or ultimate responsibility for the accuracy of Financial Office operations as I did in my role as Controller. On that basis of those differences in responsibility and authority, I normally would not expect the two positions to be sufficiently similar as to fall within the same category if one were to categorize the various positions in Defendant's Finance Office for purposes of a reduction-in-force ("RIF").

10. I am not aware of William Isaac, Defendant's former Senior External Auditor, having been involved in any discrimination complaints during my tenure at UPO.

11. Based on my knowledge and understanding of the Head Start program, a finding from Head Start that a program participant is a "Grantee with Deficiencies" is a major problem for any program participant who wishes to continue with the program, and such should normally require prompt, high-level attention from the program participant to resolve.

12. To my knowledge, Nona McLean, a former UPO employee with the formal title of Facilities/IS Manager, was not reinstated to the position she was removed from on or about June 2, 2004 after the retirement of Isaac. To my knowledge, McLean was instead fully terminated on June 30, 2004.

13. I received no outplacement services from UPO when I was terminated in June 2004.

14. To cover these deficits, Defendant committed fraud, waste and abuse and made false claims by attempting to charge expenditures to the CSBG grant, when the expenditures were for other programs or for illicit purposes. Defendant, in preparing its annual budget request for the forthcoming year to be submitted to the CSBG office of DHS, would submit a budget request for an amount far larger than what Defendant actually expected to spend on proper CSBG activities. DHS would then forward UPO's fraudulent budget request on to HHS. HHS then disbursed CSBG moneys to DHS based on Defendant's fraudulently inflated budget request. Every year, per DHS requirements, Defendant would submit its audited financial statement to DHS, which DHS would the rely upon both as confirmation of the accuracy of Defendant's prior year CSBG budget request and as confirmation of the figures Defendant was requesting for its proposed CSBG budget request for the forthcoming year. Defendant's agents

including Jennings and Mack, would order Defendant to prepare Defendant's end-of-year financial statement in an inaccurate fashion in conformance with their falsely inflated CSBG budget claims, and thus in derogation of applicable accounting practice (as well as applicable law and regulation associated with the governmental grants funding Defendant's activities). Although the financial statements produced by Plaintiff were putatively submitted for audit by an outside auditor prior to submission to DHS, Plaintiff understood that in practice the outside auditor in question would ultimately produce no meaningful corrections to any financial statements so submitted with respect to this particular issue.

15. DHS paid CSBG money to Defendant on a reimbursement basis, to be paid based on written invoices for actual expenses incurred by Defendant for CSBG programs. To get the maximum amount of money from DHS, UPO would file false invoices each month which stated the not the real amounts expended for real CSBG purposes, but instead 1/12 of the budgeted amount for each line item in the CSBG budget. In effect, Defendant would submit the exact same invoice for each month of a given fiscal year—they would only change the date. Because of these practices, Defendant would thus be left at the end of the year with a large pool of CSBG funds procured from DHS and HHS through false pretenses.

I declare under the penalty of perjury that the contents of the foregoing Declaration are true and correct. Executed on this 26th day of February, 2007.

*/s/ Mohammad Amin Kakeh* 02-26-07
Mohammad Amin Kakeh