# EXHIBIT 66

MEMORANDUM

TO: Dana M. Jones,
Interim Executive Director

FROM: M. Amin Kakeh,
Controller

RE: Your Memorandum of April 7, 2004, Regarding Financial Management Issues at UPO

Date: April 11, 2004

Your memo dated April 7, 2004, which was slid under my door and I received the following day made me feel very surprised and made me question such a formal memo when the contents are vague and not all factual. It appears as if you are attempting to document something. I had hoped that the memo had been a response to my concerns and suggestions outlined in my memo dated April 1, 2004, concerning the fiscal problems of UPO which you were given a copy.

This memo demanded my attention taking me away from concentrating on meeting the April 22, 2004, audit deadline which is of utmost importance to the organization. The manner in which your memo was presented is disturbing. A direct dialogue, perhaps, would have been a faster method to convey your thinking which is not clear in the memo. It appears from your memo that you are attempting to discredit the controller position and the financial statements I produced. Definitely, I believe a face to face meeting would have been a more positive, constructive manner to address your issues.

I realized in your first paragraph there was a mix up between interpretations of the financial position of UPO and between the statements of the grant activities. The financial position of UPO is a deficit without question. How much the deficit will be, is subject to the final figures of the results of operations for Fiscal Year 2003. While the statement of grant activities shows the sources of the funds, the outlay of the funds, and the outcome of the operation, there is no interpretation when it comes to this statement; these are figures which exist in the computer accounting system and are facts. Are there any reclassifications, reallocations, adjustments, revisions and corrections to be made in the accounting system? Yes, they exist in every business.

You said that I questioned the trial balance provided to the auditors on March 29, 2004, by Sheila Shears and F. S. Taylor. They questioned it themselves because it was not balanced. It was a moving trial balance showing different balances every day. I gave

00160

you a copy of the financial statements reflecting that fact (copy enclosed). I suggested continuing the audit based on the last financial statement and the trial balance that was issued on March 3, 2003, because everything balanced with the system and everything is supported by documents, which makes it easier for everyone to continue the audit.

You indicated that we met on April 6, 2004, as a follow up to the night meeting of April 5, 2004. In fact, we did not discuss any follow up meeting for the next day. I first heard of that meeting when I was called upstairs at 9:30 am; I had no idea as to what the subject of that meeting would be. Once the meeting started I found out it was, in fact, a prearranged presentation by F.S. Taylor regarding the suggested adjustments to the financial statement which had been discussed and agreed upon by Gladys Mack, Sheila Shears, and F.S. Taylor at an earlier time. If I had known about this meeting in advance, I would have come prepared. This was the first time I had heard of these adjustments. For that reason, I didn't disagree, but at the same time I didn't agree with any of them. As a matter of fact, I emphasized the point that the $1.9 million from CSBG unspent revenue could not be used to cover the deficit of UPO. In fact, I said that we are authorized to apply $551,000 to cover direct expenses only in the Head Start program and the Call-N-Ride program. I emphasized the point that I did not have a copy of these adjustments. F.S. Taylor promised to give me a copy later, which they did. I also related that after I look at these adjustments, I could make a judgment.

When I looked at what you called "valid" adjustments, I found out that the accounts receivable had been increased by $2 million. I asked them to reverse an error for $1 million so then the balance of that account went from $5 million to $4 million (copy enclosed). This is the first change made to the "valid" adjustments. The second "valid" adjustment of applying CSBG money to the UPO deficit is invalid because this needs an advance approval from the CSBG state office to apply the revenue to UPO's deficit and that hasn't happened yet. As you can see the total "valid" adjustment of $3 million has to be reversed. UPO is in a deficit situation.

I mentioned that the director of the Head Start program had sent me a memo asking to remove three different charges from his expenses for 2003:

1. $186,000 for Sue Brown, consultant, because she had been imposed on the program and produced nothing for the program (copy enclosed).
2. Audit charges which had been allocated to his program as a direct expense.
3. The charges for F.S. Taylor's accounting services which benefit all of UPO, not just his program

F.S. Taylor said that we should not re-allocate the expenses until the auditors ask for such changes. If they question it or become aware of it, we will re-allocate the charges somewhere else, otherwise we don't have to tell them about it. I was astonished that you

00161

approved this practice by stating, "I'm not going to tell them either," which I believe is unethical and puts UPO's integrity at serious risk. I told all of you that the federal auditors know about this subject and they brought it to our attention. Shouldn't we change this knowing that the federal auditors know about it?

You said that you have been made aware of the differences in interpreting how to present and how to reflect some transactions in the financial statement. These differences are about the presentation of the indirect cost in the statement of functional expenses. F.S. Taylor, TCBA auditors, and I previously agreed to present the indirect cost in the following manner. On the first line is the amount which UPO is entitled to and can be charged to the grants, and on the second line is the over run in the indirect cost expenses which aren't covered by any grant. This is an important presentation to show the UPO management and UPO board that UPO is in the red. It shows that the financial management of UPO was overspending by $1,280,000. Adding the two lines together, the earned and the over run, and applying them to the program is a misleading presentation of the financial position of the organization. Even though it had been presented that way in previous years, it doesn't mean that it was legitimate or accurate. As a matter of fact, that was a deceiving presentation to the board and that's what brought UPO to its knees at this time. As the controller of UPO, I strongly suggest that we should present the indirect cost charges in two separate lines to preserve the integrity of the organization; otherwise, it appears as if we are overcharging the grants with unallowable indirect cost expenses.

There is a correction that needs to be made. You called F.S. Taylor internal auditors. They are not. They are not employed by UPO; they are not working in the capacity of auditors. What they are doing is providing accounting and clerical services (i.e. bank reconciliation, payroll reconciliation, and verifying accrued expenses). We already have staff employed by UPO who can perform these tasks and would save almost $50,000 a month. F. S. Taylor are not responsible or accountable for what UPO is going to present to the government agencies and the external auditors. I worked on the financial statements the whole year and produced the final financial statements for Fiscal Year 2003 and the related reports. The Controller is responsible for the accounting system, information, and documents. Your statement to rely on the "internal auditors" is misplaced. The controller's office is the internal specialists regarding UPO's financial operations and represents UPO's interests only. As for the external auditors, we have worked with them for the last six years to present accurate and credible financial statements and this has presented no difficulties (Example: Fiscal Year 2002). By relying on outside help only, you are denying the role of the controller of UPO. In this action you're discrediting the position and the credibility of the financial statements that office produces. In reality, UPO has to rely on the controller's office to assure that the audit and financial statements reflect accurate, documented financial information presented in an ethical and lawful manner

I have always cooperated with Ms. Mack and everyone else. The controller does not need to be asked or encouraged to cooperate; it is part of my job and duty as the controller of the organization and I have done so. However, as the controller, I want to make it very clear that I will never cooperate with anyone asking me to do something unlawful or unethical. Ms. Mack's suggestion to the auditors to apply unspent revenue from CSBG to cover the deficit of UPO, before obtaining authorization to do so from the CSBG state office, was deemed unwise by the auditors. They preferred to seek prior approval first.

In my memo to Ms. Alexis Roberson dated April 1, 2004, entitled "My Concerns Regarding the Controller's Office and the Current Fiscal Difficulties of UPO", I outlined, on page two, my deep concerns about ten issues which require resolution regarding the financial statements. (Copies of this memo were initially given to you and Mr. Tunde Eboda, another is enclosed). In addition, on page three, of the same memo, I listed sixteen suggestions which would help resolve the fiscal problems at UPO. Therefore, my concerns about Fiscal Year 2003 have already explained in this April 1, 2004, memo. It also includes my suggestions and requests for the future. As for Fiscal Year 2004, I still have no financial information even though I requested that information in this same memo. This was before you started your term. I am reiterating my request for all financial information for Fiscal Year 2004 because I want to issue an interim financial statement for the period ending March 31, 2004, to assess the financial position of UPO and identify if there are any corrections needed. Without this information, I cannot provide an assessment.

In this memorandum, I have addressed in great detail the financial management issues you identified. I still believe a face to face meeting would have been a more positive, constructive manner to address the issues. As the controller of UPO, I have always acted in the best interest of the organization and its mission. In doing so, tough decisions and even unpopular decisions have to be made. My decisions are based on facts, ethics, and lawful practice. To do anything less, would be a disservice to UPO and the community it serves.

MAK/mak