# EXHIBIT 82

# UNITED PLANNING ORGANIZATION

## MINUTES OF AD HOC MANAGEMENT COMMITTEE MEETING

May 26, 2004
6:30 p.m.

**PRESENT:**

| | | |
|---|---|---|
| | Members Attending: | Mrs. F. Alexis H. Roberson, Temporary Chairperson |
| | | Ms. S. Kathryn Allen |
| | | Judge Henry Greene |
| | | Mr. Nathaniel Howard |
| | | Ms. Brenda Kelly |
| | | Hon. Annice M. Wagner |
| | Members Absent: | Mrs. Carol Caldwell |
| | | Judge Rafael Diaz |
| | Guests Attending: | Mr. Ralph Bazilio, TCBA |
| | | Mr. Dennis Ramprashad, TCBA |
| | Staff Attending: | Mr. Dana Jones, Interim Executive Director |
| | | Mrs. Gladys Mack, Deputy Executive Director |
| | | Ms. Josephine F. Thompson, Recorder |

Mrs. Alexis Roberson, Temporary Chairperson, called the Ad Hoc Management Committee to order at 7:29 p.m.

The Agenda was distributed and accepted as submitted.

## FY 2003 AUDIT PRESENTATION

Mr. Ralph Bazilio of Thompson, Cobb, Bazilio and Associates (TCBA), presented the Draft Fiscal Year 2003 Audit Report, which included UPO's Financial Statements and Independent Auditor's Report for the year ended September 30, 2003. In response to several questions regarding whether TCBA will issue a qualified opinion, unqualified opinion or a qualified opinion with continuing issues, Mr. Bazilio stated that some testing still needs to be completed and that in order to issue its final opinion of UPO's financial condition, it would be helpful if he were provided the final report of the on-site visit from the CSBG State Office. There was a detailed discussion regarding the key issues contained in the draft report, the Statement of Financial Position, the Statement of Activities, the Statement of Functional Expenses, and the Statement of Cash Flow. Mr. Bazilio explained all of the notes (17) relating to the financial statements.

Mr. Bazilio explained a handout which listed the status of the audit for UPO's Financial

Page 1 of 7

CONFIDENTIAL
MAK 5926

Statements, OMB Circular A-133, Martin Luther King, Jr. Breakfast, Pension Plan, IRS Form 990, and the audits for each delegate agency prepared by TCBA. Committee members expressed concern regarding information requested from S.W. House and scheduling fieldwork with the D.C. Department of Recreation. Mr. Jones stated that UPO staff will follow up to ensure compliance with issues raised by the auditor. Mr. Bazilio reviewed all of the outstanding items and potential audit findings, which will be put into a narrative format and included in a management letter to the Board, as well as some of the information will be included in the OMB Circular A-133 audit report to the extent that they may affect some of the federal grants. In response to questions raised about the findings, how items were charged to accounts, and the corrective actions already taken, Mr. Bazilio stated that UPO Management's response to the potential audit findings will probably clarify some of the findings and will be included in the final report. It was noted that some of the items discussed in the draft audit report will be corrected/updated for presentation at the full Board of Trustees meeting on May 27, 2004.

## MINUTES

The Minutes of the Ad Hoc Management Committee's meeting on April 27, 2004, were approved as submitted. The Minutes of the May 6, 2004 meeting were approved with corrections.

## RESIGNATION OF UPO PRESIDENT

Mrs. Roberson reported that Mr. Russell Simmons, UPO President, by letter dated May 26, 2004, resigned from the Board of Trustees, effective immediately. By motion, the Committee voted to accept the resignation from Mr. Simmons and it was recommended that an appropriate expression of appreciation be sent to Mr. Simmons by way of a plaque or award. Judge Greene suggested that the board members contribute to the cost of the award.

Following a discussion, Chief Judge Wagner, Vice President, was requested to assume the position of Interim President, effective immediately, until a new president can be elected.

## MEETING WITH CSBG STATE OFFICE

Mrs. Roberson reported that there were two meetings with the CSBG State Office for the purpose of discussing the State Office's approval of UPO using the $1,030,072 in CSBG funds for cost overruns in three programs: Day Care, Aging and Head Start, which were legitimate expenditures. Chief Judge Wagner provided the details of the meetings and stated that Mr. Ricardo Lyles requested UPO to provide (1) a revised budget that reflects the allocation of these funds to these three programs, and (2) a general ledger expenditure report relating to these expenses to show that they were cost overruns. It was indicated that once Mr. Lyles receives the two documents, which may cover most of the issues and concerns of the CSBG State Office. However, there may be additional questions later. Mr. Jones stated that he could have the documents available on the next day. Mr. Jones explained the process of what will happen from when UPO submits the requested and documents to the CSBG Program Manager, who in turn submits it to Mr. Lyles, then it goes to

CONFIDENTIAL
MAK 5927

Mr. Lyles' his superior, and then a decision is made.

Chief Judge Wagner reported on the second meeting with Mr. Lyles, Dr. Eboda and Ms. B.C. Tan, wherein they discussed Dr. Eboda's offer to provide technical assistance through the Mid-Iowa Group. She stated that she asked a lot of questions, particularly what kind of help would be provided, i.e., structure, budget development, policies and procedures, but the conversation kept going back to using Mid-Iowa Group. There was continued discussion on whether or not Mr. Jones needed the Iowa Group to provide the technical assistance or should UPO should make its own choice for technical assistance. It was decided that Mr. Jones would prepare a letter to Dr. Eboda to let him know that UPO has considered the offer of technical assistance from the Mid-Iowa Group, and specifically list the type of assistance UPO immediately needs, for example, an executive development institute which deals with changes in organizations and organizational development and to work with the staff that UPO expects to run this organization in the future. Mr. Jones felt that it is much more important to invest in the current staff by helping them make the necessary changes to run this organization than to have someone from the outside come into the agency, identify problems, write a report and just leave.

Chief Judge Wagner stated that the committee needs to see policies and procedures, as well as regulations on the use of credit cards, vehicles and budget submissions.

Mrs. Mack stated that UPO has a serious human resource problem and UPO could use a the help of one or two human resources professionals for the next three or four months to establish some human resources policies and procedures. UPO's 30-year old outdated personnel manual needs to be rewritten with the assistance of the technical writer. Mr. Jones stated that UPO also needs a human resources specialist who understands the collective bargaining process.

Following more discussion on what type of technical assistance UPO needs, it was agreed that a list would be prepared and submitted to the CSBG State Office, along with a budget, and await their reaction to UPO's request.

## BYLAWS COMMITTEE REPORT

The Bylaws Committee Report was deferred due to the absence of its chairman, Judge Diaz, who had death in the family.

## NOMINATING COMMITTEE

Ms. Brenda Kelly referred to her report dated May 24, 2004, regarding the Executive Director Search Process. Following a discussion on the recommended process and a few changes, the report was accepted for recommendation for approval by the full Board of Trustees at its May 27, 2004 meeting. A copy of the revised memorandum is attached hereto as part of these minutes.

Judge Greene reported that the Nominating Committee interviewed Mr. Cosby Hunt, who

CONFIDENTIAL
MAK 5928

is a teacher at Bell Multicultural High School, and the Committee will recommend his election to the UPO Board of Trustees. Mr. Hunt would represent the educational community under the category of Major Groups and Interests.

**REPORT OF INTERIM EXECUTIVE DIRECTOR**

2.  Progress Update

    Mrs. Mack distributed a list of actions taken by the Board of Trustees and Management to stabilize the agency and requested the committee members to review, make any comments, and advise as to what format they desired for the information. Judge Wagner recommended that the information be prepared in report form and suggested that perhaps the report could be provided at the same time UPO submit its request for technical assistance. It was also recommended that the report be updated to include the resignation of Mr. Simmons and the recommendations to fill vacancies on the Board of Trustees.

3.  Financial Management

    Mr. Jones reported that a scope of services was developed for the provision of financial services in the Finance Office and was sent to three auditing firms: Bert Smith & Company, Gardiner Kamya & Associates, and Walker & Company, in accordance with UPO's emergency provision under the procurement policies. He stated responses were received from Gardiner and Walker & Company and he recommended that we accept the bid of Walker and Company, LLP, which had the lowest bid. He added that the bids were based upon the use of their management team of three (3) and existing Finance Office staff. He stated that neither respondent had a history with UPO, which was one of the concerns of the funding sources.

CONFIDENTIAL
MAK 5929

Mr. Jones stated that the total cost would not exceed $895,000 to run the Finance Office with the Walker & Company management team of three (3) and retaining nine (9) of the current staff.

Following a discussion, Mr. Jones was requested to provide a final figure for operating the Finance Office, to include the exact cost of Walker & Company and the cost for retaining appropriate staff, for presentation to the Board of Trustees at the May 27, 2004 meeting.

4. <u>Councilman Catania's Request</u>

Mr. Jones reported that there have been two letters from Councilman Catania and two responses from UPO which were prepared by legal counsel, Ford & Harrison. He stated that in response to Mr. Catania's request for information, and as approved by the UPO Board, 7200 pages of information were delivered by the date specified by Mr. Catania. (Copies of the correspondence were distributed to the Committee members.)

5. <u>Update on Banking Issues & Options</u>

Mr. Jones reported that staff is still working with the Forbearance Agreement with M & T Bank and that the Bank auditor will arrive on Tuesday, June 1, 2004. He also reported that UPO was experiencing account overdrafts and M&T has lifted all overdraft protections, thereby charging UPO for that. Mr. Jones also stated that UPO is responding to some the Bank's conditions for additional information and updates.

Mr. Jones reported that meetings have been held or scheduled with commercial lenders, i.e., Industrial Bank, Adams Bank, Independence Federal Savings Bank, and City Bank, to discuss filing jointly with UPO to a Federal Home Loan Bank of Atlanta for a loan to eliminate the debt with M&T Bank on the $1.5 million line of credit.

On another option, Mr. Jones reported meeting with Mr. Dickie Carter, who is on the board of BB&T Bank, a former UPO employee and a successful businessman in the District to discuss options with regard to putting together an investment group and/or supporting an effort that will allow some type of partnership arrangement that will allow them to finance UPO's properties, provide its with some equity to pay all the debt and ultimately provide an arrangement at some point where UPO can regain ownership of the properties. It was explained that this was simply another option just in case all of the other things fall through and UPO does not have cash to go forward. Mr. Jones stated that another meeting has to be

CONFIDENTIAL
MAK 5930