# EXHIBIT 87



# UNITED PLANNING ORGANIZATION

## MINUTES OF AD HOC MANAGEMENT COMMITTEE

April 20, 2004
6:30 p.m.

**PRESENT:**     Members Attending:

Mrs. F. Alexis H. Roberson, Temporary Chair
Ms. S. Kathryn Allen
Judge Rafael Diaz
Judge Henry Greene
Mr. Nathaniel Howard
Ms. Brenda Kelly
Hon. Annice M. Wagner

Members Absent:     Mrs. Carol Caldwell

Staff Attending:

Mr. Dana Jones, Interim Executive Director
Mrs. Gladys Mack, Deputy Executive Director
Ms. Josephine F. Thompson, Special Assistant to UPO President/Recorder

I.   AGENDA - An Agenda was distributed and discussed as follows:

Approval of Minutes from the Meeting on April 6, 2004

The April 6, 2004, Minutes were approved as corrected.

Issues Discussed on April 6, 2004, but Not Resolved

   1.

CONFIDENTIAL
MAK 5898

2. UPO's 501(c)3 Status

Mr. Jones reported that UPO is in compliance and staff is following through. ~~NAS~~ ~~this done~~ The major issue for staying in compliance is the completion of the audit by June 30, 2004. The audit will be two months ahead of schedule. Then we will have to file the Form 990 and appropriate documents to stay in compliance. The Form 990 is required to be posted, which can be done on the UPO website.

3. Discussion of claims to retrieve misused funds

(a) It was explained that UPO received a letter that indicated that a $10,000 check from John Poulos, owner of the boat, was all the money that would be returned.

There is about $84,000 involved in this transaction. The committee agreed to recommend to the Board that staff (Interim Executive Director and General Counsel) be authorized to pursue legal action to retrieve any and all payments made by Mr. Benjamin Jennings for the unauthorized purchase of the boat, "My Fine Lady," against the owner, John Poulos.

(b) There was a discussion on settling the account regarding the lease with Watkins Security. Mr. Jones reported that Watkins Security owes UPO some $27,000 in utility costs and UPO owes Watkins Security approximately $81,000. Watkins has agreed to offset their billing by what they owe UPO. Mr. Jones also reported that we are awaiting a report on Watkins Security from the Inspector General.

(c) With respect to the $108,000 loan to the North Capital Area Business Association, a $20,000 check from NCABA bounced and staff recommended taking all necessary steps to retrieve the full $108,000 from NCABA. Therefore, the Committee agreed to recommend to the Board that staff be authorized to take all necessary steps to retrieve money loaned to the North Capital Area Business Association.

CONFIDENTIAL
MAK 5899

(d) Mr. Jones reported that when the D.C. Prevention Partnership went out of business, Mr. Jennings loaned from UPO funds $65,000 - $70,000 for moving expenses, storage fees and payment for some of their bills.

Following a discussion the Committee agreed to recommend to the Board that staff be authorized to pursue all legal avenues to collect money loaned to the D.C. Prevention Partnership.

(e) Mr. Jones reported that there are two discrimination claims against UPO with the Office of the D.C. Office of Human Rights. Both individuals are in the UPO Finance Office - Ms. Elahe Madani and Mr. Amin Kakeh. Hartford Insurance has assigned Ford & Harrison to represent UPO in these cases.

- Review of the status of the committees of the Board and the need for Bylaws review

Chief Judge Wagner pointed that there are a number of committees listed in the Bylaws which have not functioned for a very long time and that modifications of the bylaws could address some of the issues discussed. Therefore, it was recommended that the UPO President appoint a Bylaws Committee to review and make recommendations concerning necessary changes in the bylaws, including, among others, examining the position treasurer, the position of secretary, term limits, the size of the Board, the meeting schedule of the Board, the committee structure and responsibilities, and signature authority on bank accounts, and that the committee include at least two members of the Ad Hoc Management Committee.

Mr. Jones commented that the Board needs to think about whether or not it needs Executive Director who is also the Secretary of the Board.

- Monthly financial reports (budget to spending report)

Mrs. Mack explained the Revised Fiscal Year 2004 Operating Budget Summary by

Page 3 of 10

CONFIDENTIAL
MAK 5900

Program dated April 19, 2004, covering the period October 2003 through March 2004. She presented the summary in detail and entertained questions regarding the revised budget. The summary also showed the budget for the following programs, as well as expenses year-to-date and the projections for the balance of the year:

(1) Community Services Block Grant Program
(2) Head Start Program
(3) Early Head Start Program
(4) Day Care & Related Programs
(5) Aging Programs
(6) Energy and Home Preservation
(7) Special Emphasis Programs
(8) Other Grants
(9) Private Funds
(10) MLK Breakfast

Detailed explanations were also included in the report. Mr. Jones also presented a preliminary breakdown of the FY 2003 deficit. In response to questions on the report, Mr. Jones pointed out it is apparent that UPO needs to change its spending pattern, mainly reducing the spending. The office directors are aware of where the red flags are and know where the budget cuts need to be made. Therefore, the report will be revised for presentation at the April 27, 2004 Board meeting.

**Policy and Procedures for Authorization of Check Signing**

Mr. Jones reported that staff is developing a draft manual which would address all financial policies and procedures to cover out-of-town travel, credit card use, utilization of vehicles, the procedures for the purchase of goods and services, etc. He will review the draft manual with the office directors. He will then present the draft manual to the Ad Hoc Management Committee, the appropriate Board committee and full Board for review.

**Update from the Interim Executive Director**

- Discussion of 2003 Audit Report

Mr. Jones stated that the FY 2003 audit report will be ready for submission to the Bank on April 22, 2004.

Mr. Jones referred to a Preliminary Breakdown of the UPO Deficit for FY 2003. He explained that ad a result of a meeting with Thompson, Cobb, Bazilio and Associates (TCBA), it is expected that the FY'03 change in net assets to be -$1.7. The break down of the deficit is as follows:

Page 4 of 10

CONFIDENTIAL
MAK 5901

| | | |
|---|---|---|
| CSBG | | +$1,500,000 |
| Head Start | | -  1,300,000 |
| Day Care | | -     300,000 |
| Office on Aging | | -     300,000 |
| Other Programs | | -     400,000 |
| Unrestricted | | -     500,000 |
| Bad Debts | | -     200,000 |
| SCCDS | -74,000 | |
| Boat | -71,000 | |
| Fishing Trips | -  4,000 | |
| DCCPP | -  7,000 | |
| Depreciation | | -     200,000 |

Mr. Jones explained that these figures include $211,000 in credit card charges not yet allocated to programs and $520,000 related to accounting errors Head Start. Mr. Jones stated that staff obtained every credit card bill and reviewed all credit card receipts and about one half of the receipts are allowable costs. The other half are not allowable costs.

Mr. Jones reported that by the end of the month, UPO will have a qualified compliance report - A-133. He also stated there needs to be a meeting with Dr. Eboda about using the leftover $1.5 million in CSBG funds to apply to some of UPO's debt and that Dr. Eboda has a reluctance, but will give his answer soon.

Mr. Jones also reported that the CSBG Monitoring Team has returned for followup. There was a mutual agreement as part of the process to try to do an open disclosure piece, while the audit is cleaned up, so that the Team can see actually for themselves that some of these things they made assumptions about, in terms of costs, are not real but rather here in the statements by an independent CPA. Therefore, when a final report is released, the numbers will be closer to right.

Mr. Jones explained that the Bank has the most to lose from this process and we have to bring them as partners, because part of the issue should be to protect their debt. There is an unsecured line of credit of $1.8 million which is equivalent to the debt.

- Debt Reduction

In terms of debt reduction, Mr. Jones stated that UPO needs to obtain current appraisals on the properties and he will approach the Bank on using the equity to pay down some of the bad debt that cannot be applied to government funds. He said that the Bank should be willing to do this because it can apply the $1.8 million to a fixed asset which will appreciate in value and it is less risk to his bank in having a $1.8

CONFIDENTIAL
MAK 5902

million non-collectable line of credit that's tied to an operational account. It would be in the Bank's best interest to pursue this avenue with UPO because it protects that line of credit and the Bank does have $1 million in CDs as collateral that belong to this agency. It was recommended that staff contact a financial advisor before pursuing this.

Mr. Jones shared some of these strategies for submitting the proposal to the Bank and there was additional discussion as to how large the deficit is.

- Accounting - Forward

Mr. Jones reported that he had received three (3) bids for outsourcing services performed by the Finance Office, as follows:

| | | |
|---|---|---|
| TCBA | - | $1,010,232 for one year |
| KPMG | - | $890,000 for one year (which is the current cost) |
| F.S. Taylor | - | $847,000 for one year. |

**INCLUDE THE RATIONALE FOR OUTSOURCING SERVICES**

Mr. Jones recommended F. S. Taylor and Associates because of their experience and knowledge of UPO's System, its history with performing services for UPO, as well as having the lowest bid. The Committee members expressed their concern that we make sure that UPO is in compliance with the procurement policies for issuing a sole source contract.

Following a discussion, the following motion was approved:

That the Ad Hoc Management Committee recommend to the UPO Board of Trustees that UPO enter into a contract with F. S. Taylor & Associates to perform functions in the Finance Office for a period of one year and that the Interim Executive Director and General Counsel be authorized to issue simultaneously a reduction-in-force in the Finance Office to include the offer of a thirty-day paid notice and up to one and a half (1 ½) months earned annual leave.

Another part of the justification for using F. S. Taylor & Associates was that three proposals were received and the federal policy allows ON AN EMERGENCY BASIS the issuance of the contract without a wide spread request for bids.

There also was a discussion on the cost of a reduction-in-force, notification requirements under the collective bargaining agreement and the availability of an employee retirement plan. The time frame for notification to employees is dependent

CONFIDENTIAL
MAK 5903

upon the completion of the FY 2003 audit.

- Vehicles

With respect to the use of the vehicle by the UPO President, the UPO President will file Form 1099s to amend tax returns from two years ago. With respect to the five (5) vehicles, Mr. Jones stated that staff is working with car dealerships to dispose of them and he will provide a report on the progress of that issue.

- Other Matters

(CSBG Team)

Mr. Jones reported that the CSBG Monitoring Team, at the invitation of Dr. Eboda, has returned to UPO to review what corrective actions had been taken since the draft report was issued.

It was pointed out that during the presentation of the CSBG draft report, Dr. Eboda had recommended that UPO obtain an outside group to investigate the allegations contained in the report and that his office may be able to assist with the cost of such an investigation. These was a lengthy discussion on whether there still is a need for an outside group to conduct an investigation of the allegations of improprieties or whether the hiring of an Interim Executive Director and corrective actions already taken would be sufficient. Because the original recommendation by Dr. Eboda had not been discussed with Mr. Jones, Mr. Jones stated that he will talk with Dr. Eboda and if it was felt that it was needed, then he would request financial assistance from DHS.

Mr. Jones also pointed out that what the public wants UPO to do is to establish the precedent to safeguard public money.

Mr. Jones stated that when the final report of the CSBG Monitoring Team is presented, UPO will have a corrective action plan, reviewed and approved by the Ad Hoc Management Committee, that will address the issues, as well as provide future steps to follow.

(Meals for the Office on Aging Program)

CONFIDENTIAL
MAK 5904

Mr. Jones reported that in spite of all our challenges, UPO was asked by the Office on Aging to serve an additional 105 people on a temporary basis. These services were originally contracted to the Senior Citizens Counseling & Delivery Service (SCCDS), which was underperforming on the contract. That contract has been de-funded.

(Staff Meetings)

Mr. Jones reported that the staff meetings have been going well and that the staff welcomed the opportunity for input, because they felt that it was not taking place. Therefore, progress is being made.

Mr. Jones reported that he has a meeting scheduled with Peter Jones, from the Mayor's office, who focuses on Ward 6 issues. He will provide a report on that meeting.

Mr. Jones stated that he will propose at the next Ad Hoc Management Committee meeting, a reorganization that limits the control of the Executive Director, as it relates to staff management. He stated that the former executive director had 29 people reporting directly to him and he felt that this could not be done. Mr. Jones wants to significantly reduce that number and, as well as reorganize the agency for more accountability.

Mr. Jones recommended that when the Bylaws are completed, the Board needs to plan the orientation for all board members. He said he has already started pulling together information on what that needs to look like and that Dr. Eboda has agreed to be a part of the orientation.

(New Opportunities)

Mr. Jones reported that UPO has a couple of new grant opportunities it will pursue: one for an addiction prevention program and one for a women's business center to put into the Petey Greene Center. In addition to that, UPO is in discussion with the Department of Health about a $600,000 program to provide assistance to people with AIDS who need rental assistance. Dialogue is continuing with funding sources to assure them that UPO can competently manage their money.

- **Report of Nominating Committee**

The Nominating Committee reported the following:

1. It will recommend to the Board that Ms. Joan Phillips, CEO at Greater Southeast Community Hospital, fill a vacancy under the category of Major

CONFIDENTIAL
MAK 5905

Groups & Interests.

2. It will request that the UPO President send a letter to the Mayor to consider two people the Committee has interviewed to fill the vacancies under the category Public Officials (designated by the Mayor). The two individuals are Ms. Brenda Donald Walker and Mr. Neil Albert.

3. Letters will be sent to the delegate agencies which have vacancies on the board.

4. The Committee, along with the Interim Executive Director, will be working on a proposed structure for the selection of an executive director.

## II. SUMMARY OF RECOMMENDATIONS TO THE BOARD:

1. That staff (Interim Executive Director and General Counsel) be authorized to pursue legal action to retrieve any and all payments to purchase the boat, "My Fine Lady," from the owner, John Poulos.

2. That staff be authorized to take all necessary steps to retrieve money loaned to the National Capital Area Business Association.

3. That staff be authorized to pursue all legal avenues to collect money paid on behalf of the D.C. Prevention Partnership for moving and storage fees.

4. That a Bylaws committee be appointed to review and make recommendations concerning necessary changes in the bylaws, including, among others, examining the position treasurer, the position of secretary, term limits, the size of the Board, the meeting schedule of the Board, the committee structure and responsibilities, and signature authority on bank accounts, and that the committee include at least two members of the Ad Hoc Management Committee.

5. That UPO enter into a contract with F. S. Taylor & Associates to perform functions in the Finance Office for a period of one year and that the Interim Executive Director and General Counsel be authorized to issue simultaneously a reduction-in-force in the Finance Office to include the offer of a thirty-day paid notice and one and a half (1 ½) months paid leave.

## III. SUMMARY OF STAFF ASSIGNMENTS:

CONFIDENTIAL
MAK 5906

3. That copies of all financial operating policies be provided to the Management Committee.

4. That the UPO procurement policy be thoroughly reviewed regarding the issuance of a sole source contract.

5. That a corrective action plan be developed.

6. That a proposed selection process for executive director be developed and recommended to the Ad Hoc Management Committee.

IV. **NEXT COMMITTEE MEETING DATES SUBJECT TO CHANGE:**

Tuesday, April 27, 2004 - 5:30 p.m.

V. **SUGGESTED DATE FOR NEXT BOARD MEETING:**

Tuesday, April 27, 2004 - 6:30 p.m.

VI. **ADJOURNMENT**

The meeting adjourned at 10:47 p.m.

**RECORDER:** Josephine F. Thompson, Special Assistant to UPO President

CONFIDENTIAL
MAK 5907