IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MOHAMMED AMIN KAKEH,<br><br>      Plaintiff,<br><br>v.<br><br>UNITED PLANNING ORGANIZATION, INC.,<br><br>      Defendant. | CIVIL ACTION NO. 05-1271 (GK/JMF)<br><br>Next Scheduled Event:<br>Pretrial Conference on 4/8/08 at 4:15 pm |

**UNITED PLANNING ORGANIZATION'S MOTION *IN LIMINE* TO EXCLUDE TESTIMONY, ARGUMENT AND EVIDENCE FROM DORIS STASHENKO**

Defendant United Planning Organization, Inc. ("UPO"), by and through its undersigned counsel, and, pursuant to Federal Rule of Civil Procedure 7, files this motion *in limine* to enter an order excluding testimony, argument and evidence from Plaintiff's Coworker, Doris Stashenko, as grounds therefore, states as follows:

UPO is concurrently filing a memorandum of points and authorities in support of this motion *in limine* to exclude testimony, argument and evidence from a former coworker of Plaintiff, Doris Stashenko, because such evidence and testimony is irrelevant, misleading, confuses the issues and highly prejudicial. The basis for UPO's motion is more fully set forth in the memorandum of points and authorities in support of the motion.

A proposed order granting the relief sought herein is provided herewith. Opposing counsel does not consent to the relief sought herein.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MOHAMMED AMIN KAKEH,<br><br>Plaintiff,<br><br>v.<br><br>UNITED PLANNING ORGANIZATION, INC.,<br><br>Defendant. | CIVIL ACTION NO. 05-1271 (GK/JMF)<br><br>Next Scheduled Event:<br>Pretrial Conference on 4/8/08 at 4:15 pm |

**UNITED PLANNING ORGANIZATION, INC.'S MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT OF MOTION *IN LIMINE*
TO EXCLUDE TESTIMONY FROM DORIS STASHENKO**

Defendant United Planning Organization, Inc. ("UPO"), by and through its undersigned counsel, and, pursuant to Federal Rule of Civil Procedure 7, files this motion *in limine* to exclude from the jury testimony or evidence from Plaintiff Mohammed Amin Kakeh's ("Plaintiff's") co-worker, Doris Stashenko, and, as grounds therefore, states as follows:

Plaintiff, a former Controller for UPO, brings claims of retaliation pursuant to the District of Columbia Whistleblower Protection Act ("WPA"), the District of Columbia Human Rights Act ("DCHRA"), the District of Columbia False Claims Act and the federal False Claims Act (collectively, the "FCAs") against his former employer UPO following his termination in conjunction with the outsourcing of the management of UPO's Finance Office. Based on Plaintiff's witness list, UPO anticipates that Plaintiff will seek to introduce evidence at trial that is irrelevant to his claims, misleading, confuses the issues, and otherwise inadmissible. Specifically, Plaintiff has proffered that Doris Stashenko, a co-worker, will testify regarding "her knowledge of Plaintiff's contacts with Tunde Ebode about financial improprieties at Defendant, the unusual nature of the Department of Human Resources' fiscal audit of Defendant,

management's use of the fishing boat purchased with Defendant's funds, and the fact that none of Defendant's managers mentioned that a reduction in force had occurred at Defendant." Joint Pretrial Statement at 8. UPO expects Plaintiff to attempt to elicit this testimony from Stashenko to corroborate Plainitff's testimony that he made protected disclosures under the WPA[1] and the FCAs,[2] and provide circumstantial evidence that UPO knew Plaintiff was making protected disclosures. Finally, UPO anticipates that Plaintiff will attempt to elicit testimony from Stashenko to establish that UPO's legitimate business reason for terminating Plaintiff's employment was false and motivated in fact by retaliation.[3]

As set forth below, Plaintiff's proffer regarding the testimony of Stashenko overstates her knowledge of Plaintiff's communications with Eboda, the nature of the fiscal audit, UPO's purchase of a fishing boat and the reduction-in-force.

A.  **STASHENKO'S KNOWLEDGE OF COMMUNICATIONS BETWEEN PLAINTIFF AND EBODA IS IRRELEVANT.**

Stashenko testified that she did not know what, if anything, Eboda and Plaintiff had discussed. In fact, she had no personal knowledge that they actually had spoken. She simply

---

[1] To prevail under the WPA, Plaintiff must demonstrate: (1) that he made a protected disclosure; and (2) that such a disclosure was a "contributing factor" in UPO's decision to take an adverse employment action. *See Anderson v. Ramsey*, No. 04-56, 2006 U.S. Dist. LEXIS 21034, at *39 (D.D.C. Apr. 19, 2006) (citing D.C. Code § 1-615.54(b), applicable to employees of the District of Columbia and which is substantively identical to § 2-223.03); *see also Johnson v. District of Columbia*, 935 A.2d 1113, 1116 (D.C. November 21, 2007) (*McDonnell Douglas* burden-shifting standard appropriately applied on claim for relief pursuant to the District of Columbia Whistleblower Protection Act, D.C. Code § 1-615.51 *et seq.*).

[2] To make out a successful claim of retaliation, Plaintiff must demonstrate: (1) he engaged in protected activity, that is, "acts done…in furtherance of an action under this section"; and (2) he was discriminated against "because of" that activity under the False Claims Acts. *See United States ex rel. Yesudian v. Howard Univ.*, 153 F.3d 731, 736 (D.C. Cir. 1998).

[3] If an employer proffers a non-retaliatory rationale for its employment decisions, the plaintiff must show that the "asserted justification is a pretext for discrimination and must prove both that the defendant's reason is false, and that discrimination was the real reason for the action taken against him." *See Guerrero v. Univ. of the Dist. of Columbia*, 251 F. Supp. 2d 13, 33 (D.D.C. 2003) (citations omitted) (DCHRA); *see also Johnson*, 935 A.2d at 1116 (WPA).

assumed that the gentlemen had spoken because she left a message, at Plaintiff's request, for Eboda to call Plaintiff.

> Q   Just to clarify. You don't have any – you don't recall any conversations between Mr. Kakeh and Mr. Eboda, say in January or February of 2004, any specifics about any conversation?
>
> A   No. Not that I can remember.
>
> Q   Do you remember giving Mr. Kakeh Mr. Eboda's contact information at any time?
>
> A   His contact information. Mr. Kakeh called me one time and just said to ask Dr. Eboda to call him. He said "Tunde." * * *
>
> Q   You mentioned that Amin Kakeh called and asked you to tell Tunde to call him.
>
> A   To relay a message, mm-hmm.
>
> Q   And did you?
>
> A   Yeah. That's not unusual for me. People ask me for that man's telephone number or a label or something all the time.
>
> Q   Did you think it was strange that he was asking you to tell Tunde to call him as opposed to just asking for his phone number?
>
> A   No. Hmh-mm. Not at UPO. And I believe he was busy.
>
> Q   He, being?
>
> A   Amin.
>
> Q   Do you remember calling Tunde and asking him to call Amin?
>
> A   Just relayed the message and that was it.
>
> Q   You don't remember Tunde asking why?
>
> A   No.
>
> Q   Anything?
>
> A   Hmh-mm
>
> * * *
>
> Q   Were you aware that Amin Kakeh was having conversations with Tunde Eboda?
>
> A   Well, I assumed – well, I can't say I assumed because I did pass on the telephone mssage, so I don't know what they wanted to discuss.
>
> Q   Did Amin Kakeh ever come back to you and discuss his phone calls with Tunde Eboda?
>
> A   No.

> Q       You said you recall one conversation in which Amin Kakeh asked you to have Mr. Eboda call him. Is that the only conversation you remember having with Amin Kakeh about Tunde Eboda?
>
> A       Yes. And it was a telephone call that he – it wasn't a conversation. It was a telephone call. He called me and asked me to relay to Tunde that he wanted to talk to him.
>
> Q       And Mr. Kakeh never called you back or had a face-to-face conversation about his interactions with Tunde Eboda?
>
> A       Not that I recall.

Deposition of Doris Stashenko ("Stashenko Dep.") at 19:11-20:1; 23:10-24:10; 44:21-45:20. Contrary to the proffer, Stashenko unwas aware that Plaintiff was communicating with Eboda about financial improprieties.

Stashenko's limited knowledge of Plaintiff's contacts with Eboda regarding alleged financial improprieties does not make the existence of any fact material to the determination of Plaintiff's claims more or less probable. Stashenko cannot corroborate Plaintiff's testimony that he was making protected disclosures. She has no information regarding the content of any communications between Eboda and Plaintiff. Thus, her testimony does not have any consequence to the determination of whether Plaintiff made protected disclosures to Eboda, and is irrelevant. FED. R. EVID. 402.

**B.      PLAINTIFF APPEARS TO INTEND TO USE TESTIMONY FROM STASHENKO REGARDING THE MONITORING REVIEW TO MISLEAD THE JURY.**

Contrary to Plaintiff's proffer, Stashenko never expressed a belief that Eboda's fiscal audit was "unusual." She testified:

> A       That Tunde Eboda told us in the meeting, he told Mr. Jennings, that he would be doing a monitoring visit, and that it would be both programmatic and fiscal. And if I'm not mistaken, this was from my experience with CSBG, that this was the first time they'd ever done a fiscal audit. Or planning to do a fiscal audit.
>
> Q       Do you remember Mr. Eboda indicating why they were going to do a fiscal audit at this time?

> A   Because he had never done one, and he was the new director now. He was not just the monitor. He was the person responsible for this 9 million-dollar grant.
>
> Q   Did he indicate how this – just how the fiscal audit would be different that the programming review?
>
> A   No. He never went in to that.

*Id.* at 21:19-22:14; *see also* 41:11-21.

Based upon her personal observations, Stashenko did not perceive the fiscal audit as "unusual." Her testimony does not support the conclusion that one would not expect a fiscal audit to be part of monitoring review. Eboda himself testified that it was a routine monitoring review. Exhibit B(Deposition of Tunde Eboda at 21:16-24:18) Thus, it appears that Plaintiff will mislead the jury by misconstruing Stashenko's opinion about the fiscal audit to make it appear that UPO should have been suspicious about the impetus for Eboda's monitoring review. FED. R. EVID. 403.

### C.   TESTIMONY FROM STASHENKO ABOUT A FISHING BOAT HAS NO PROBATIVE VALUE AND IS A WASTE OF TIME.

Stashenko has no personal knowledge about management's alleged use of a fishing boat using UPO's funds. Rather, she relies on rumors about a boat.

> Q   Okay. Again, so you said there were rumors about a boat –
>
> A   Right.
>
> Q   -- is that right?
>
> A   Mm-hmm.
>
> Q   And you said it was the UPO purchased a boat?
>
> A   No, I didn't say that they purchased a boat. I said there were rumors about a boat because management went fishing at least once a week.
>
> Q   So what was said about the boat? What was the content of these rumors?
>
> A   Oh, I stand corrected. They would say that UPO is buying a boat, but we never saw a boat, so. Or we're invited to go on a boat.

Stashenko Dep. at 37:13-38:7.

Plaintiff apparently wishes to rely on Stashenko's testimony to establish that he had a reasonable belief that he was making a protected disclosure to Eboda when he informed him about a fishing boat. This Court should not allow Plaintiff to elicit evidence from Stashenko to corroborate his testimony on this issue because she has no personal knowledge of a boat. Her information is based upon rumor and speculation. Accordingly, such testimony is irrelevant and highly prejudicial. FED. R. EVID. 403.

### D. PLAINTIFF WISHES TO USE STASHENKO'S TESTIMONY REGARDING PLAINTIFF'S TERMINATION OF EMPLOYMENT TO MISLEAD THE JURY TO BELIEVE THAT UPO'S REDUCTION-IN-FORCE WAS PRETEXTUAL.

Stashenko does not recall UPO management mentioning a reduction-in-force occurring in June 2004. On the other hand, she does recall an announcement of a reorganization and discussions about outsourcing the Finance Office.

> Q   Do you remember them giving any reason why Amin Kakeh left?
> A   I think the reason that they said was a reorganization. But they kept telling us all the time they were going to reorganize, so it took them a long time to get their reorganization together.

*Id.* at 33:21-34:5; *see also* 46:6-9; 48:21; 49:3, 13-17. Further, she testified that she had no personal knowledge regarding the timing of UPO's decision to reorganize and outsource the management of the Finance Office. *Id.* at 49:8-17.

The fact that UPO did not formally announce the reduction-in-force is of no consequence to whether the reduction-in-force was a subterfuge for retaliation in violation of the WPA, DCHRA or FCAs. Such testimony would only serve to mislead the jury and confuse the issue. While Stashenko does not recall the term "reduction-in-force" being used, she does recall the changes in the Finance Office being referred to as a reorganization and Plaintiff being

terminated. She has no personal knowledge of the reason for the reorganization. Accordingly, Stashenko's testimony merely supports the fact that there was a change in the Finance Office. Testimony from Stashenko would not make it more or less probable that the reason given for Plaintiff's discharge, whether the result of a reorganization or reduction-in-force, was false. It is simply a waste of time and there is a danger that it will mislead the jury. FED. R. EVID. 402, 403.

WHEREFORE, Defendant, UPO, respectfully requests that this Court enter an Order *in limine* excluding any evidence and testimony from Doris Stashenko at trial.

Dated: March 21, 2008

Respectfully submitted,

By: /s/ Alison Nadine Davis
Alison Nadine Davis
D.C. Bar No. 429700
adavis@fordharrison.com
David A. Rosenberg
D.C. Bar No. 433405
drosenberg@fordharrison.com
Kevin M. Kraham
D.C. Bar No. 459077
kkraham@fordharrison.com

FORD & HARRISON LLP
1300 19th Street, N.W., Suite 700
Washington, DC 20036
(202) 719-2000
(20) 719-2077 (Facsimile)

Attorneys for Defendant United Planning Organization, Inc.

DC:73202.1