A

COPY

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

Mohammed Amin Kakeh,          *

      Plaintiff,          *     Civil Case No.

v.                            *     1:05-CV-1271

United Planning              *

Organization, Inc.,          *

      Defendant.          /

                Silver Spring, Maryland

                Monday, March 6, 2006

Deposition of:

                SHIRLEY G. FISHER,

the witness, called for oral examination by

Counsel for the Plaintiff, pursuant to notice,

held at the law offices of Zipin & Melehy, 8403

Colesville Road, Suite 610, Silver Spring,

Maryland, beginning at 1:15 p.m., before Donald E.

Brayboy, Court Reporter and Notary Public in and

for the State of Maryland, when were present:



Precise Reporting Services
(301) 210-5092
Serving MD, D.C. & VA

DEPOSITION OF SHIRLEY G. FISHER
CONDUCTED ON MONDAY, MARCH 6, 2006

4

1    P R O C E E D I N G S

2         *   *   *   *   *   *   *

3              SHIRLEY G. FISHER,

4    having been duly sworn, testified as follows:

5    EXAMINATION BY COUNSEL FOR PLAINTIFF:

6    BY MS. McFARLAND:

7         Q.   Ms. Fisher, have you ever had your

8    deposition taken before?

9         A.   Yes.

10        Q.   You're familiar with the process?

11        A.   I am familiar with the process.

12        Q.   Okay.  Please just, if I ask a question

13   that you're unclear on, just ask for

14   clarification, if you will.

15        A.   I'll make sure.

16        Q.   Can you tell me what your position is at

17   United Planning Organization?

18        A.   My title is Head of Competitive Grants

19   Division.

20        Q.   And what's that position entail?

21        A.   That means that I'm responsible for the

DEPOSITION OF SHIRLEY G. FISHER
CONDUCTED ON MONDAY, MARCH 6, 2006

5

1  oversight of some small grants that are given to
2  the community to provide social services to
3  indigent residents of the District of Columbia.
4      Q.   How long has that been your position?
5      A.   Since February of two thousand -- I'm
6  sorry -- July of 2001.
7      Q.   Were you employed by United Planning
8  Organization before that?
9      A.   Yes.
10     Q.   And what was your position then?
11     A.   I began working for the United Planning
12 Organization on February 9, 1981. And I was the
13 Director of Substance Abuse Services until -- gee,
14 let me get my dates correct here.
15          I believe it was 1998 that I became the
16 director of a program that was called the
17 Community Transition Program. It was either '97
18 or '98.
19          For one year prior to the actual
20 beginning of that program, I was acting as the --
21 how would I put it? -- the liaison between UPO

DEPOSITION OF SHIRLEY G. FISHER
CONDUCTED ON MONDAY, MARCH 6, 2006

9

1    A.    Yes, ma'am, she is.

2    Q.    And how many people report to you?

3    A.    At this particular juncture?

4    Q.    Uh-huh.

5    A.    Nobody.

6    Q.    How many people reported to you in the
7  spring of 2004, if you recall?

8    A.    2004?  Nobody.

9    Q.    How often do you interact with Dana
10 Jones at work?

11   A.    Very rarely.

12   Q.    About how often?

13   A.    Well, probably since the -- and by
14 interaction, please explain what you mean.  Are
15 you talking about face-to-face contact like you
16 and I are having, or just in a general meeting?

17   Q.    In a general meeting.

18   A.    Oh, I've probably gone to, maybe, I
19 would say since he came there, probably four or
20 five meetings.

21   Q.    How often did you interact with Ben

DEPOSITION OF SHIRLEY G. FISHER
CONDUCTED ON MONDAY, MARCH 6, 2006

54

1  blamed him?
2      A.   No.
3      Q.   How did you respond when Mr. Kakeh said
4  that he felt he was being retaliated against?
5      A.   Well, you know, he -- how did I respond?
6  Or how -- what did I say?
7      Q.   Yes.
8      A.   Oh, I said to him, you know, I just
9  don't understand how a comptroller could be RIF'd.
10  And did they give you an opportunity for bumping
11  rights?  Could you have bumped somebody else?
12          Because in a reduction in force there's
13  a policy within the agency that says you're
14  supposed to have bumping rights.
15     Q.   Can you explain the bumping rights?
16     A.   I -- you know, I really don't know all
17  of the mechanics of the bumping rights.  But I do
18  know whenever there is a RIF, they are supposed to
19  give you a list of people that are in -- it's like
20  a grouping that they have of jobs.
21     Q.   Uh-huh.

DEPOSITION OF SHIRLEY G. FISHER
CONDUCTED ON MONDAY, MARCH 6, 2006

60

1  Q.  Did anybody in management ever explain
2  why Mr. Isaac left?
3  A.  No. I think he just resigned.
4  Q.  Do you know why Mr. Simlote left?
5  A.  No. He just resigned.
6  Q.  Did you ever speak to anybody in
7  management about Amin Kakeh leaving?
8  A.  You mean upper management?
9  Q.  Yes.
10 A.  No.
11 Q.  Did anybody in upper management ever
12 explain to you why Mr. Kakeh left?
13 A.  No.
14 Q.  Did anybody in upper management explain
15 why Nona McLean left?
16 A.  No.
17 Q.  Did anybody in upper management ever
18 explain the reduction in force?
19 A.  No.
20 Q.  Did you ever receive a written
21 announcement of a reduction in force?

DEPOSITION OF SHIRLEY G. FISHER
CONDUCTED ON MONDAY, MARCH 6, 2006

65

1    A.   Yes.

2    Q.   This past August?

3    A.   Yes.

4         MS. McFARLAND:  Let's take a

5    10-minute break.

6         (A short recess was taken.)

7    BY MS. McFARLAND:

8    Q.   I want to just go back over a few things

9    with you.

10        Since Mr. Kakeh left UPO, have you had

11   any further conversations with him about his

12   theory that he was let go in retaliation?

13   A.   I think he has mentioned that he felt

14   that he was let go because of all of the

15   investigations that occurred.  Yes, he did mention

16   that to me.  And when and where, I'm not sure.

17   Q.   Uh-huh.

18   A.   I mean, I know where, by telephone,

19   because I haven't seen him in person since he

20   left.  But by telephone.

21   Q.   Did you think it was reasonable for him

DEPOSITION OF SHIRLEY G. FISHER
CONDUCTED ON MONDAY, MARCH 6, 2006

66

1  to think that?

2      A.   I certainly would.

3      Q.   Why would you think that?

4      A.   Well, let's face it. The comptroller
5  has all the information in an agency. I mean,
6  they know all the nuts and bolts of what's going
7  on in finances.

8           So I would think -- I mean, it's -- I
9  guess there's -- aside from that, aside from the
10 fact that I -- the comptroller actually controls
11 the purse strings, if you will, or tries to
12 control the purse strings.

13          I mean, I would wonder, if it was me,
14 why there was a reduction in force and me as a
15 comptroller was given one.

16     Q.   Uh-huh.

17     A.   And I would wonder about that. I
18 certainly would. But, you know, again, in terms
19 of specificity, it's very difficult to put your
20 finger on something. These are the kind of
21 things, you know, you can feel, you can think, but

DEPOSITION OF SHIRLEY G. FISHER
CONDUCTED ON MONDAY, MARCH 6, 2006

67

1  you don't have anything concrete to -- so it's
2  speculative, if you will.
3      Q.   Sure.
4           Did you ever have a conversation after
5  Mr. Kakeh left with any other UPO employee about
6  Mr. Kakeh's feelings that he was let go for
7  participating in an investigation?
8      A.   Well, I talked to Doris Stashenko.  I
9  mean, Doris and I, we're not real good friends,
10 but we talk.  And I, you know, kind of kept her
11 abreast of how he's doing.
12          It's pretty much a general feeling there
13 that -- that the RIF was not -- I mean, let's face
14 it.  You have a RIF in an agency and only two
15 people are RIF'd?  You wonder why.
16     Q.   Uh-huh.
17     A.   There's something else that just
18 occurred to me now.  I recall that Mr. Kakeh was
19 concerned because he was not able to get a job.
20 He went on many interviews, or some interviews.  I
21 don't know how many.

DEPOSITION OF SHIRLEY G. FISHER
CONDUCTED ON MONDAY, MARCH 6, 2006

74

1   Q.   Were you involved in the process of
2   issuing of the RIF notices?
3   A.   No, no.
4   Q.   And you mentioned that you were aware
5   that Mr. Jennings had made a loan to Therman
6   Walker.
7       Do you know when you first learned about
8   that loan?
9   A.   It was quite sometime ago.
10  Q.   Was it prior to 2004?
11  A.   Yes.
12  Q.   Prior to 2003?
13  A.   I'm not sure exactly when it was, but I
14  think it might have been 2002 or 2003 sometime.
15  I'm not sure of the exact date.  I can't be sure
16  of the date.
17  Q.   And you mentioned some trips to
18  Hawaii --
19  A.   Uh-huh.
20  Q.   -- that people had gone on and you
21  identified several employees.

DEPOSITION OF SHIRLEY G. FISHER
CONDUCTED ON MONDAY, MARCH 6, 2006

77

```
STATE OF MARYLAND        )
                         )  ss
COUNTY OF PRINCE GEORGE'S)
```

I, DONALD E. BRAYBOY, a Notary Public in and for the County and State aforesaid, duly commissioned and qualified, the reporter before whom the foregoing deposition was taken, do hereby certify that the witness whose testimony appears in the foregoing deposition was sworn by me; that said deposition is a true record of the testimony given by said witness.

I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which this deposition was taken; and further that I am not a relative or employee of any attorney or counsel employed by the parties hereto, or financially or otherwise interested in the outcome of this action.

*Donald E. Brayboy*
Donald E. Brayboy

My commission expires: April 1, 2007