UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MOHAMMED AMIN KAKEH,

    Plaintiff,

v.

UNITED PLANNING ORGANIZATION, INC.,

    Defendant.

Civil Action No. 05-1271 (GK)

Next Scheduled Event:
Pretrial Conference on 4/8/08 at 4:15 pm

**DEFENDANT UNITED PLANNING ORGANIZATION, INC.'S MOTION FOR
PARTIAL RECONSIDERATION OF THE COURT'S FEBRUARY 28, 2008
<u>MEMORANDUM OPINION</u>**

    Defendant United Planning Organization, Inc. ("UPO") hereby moves the Court to reconsider its denial of UPO's Motion for Summary Judgment as to Counts I, IV, and V, brought pursuant to the District of Columbia Whistleblower Protection Act ("WPA"), D.C. Code §§ 2-223.01 et seq. (Count I); the False Claims Act ("FCA"), 31 U.S.C. § 3730(h) (Count IV); and the District of Columbia False Claims Act ("DCFCA"), D.C. Code § 2-308.16 (Count V), and grant UPO's Motion for Summary Judgment as to Counts I, IV, and V.  For the reasons set forth in UPO's Memorandum in support of its Motion, UPO's Motion for Summary Judgment as to Counts I, IV, and V should be granted.  A proposed order granting the relief sought herein is provided herewith.  Opposing counsel does not consent to the relief sought herein.

Dated:  March 21, 2008                              Respectfully submitted,


                                                    By:    /s/ Alison N. Davis & Kevin M. Kraham
                                                        Alison N. Davis, DC Bar No. 429700
                                                        Kevin M. Kraham, DC Bar No. 459077
                                                        David A. Rosenberg, DC Bar No. 433405
                                                        FORD & HARRISON LLP
                                                        1300 19th Street, N.W., Suite 700
                                                        Washington, DC  20036
                                                        Tel  (202) 719-2000
                                                        Fax  (202) 719-2077

                                                        Attorneys for Defendant UNITED PLANNING
                                                        ORGANIZATION, INC.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MOHAMMED AMIN KAKEH,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>UNITED PLANNING ORGANIZATION, INC.,<br><br>　　　　Defendant. | Civil Action No. 05-1271 (GK)<br><br>Next Scheduled Event:<br>Pretrial Conference on 4/8/08 at 4:15 pm |

**DEFENDANT UNITED PLANNING ORGANIZATION, INC.'S MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR PARTIAL
RECONSIDERATION OF THE COURT'S FEBRUARY 28, 2008
<u>MEMORANDUM OPINION</u>**

Defendant United Planning Organization, Inc. ("UPO") hereby moves the Court to reconsider its denial of UPO's Motion for Summary Judgment as to Counts I, IV, and V, brought pursuant to the District of Columbia Whistleblower Protection Act ("WPA"), D.C. Code §§ 2-223.01 <u>et</u> <u>seq.</u> (Count I); the False Claims Act ("FCA"), 31 U.S.C. § 3730(h) (Count IV); and the District of Columbia False Claims Act ("DCFCA"), D.C. Code § 2-308.16 (Count V), and grant UPO's Motion for Summary Judgment as to Counts I, IV, and V. Drawing all reasonable inferences in favor of Plaintiff, there is not a single shred of evidence, whether direct or circumstantial, that UPO knew or perceived Plaintiff to be a whistleblower. Accordingly, UPO's Motion for Summary Judgment as to Counts I, IV, and V should be granted.

I.　　BACKGROUND STATEMENT

Plaintiff is the former Controller for UPO (Dkt. No. 91 at 2). In February 2004, the District of Columbia Department of Human Services ("DHS"), under the direction of Tunde Eboda, conducted a prescheduled programmatic and fiscal monitoring review of UPO relating to

Community Services Block Grants ("CSBG"). Id. at 3. As a result of the monitoring review, Eboda issued a draft preliminary report which identified numerous deficiencies in UPO's financial management. Id. A subsequent routine review by the U.S. Department of Health and Human Services likewise found deficiencies and designated UPO as a "high-risk grantee." Id. at 4. In addition, several Inspectors General and the U.S. Department of Justice commenced investigations of UPO. Id.

As a consequence of the outcomes of the monitoring reviews, UPO replaced its Executive Director and retained an Interim Executive Director, Dana Jones, who recommended that UPO's Board of Trustees outsource the management of the Finance Office. Id. at 3. The Board approved Jones' recommendation. Consequently, Plaintiff's employment with UPO ended as part of a reduction-in-force on June 30, 2004 (Dkt. No. 91 at 5-7).

In 2005, Plaintiff filed his five-count Complaint challenging the loss of his position as UPO's Controller through the reduction-in-force. After discovery, UPO filed a Motion for Summary Judgment (Dkt. No. 73), Plaintiff filed an Opposition (Dkt. No. 78), and UPO filed a Reply (Dkt. No. 82). On February 28, 2008, the Court issued a Memorandum Opinion ("Opinion") in which it granted UPO's Motion as to Count II and denied UPO's Motion as to Counts I, III, IV, and V (Dkt. No. 91).

## II.  DISCUSSION

### A.  Legal Standard For Motion For Reconsideration.

A trial court has broad discretion to grant or deny a motion for reconsideration and will revise its decision only if it finds "(1) an intervening change in controlling law, (2) the availability of new evidence, or (3) the need to correct clear error or manifest injustice." Higbee v. Billington, 290 F. Supp. 2d 105, 106 (D.D.C. 2003); Regency Comm. Inc. v. Cleartel Comm.

Inc., 212 F. Supp. 2d 1, 3 (D.D.C. 2002); see also Firestone v. Firestone, 76 F.3d 1205, 1208 (D.C. Cir. 1996). The Court's conclusion that "[t]he record discloses that there is a genuine issue of material fact concerning whether UPO was aware of any protected disclosures[]" – thereby allowing Plaintiff's WPA, FCA, and DCFCA claims to proceed to trial – constitutes a "clear error or manifest injustice" Dyson v. Winfield, 129 F. Supp. 2d 22, 23 (D.D.C. 2001).

> B.    The Record Contains No Evidence That UPO Had Knowledge That Plaintiff Was A Whistleblower. The Record Does, However, Contain Evidence That UPO Had Knowledge That Plaintiff Was Carrying Out His Duties As UPO's Controller By Cooperating With The Monitoring Review Conducted By The Government Of The District Of Columbia.

A material issue on Counts I, IV, and V is whether UPO knew that Plaintiff had disclosed to Eboda and federal law enforcement that UPO was engaged in fraud, waste or abuse, or made false claims to the federal or District of Columbia governments. The record is devoid of any direct or circumstantial evidence that anyone at UPO – whether involved in the determination to outsource the management of UPO's Finance Office or not – knew that Plaintiff had made, or was making, protected disclosures. Instead, the record shows that Plaintiff, motivated by self-preservation, took advantage of the prescheduled DHS monitoring review of UPO's financial management of public funds to paint himself as a whistleblower. UPO does not dispute that Plaintiff cooperated in the monitoring review. His cooperation was expected, as he was UPO's Controller. He was not an administrative assistant, driver, or program manager. It would have been puzzling to UPO if Plaintiff had been uncooperative since he was very knowledgeable concerning UPO's financial operations, based on his numerous years managing the Finance Office. Because Plaintiff was merely performing his job duties by cooperating with DHS's review, Plaintiff may not cloak himself in the protective shroud of whistleblower.

The WPA prohibits an employer from taking an adverse employment action or otherwise retaliating against an employee because of the employee's protected disclosure or because of an employee's refusal to comply with an illegal order. See D.C. Code § 2-223.02. To prevail under the WPA, Plaintiff must demonstrate: (1) that he made a protected disclosure; and (2) that such a disclosure was a "contributing factor" in UPO's decision to take an adverse employment action. See Anderson v. Ramsey, No. 04-56, 2006 U.S. Dist. LEXIS 21034, at *39 (D.D.C. Apr. 19, 2006) (citing D.C. Code § 1-615.54(b), applicable to employees of the District of Columbia and which is substantively identical to § 2-223.03). A "protected disclosure" under the WPA includes any disclosure of information by an employee to a supervisor or public body that the employee reasonably believes evidences:

> (1) gross mismanagement in connection with the administration of a public program or the execution of a public contract; (2) gross misuse or waste of public resources or funds; (3) abuse of authority in connection with the administration of a public program or execution of a public contract; (4) a violation of a federal or state law, or of a contract with the District of Columbia government; or (5) a substantial and specific danger to the public health and safety.

D.C. Code § 2-223.01(7). A plaintiff suing under the WPA "must also demonstrate that the employer would not have taken the adverse action for 'legitimate' reasons independent of the protected disclosure." See Anderson v. Ramsey at *39 (citing Crawford v. Dist. of Columbia, 891 A.2d 216, 219-221 (D.D.C. 2006) (also citing §1-615.51 et al.)).

The language in both the DCFCA and the FCA is virtually identical. D.C. Code § 2-308.16; 31 U.S.C.A. §3730(h). Both laws prohibit an employer from taking an adverse employment action, including discharge, against an employee who discloses information to a government or law enforcement agency concerning, or in furtherance, of a false claims or private qui tam action. Because the local government has borrowed directly from the federal statute, it is

presumed that the judicial construction has been borrowed as well. Nolting v. National Capital Group, Inc., 621 A.2d 1387, 1388 (D.C. 1993).

To make out a successful claim of retaliation, Plaintiff must demonstrate that: (1) he engaged in protected activity, that is, "acts done . . . in furtherance of an action under this section"; and (2) he was discriminated against "because of" that activity under the DCFCA and FCA. United States ex rel. Yesudian v. Howard Univ., 153 F.3d 731, 736 (D.C. Cir. 1998). To establish that he was discriminated against because of the activity, Plaintiff must show that: (1) UPO had knowledge the employee was engaged in protected activity; and (2) the retaliation was motivated, at least in part, by his engaging in that protected activity. Id.

In the Opinion, the Court concludes that Eboda's testimony is sufficient to raise a genuine issue of material fact concerning whether UPO was aware of Plaintiff's protected disclosures (Dkt. No. 91 at 15). This reading of Eboda's testimony goes far beyond drawing all reasonable inferences in Plaintiff's favor in that it draws inferences that do not, and cannot, exist. All that Eboda's deposition testimony reveals is that Eboda told Alexis Roberson and Dana Jones that Plaintiff, in his capacity as UPO's Controller, was helpful during the course of the monitoring review. Eboda testified:

> Q: Was it known at UPO, at any time, that he met with you in early February and/or provided documents and other information to you, at that time?
>
> A: I did not disclose that. I don't know if anybody else was aware of that.
>
> Q: So the record is clear, is it clear that UPO knew or should have known Mr. Kakeh provided you with some financial documents?
>
> A: Yes.
>
> Q: Specific members of the management team knew that?

A: Either by their observations or but us following protocol, which is to ask Ms. Shears first, she would say, I can get it from Amin or you can get it from Amin, something to that effect.

Q: They were aware of the fact you had gotten some documents from Mr. Amin?

A: Prior to my visit?

Q: Yes.

A: I did not disclose that, but I did disclose that I had talked to him, the initial status, I think the time I may have been completely open about Mr. Amin was first when the old management was no longer at the helm of the organization. The ad hoc management was there and when the interim executive director was hired at the beginning of April, I also disclosed it.

Q: You mean Dana Jones?

A: Yes.

Q: What did you say to Dana Jones about Mr. Kakeh's cooperation with you?

A: I said the we appreciated it and that it was – we found it highly relevant.

Q: Did you disclose to him that Mr. Kakeh has cooperated with you in early February by providing you information?

A: Nothing specific other than he was somebody we talked to and I encouraged him to talk to Mr. Kakeh.

I believe he set up meetings. I know I was part of at least one meeting Mr. Kakeh was at, was in with Mr. Jones.

Whether they had other meetings outside of the one I participated in, I don't know, but I did encourage Mr. Jones, I identified Mr. Kakeh as someone I believed was knowledgeable about financial operations of this agency and he could also be useful to him.

Ex. A (Deposition of Tunde Eboda, Feb. 23, 2006, ("Eboda Dep.") at 97-99).[1] All UPO knew, according to Eboda, was that Plaintiff had provided him financial documents. Id. (Eboda Dep. at 97:15-18). The record does not indicate that Eboda reported to Roberson and Jones that Plaintiff disclosed to him specific documents or particular information. Eboda was not specific. His testimony was:

> A:   I believe that I disclosed to at least one member of that team, the co chair of the ad hoc management team, Ms. Alexis Roberson, that Plaintiff had been a highly valuable resource to us and I encouraged her to have meeting with him and get more cooperation or information from him.

Id. (Eboda Dep. at 92:12-17). The record is also devoid of any evidence of how Plaintiff was a resource to Eboda. It is mere conjecture that UPO interpreted this statement to mean that Plaintiff was independently assisting Eboda in uncovering fraud, waste, and abuse or evidence of false claims. There is no evidence that UPO had any information that Plaintiff was acting in his own self-interest or contrary to UPO's best interest when he cooperated with Eboda.

At most, a reasonable fact-finder could infer that UPO was aware of Plaintiff's helpfulness and cooperation in performing his job as UPO's Controller, not that Plaintiff made protected disclosures or met clandestinely with Eboda or any other investigator.[2] Where, as here, an employee merely performs his normal duties and expresses disagreement, that employee, as a matter of law, has not made protected disclosures. Huffman v. Office of Personnel Mgmt., 263 F.3d 1341, 1346-53 (Fed. Cir. 2001); Willis v. Dep't of Agriculture, 141 F.3d 1139, 1143 (Fed. Cir. 1998) ("Discussion and even disagreement with supervisors over job-related activities is a

---

[1] Dkt. No. 73 (Def.'s Mem. Supp. Summ J.) at Ex. 1.

[2] Plaintiff's disagreement with Gladys Mack and Sheila Shears regarding the presentation of certain financial information (Dkt. No. 73 (Def.'s Mem. Supp. Summ. J.) at 26-27) coupled with Eboda's testimony also is not sufficient to infer that UPO had knowledge of Plaintiff's alleged protected disclosures (Dkt. No. 91 at 4-5).

normal part of most occupations. It is entirely ordinary for an employee to fairly and reasonably disagree with a supervisor who overturns the employee's decision."); Skare v. Extendicare Health Servs., No. 06-2459/06-2461, 2008 U.S. App. LEXIS 2803, at *10 (8th Cir. Feb. 8, 2008) (plaintiff not a whistleblower by merely performing job duties which included reporting compliance issues); Deneau v. Manor Care, Inc., 219 F. Supp. 2d 855, 865 (E.D. Mich. 2002) (plaintiff not a whistleblower by merely performing job duties); Freeman v. Ace Tel. Ass'n, 404 F. Supp. 2d 1127, 1141 (D. Minn. 2005) (plaintiff not a whistleblower by merely performing job duties which included communicating financial issues; "To that end, the Court agrees with Ace that to rule otherwise would be to open the door for all compliance discussions to be viewed as 'reports' that implicate the [Whistleblower] Act."); Andrews v. Northwestern Travel Servs., No. C5-97-1766, 1998 Minn. App. LEXIS 299, at *12 (Minn. Ct. App. March 10, 1998) (same); Biggs v. City of Taylor, No. 245280, 2004 Mich. App. LEXIS 978, at *4 (Mich. Ct. App. April 15, 2004) (same). Therefore, as a matter of law, Counts I, IV, and V must fail. Lemmons v. Georgetown Univ. Hosp., 431 F. Supp. 2d 76, 90 (D.D.C. 2006) (citing Greene v. Dalton, 164 F.3d 671, 675 (D.C. Cir. 1999)).

## III. CONCLUSION

For the foregoing reasons, UPO's motion for reconsideration should be granted and the Court should grant summary judgment for UPO as to Counts I, IV, and V.

Dated:  March 21, 2008                    Respectfully submitted,


                                          By:   /s/ Alison N. Davis & Kevin M. Kraham
                                                Alison N. Davis, DC Bar No. 429700
                                                Kevin M. Kraham, DC Bar No. 459077
                                                David A. Rosenberg, DC Bar No. 433405
                                                FORD & HARRISON LLP
                                                1300 19th Street, N.W., Suite 700
                                                Washington, DC  20036
                                                Tel  (202) 719-2000
                                                Fax  (202) 719-2077

                                                Attorneys for Defendant UNITED PLANNING
                                                ORGANIZATION, INC.


DC:73130.1