UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Mohammed Amin Kakeh,<br><br>    *Plaintiff*,<br><br>   v.<br><br>United Planning Organization, Inc.,<br><br>    *Defendant*. | Civil Case No. 1:05-cv-1271 (GK/JF)<br><br>Next Scheduled Event:<br>Pretrial Conference on 4/28/08 at 10:15am |

**PLAINTIFF'S REPLY IN SUPPORT OF FIRST MOTION IN LIMINE**

Plaintiff, by and through his undersigned counsel, and, pursuant to LCvR 7(d), files this Reply to Defendant's Opposition to Plaintiff's First Motion in Limine ("Opposition Brief"). For the reasons stated below, the Defendant's Opposition is without merit and Plaintiff's Motion should be granted.

**ARGUMENT**

**I.   ANY PROBATIVE VALUE OF THE OCTOBER 24 INCIDENT IS SUBSTANTIALLY OUTWEIGHED BY THE DANGER OF UNFAIR PREJUDICE.**

In its Opposition Brief, Defendant beats the drum of relevance, but pushes aside the relevant facts. First, Plaintiff *only* seeks to exclude evidence of the October 24 incident and the Plaintiff's incarceration and probation. Plaintiff does not seek to exclude the much broader category of evidence pertaining to the Plaintiff's "relationship with his daughter during this tenuous period" as the Defendant incorrectly asserts in its Opposition Brief. (Dkt. 112 at 4.) By casting this wider net, the Defendant serruptiously presses on one side of the scale to argue the probative value of this evidence substantially outweighs its prejudice.

1

The facts are that Plaintiff's emotional distress started well before he was terminated by the Defendant in June 2004 and continued well after he started working again in May 2005. An incident that occurred over a period of less than two weeks is barely probative as to the extent of the Plaintiff's damages over the course of at least one year. Furthermore, Nabeelah Kakeh testified that the reason why she ran away multiple times was because the Plaintiff was so preoccupied with his work, that he did not have the time for her:

> Q- Do you remember having issues with your parents in June 2004?
> A- Yes.
> Q- What happened in June 2004?
> A–They were involved in writing employment letters and didn't have time for me at all. So I separated from them in May. They didn't notice.
>
> ***
>
> Q- How did [Plaintiff] neglect you?
> A- He didn't have time for me.
> Q- What was he doing when he wasn't spending time with you?
> A- Searching for a job.
> Q- Before he started spending time searching for a job, what would he do with you?
> A- We would talk, he would be – when he was in the room he would be more mentally there instead of just being in the room and not being in his – in the room.

(Nabeelah Kakeh Dep., attached as Exhibit A at 13, 20.)

Plaintiff disciplined Nabeelah on October 24 because she ran away. (Dep. Toni Kakeh, attached as Exhibit B at 103.) Thus, any possible nominal reduction in damages that the jury may consider because of this incident is offset by the fact that the Defendant discriminatory conduct heavily contributed to the entire circumstance.

Additionally, the allegation of child abuse will have a particularly prejudicial effect on the jury because of the cultural overlays that are inconsistent with mainstream American values. That a father would deliberately shave the hair of his 16 year-old daughter because she did not wear a scarf that symbolizes modesty is a fact that many Americans find incredibly distasteful.

2

Defendant completely ignores this fact and rather urges the Court to compare this incident to a solicitation for prostitution charge at issue in the unreported case, *Bell v. Gonzales*, 2005 WL 3555490 (D.D.C. Dec. 23, 2005). (Opp. Brief at 3.) In *Bell*, an employee filed a claim against his employer for discrimination. 2005 WL 3555490 at 1. The Plaintiff was placed on travel restriction, suspended for 7 days without pay and placed on employment probation for one year due to the solicitation charge. *Id*. at 9. The Plaintiff's primary basis for his emotional distress damages were concerns over his job because he claimed his employment was central to his self esteem and "his very being". *Id*. Thus, the court found that the solicitation charge and its negative impact on the Plaintiff's job were highly probative to the Plaintiff's damages. *Id*.

In contrast to the solicitation charge in *Bell* which was at the very heart of the damages issue, the October 24 incident is at best peripheral and plays a minor part in the damages issues in this case. More importantly, the circumstances surrounding the October 24 incident are far more prejudicial to Plaintiff than the crime in *Bell*. The more central issue here – evidence that the relationship between the Plaintiff and his daughter was strained during this period – is not evidence that the Plaintiff seeks to exclude. Therefore, evidence of the October 24 incident and Nabeelah Kakeh as a witnesses should be excluded from the trial.

II. **PLAINTIFF'S WORK PERFORMANCE AND TERMINATION FROM MANNA IS WHOLLY IRRELEVANT TO MITIGATION OF DAMAGES**

In its Opposition Brief, Defendant attempts to completely re-write the law on mitigation of damages without citing a single source of law. (Opp. Brief at 5-6.) Defendant argues that "a reasonable fact-finder could infer that Plaintiff had difficulty finding employment based on his termination from Manna, whereby that termination, and not his termination from UPO, was causally related to the length of Plaintiff's period of employment." (*Id*. at 6.) The jury cannot make this determination because it is erroneous as a matter of law.

3

Failure to mitigate damages is an affirmative defense. For employment termination cases, "the universal rule is that an employee's damages will be mitigated only if the employer proves that similar employment opportunity was available" and that the plaintiff did not accept it. *Ballard v. El Dorado Tire Co.* 512 F.2d 901, 905 (5th Cir. 1975); *District of Columbia v. Jones*, 442 A.2d 512, 524 (D.C., 1982) ("If the employee has obtained a substitute job, or could obtain one by reasonable effort, he is chargeable with the income he obtains or reasonably could obtain in this fashion, but only if the employer sustains the burden of proving these facts.") (internal citations omitted.) An employer must ordinarily prove two elements to establish failure to mitigate: (1) substantially equivalent work was available, and (2) plaintiff did not exercise reasonable diligence to obtain the available employment. *Anastasio v. Schering Corp.,* 838 F.2d 701, 708 (3d Cir.1988).

Defendant's assertion that Plaintiff's termination from Manna, Inc. is relevant to the elements of a mitigation defense is just plain wrong. Defendant's own proposed jury instruction on mitigation forestalls the jury from reducing Plaintiff's compensatory damages due to his termination from Manna, Inc.: "The amount of backpay which Plaintiff would have earned had he continued to be employed by Defendant until the date of trial must be reduced by the amount which Plaintiff could have earned had he sought alternative employment with reasonable diligence." (Dkt. No. 84 at 51.) The only issue regarding mitigation, according to the Defendant's jury instructions, is whether the Plaintiff made a reasonable and diligent search for employment. A blemish on Plaintiff's previous employment record is not relevant because his employment record does not tend to prove or disprove whether Plaintiff made a reasonable and diligent search for employment. As the well-established rule goes, a defendant "takes his victim as he finds him". *United States v. Feola*, 420 U.S. 671, 685 (1975); *Bushong v. Park,*

4

837 A.2d 49, 55 (D.C. 2003).

### III. PLAINTIFF'S WORK AT A LIBYAN FUNDED NON-PROFIT ORGANIZATION AND THE PATENTLY FALSE ALLEGATION THAT HE WORKED FOR A MEMBER OF THE ROYAL SAUDI FAMILY ARE NOT RELEVANT.

Defendant has not asserted any basis for establishing the relevancy of: (1) Plaintiff's prior work for the People's Committee, a non-profit organization funded by the Libyan government; and (2) the baseless allegation that Plaintiff worked for a member of the Saudi royal family. Thus, they should be excluded.

In its Opposition Brief, Defendant again tries to widen the net of evidence that the Plaintiff is seeking to exclude in order to bolster its claims of relevancy. Defendant boldly titles this section of its brief, "Evidence relating to Plaintiff's Muslim Background is relevant and not overly prejudicial." (Opp. Brief at 6.) It is an entirely inaccurate embellishment that Plaintiff is seeking to exclude all evidence related to Plaintiff's Muslim background. (*See* Plaintiff's First Motion in Limine, Dkt. No. 96 at 1-2.) Thus, the Defendant's arguments against excluding this broad category of evidence are misguided.

The Defendant's only argument responsive to the Motion in Limine actually filed by the Plaintiff - a request to exclude evidence related to Plaintiff's work for the People's Committee and allegation of working for the Saudi Royal family - is the same unsupported mitigation argument that it put forth regarding Plaintiff's work for Manna, Inc.: "As with Plaintiff's former employment at Manna, his previous work for a Libyan non-profit organization and his alleged work for a Saudi Royal family member is relevant to what jobs Plaintiff was qualified to both seek and attain after his termination with UPO." (Opp. Brief at 7-8). Thus, it should be disregarded.

Defendant also argues that Plaintiff is "paranoid" regarding Defendant's non-existent

attempts to portray the Plaintiff as a "radical Muslim". (Opp. Brief at 7.) Paranoia, by definition, is not grounded in reality. The report by Defendant's own expert, Dr. Henderson, is dreadfully real. Plaintiff exhaustively quoted from Dr. Henderson's report in its Memorandum in Support of Plaintiff's First Motion in Limine demonstrating how Dr. Henderson plans on presenting irrelevant testimony regarding liability based on cultural stereotypes. Defendant has already taken steps down the road of this highly discriminatory trial strategy and Plaintiff requests the Court's assistance to ensure the trial is fair for all parties.

### IV. DR. HENDERSON'S PROFFERED TESTIMONY SHOULD BE EXCLUDED

Plaintiff seeks to exclude the following opinions by Dr. Henderson that invade the purview of the jury and, with the exception of opinion number one, have absolutely no relevance as to Plaintiff's emotional distress damages: (1) his opinion on whether Plaintiff is a credible witness; (2) his opinion on whether Plaintiff was a trouble-maker at UPO or his past employment; (3) his opinion that Plaintiff did not respect his boss because she was a woman; (4) his tacit opinion that Plaintiff has trouble working with women; (5) his opinion that Plaintiff created chaos at UPO or Manna, Inc.; (6) the prudency of the Plaintiff's decision to pursue this litigation; (7) speculation about Plaintiff's extra marital activities; (8) his opinion that the Plaintiff is an authoritarian, angry and heavy handed individual and behaves so with those who do not do things exactly as the Plaintiff feels they should be done; (9) his opinion that the Plaintiff has little patience and little capacity to work out problems through reasonable solutions in social situations; (10) his opinion that the Plaintiff's insight and judgment is impaired because of his cultural bias; and (11) any other opinion by Dr. Henderson that is not related to the issue of Plaintiff's emotional distress damages in this case.

Defendant argues that "each and every topic Plaintiff seeks to exclude regarding Dr.

Henderson's testimony relates to these damages issues and the alleged harm UPO caused Plaintiff", but Defendant fails to mention *even one* of the opinions at issue or explain how any of the opinions are relevant to Plaintiff's emotional distress damages or any other fact at issue in this case. (Opp. Brief at 9-10.) Indeed, the opinions that Plaintiff seeks to exclude are wholly unrelated to damages, and clearly demonstrate the Defendant's desperate trial strategy to smear the Plaintiff's character.

The issue is not whether Dr. Henderson is the "best qualified" expert to testify as to the opinions in 1-11, above. (Opp. Brief at 8.) Rather the proffered opinions are not proper subjects for expert testimony. The proffered opinions are plainly not "scientific, technical, or other specialized knowledge" that will assist the jury to understand the evidence or determine a fact at issue as required by Fed. R. Evid. 702.

The cases that Defendant relies upon in characterizing the issue as one of "best qualification" are not even helpful to its argument. Defendant cites to a New Jersey district court case for the proposition that the Federal Rules have a "liberal policy of admissibility" for expert testimony. *Lanni v. State of New Jersey*, 177 F.R.D. 295, 300 (D.N.J. 1998). However, the case articulates the same rule Plaintiff is using as a basis for excluding portions of Henderson's opinions: (1) the witness must be qualified as an expert; (2) the expert must testify to scientific, technical or specialized knowledge; and (3) the expert testimony must assist the trier of fact. *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 587-91 (1993). In *Lanni*, the Plaintiff sought to exclude Defendant's expert because he was trained in forensic psychiatry and thus not qualified to render opinions on neurological impairments. *Lanni*, 177 F.R.D. 295, 302-3 (D.N.J. 1998). The court found that while he was not "best qualified" to provide testimony regarding the neurological impairments, he was not excludable under the

7

*Daubert* test. *Id*.

Here, Dr. Henderson's proffered testimony is not even related to issues of medicine. For example, Dr. Henderson opines that the Plaintiff is pursuing meritless litigation when he should focus on his family, that Plaintiff is having an extra-marital affair, that Plaintiff caused chaos in the accounting department at Manna, Inc., and that Plaintiff has trouble working with women because he is Muslim. These opinions are a quantum leap from Dr. Henderson's forensic psychiatry expertise as compared to the difference between a neurologist and a psychiatrist. As such, Dr. Henderson's opinions fail to meet the elements of the *Daubert* test, are unduly prejudicial, invade the province of the jury and should be excluded.[1]

### V.     THE DEFENDANT FAILS TO SHOW ANY PREJUDICE IF THE *TRIAL* WERE BIFURCATED.

If this Court denies Plaintiff's First Motion in Limine, Plaintiff requests a bifurcated trial into a liability phase and then a damages phase to avoid prejudice as expressly permitted by Fed. R. Civil P. 41. Defendant's only argument against bifurcation is that due to the timing of Plaintiff's request, Defendant has incurred unnecessary discovery costs. (Opp. Brief at 10-11.) This argument fails basic logic. Trial bifurcation is a completely separate issue from discovery bifurcation, which neither party requested or received. This is the not the case of a large, complex class action that requires two phases of discovery – first on liability and then on

---

[1] Defendant's reliance on *Boyar v. Korean Air Lines Co., Ltd*. also does not help its case. 954 F. Supp. 4 (D.D.C. 1996). In *Boyar*, the question was whether expert testimony regarding the Plaintiff's future lost earnings was too speculative when the expert opined that the Plaintiff would have expanded his medical practice had he not died in an airplane accident. *Id*. at 7. The Court admitted the testimony. *Id*. Again, unlike Dr. Henderson's proffered testimony that is wholly outside the realm of medicine, the expert in *Boyar* offered opinions based on reasonable factual projections, as is the nature of computing unearned, future income in a wrongful death case.

Defendant's reliance on a footnote in *Wright v. United States* similarly fails as that case involved a murder trial and whether a psychiatric evaluation conducted on the Defendant was too remote in time to be reliable for a sanity determination. 250 F.2d 4, 9 (D.C. Cir. 1957). Plus, this 1957 opinion did not even address the current standard for evaluating admissibility of expert testimony because it predated the Fed. R. Evid. 403 by 15 years and *Daubert* by 41 years.

damages. Even if Plaintiff had requested trial bifurcation in August 2005 when the Meet and Confer statement that Defendant references was filed[2], there would have been no need to bifurcate the discovery phase. (Opp. Brief at 10.)

Furthermore, it is largely because of the discovery produced by the Defendant relating to damages – Dr. Henderson's report which reveals Defendant's strategy of smearing the Plaintiff's credibility based upon his culture and religion – that Plaintiff requests trial bifurcation as an alternative remedy to minimize the effect of prejudicial evidence.

There is no deadline by which to request bifurcation. Indeed, courts have granted bifurcation requests even after the trial has begun and reviewing courts have found no prejudice as a result. *See e.g., Berry v. Deloney*, 28 F.3d 604, 606 (7th Cir. 1994); *Saxion v. Titan C-Manufacturing, Inc.* 86 F.3d 553, 556-7 (6th Cir. 1996). The issue is whether bifurcation is warranted, not the timing of the request.

## CONCLUSION

For the reasons stated above, the Plaintiff's First Motion in Limine should be granted.

Respectfully Submitted,

\_/s/Regan Rush & /s/Vincent Melehy\_\_
Vincent Melehy, Esq.
D.C. Bar No. 415849
Regan Rush, *pro hac vice*
California Bar. No. 222837
Melehy & Associates, LLC
8403 Colesville Rd., Suite 610
Silver Spring, MD 20910
Phone: (301) 587-6364
Fax:    (301) 587-6308
Email: ovmelehy@melehylaw.com
       rrush@melehylaw.com

*Attorneys for Plaintiff*

---

[2] This of course assuming that Plaintiff could have anticipated Defendant's trial strategy of smearing the Plaintiff's credibility based on his culture and religion, in part through the use of expert testimony regarding damages, that early in the litigation.