# Plaintiff's Proposed Exhibit 84

U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES
OFFICE OF INSPECTOR GENERAL
OFFICE OF INVESTIGATIONS
## INVESTIGATIVE MEMORANDUM

United Planning Organization (UPO)
Washington DC
Grant Fraud/Embezzlement
3-04-00141-2

This is the closing memorandum in the case.

**Background.**  Two articles in the Washington Post (13 March 2004, 19 April 2004) have elaborated on possible fiscal improprieties at the organization – one of the largest community action agencies in the nation.  UPO receives approximately $30 Million from the U.S. Department of Health and Human Services ("DHHS") to provide Head Start services for low-income children, and numerous other community block grants in the District of Columbia.

DHHS' Administration for Children and Families conducted an on-site review of UPO in March 2004.  The review found among other things, a series of undocumented deposits and withdrawals by UPO's Executive Director and/or CFO totaling approximately $270,000 that had been charged to the Head Start Program.

The following agencies have also initiated investigations into the presumptively fraudulent activities at UPO:  The Federal Bureau of Investigation, The District of Columbia Office of Inspector General, the U.S. Department of Housing and Urban Development Office of Inspector General.  The USAO-DC has also assigned an AUSA to the case.

**The Investigation.**  The allegations detailed in the Washington Post stated that UPO misapplied and/or improperly spent its money.  The specific allegations can be summarized as follows:

- Improperly purchased a motorized fishing vessel,
- Incurred over $200,000 in credit card expenses unrelated to program activities,
- Made questionable loans to related community action agencies,
- Overpaid consultants for work performed on questionable contracts,
- Awarded contracts to a company owned by a member of its Board of Trustees,
- Spent over $10,000 on monthly cell phone bills for key personnel.

In addition to the information provided by the Washington Post, two UPO employees contacted the DHHS-OIG and provided financial statements, grants expenditure reports, and other documentation from the United Planning Organization.

This memorandum is the property of the Office of Investigations and is loaned to your agency; it and its contents may not be reproduced without written permission.  The memorandum is FOR OFFICIAL USE ONLY and its disclosure to unauthorized persons is prohibited.  Public availability shall be determined under 5 U.S.C. 552.

IM  (9/2003)

IM - Page 2 of 3

On June 1, 2004, lead case agents obtained a Consent to Search authorized by the interim director of UPO, Dana Jones, and General Counsel, Monica Beckham. The Consent was modified and a final version was signed on June 30, 2004.

For the following months, case agents were able to review: financial statements, audit reports, grant reports, Board Minutes, personal files, computer files, emails, receipts, credit card statements, bank account and related materials that may have contained indicia of program fraud or evidence of related criminal activity.

In addition to searching for and reviewing said documents, agents interviewed: auditors hired by UPO, former UPO employees, current UPO employees, UPO senior management, Grant Officials at DHHS, and the U.S. Department of Commerce.

Fishing Vessel Purchase. Agents reviewed purchase agreements, bank records, Ben Jennings' UPO files, and interviewed the former vessel owner and numerous UPO employees. Former UPO CEO Ben Jennings did negotiated for the purchase of a motorized vessel valued at over $200,000 without the full consent of the Board of Trustees. Two Board members were aware of the purchase. Additionally, Jennings and Program officers at UPO had researched and applied for grants to fund a job-development program that would utilize the vessel. UPO management has initiated legal proceedings to recover the down payment on the vessel, since they have never received the title for the vessel.

Credit Card Expenses. Agents reviewed credit card statements and receipts for years 2000 through 2003, and interviewed UPO personnel who utilized the cards. UPO management's oversight of the credit card use was minimal. Charges would be allocated to UPO cost centers after purchases were made. It is the contention of UPO management that numerous questionable expenses for unallowable goods, or non-program related services were to be paid from non-Federal funds, and/or UPO's line of credit. UPO management has cancelled both UPO credit cards and instituted a new system for vendor purchases.

Questionable Loans. Agents reviewed loan documents, interviewed UPO personnel, and served Inspector General subpoenas on recipients of these loans. UPO management asserts that former CEO Ben Jennings did not use Federal Funds in the process of granting loans to other DC community action agencies. The loans totaling over $100,000 are in default, and UPO General Counsel has begun administrative recovery procedures.

Monthly Cell Phone Bills. Agents reviewed cell phone invoices, payment records, and interviewed numerous UPO employees about cell phone usage. UPO management did not use, nor intent to use any Federal funds to pay for this expense. Cell phones issued to board members have been cancelled, and W-9 statements issued to make this fringe benefit taxable.

Overpaid Consultants on Questionable Contracts. Agents reviewed consultant contracts, Board Meeting Minutes, time sheets, and interviewed UPO employees. Consultants did perform work, and submit time sheets. Deliverables were in some cases late or incomplete.

IM  - Page 3 of 3

However, the presumptive improprieties related to the award and management of such contracts was more closely related to poor or inadequate management at UPO. Agent did not find evidence of any willful misapplication of Federal funds, or any other possible criminal activity associated with said contracts.

**Findings**. During interviews and the search, agents did not find evidence of willful misapplication of Federal program funds. The expenses incurred and/or associated with the allegations of improper use of funds total approximately $600,000.

The UPO 2003 Draft Financial Audit Report had segregated $604,370 in unrestricted expenses associated with "other programs." UPO management conceded that these expenses were unrelated to program activity. Nevertheless, UPO management also contended that UPO had planned to pay for these expenses from their $2 Million line of credit, and that UPO did not use Federal program funds, nor intend to do so, when it incurred these expenses.

On August 9, 2004, UPO senior management provided case agents with a presentation on their quality improvement plan, and recent management improvements.

This presentation also included a line-by-line review of UPO's line of credit account at AllFirst Bank. Line entries dated October 1, 2002 through January 13, 2003 reveal that UPO had more than sufficient funds to cover the $604,370 in unrestricted expenses associated with "other programs."

The presentation, the discussion following the presentation and a further review of documents provided by UPO have served to reassure the HHS case agent that UPO will exercise the appropriate level of oversight in the future expenditure and administration of Federal program funds.

**Recommendation.**  It is recommended that this case be closed.

Attachments
   1.  UPO Quality Improvement Plan Presentation
   2.  UPO August 9, 2004 Status Report
   3.  UPO QIP Management Fiscal Recovery