UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MOHAMMED AMIN KAKEH,          :
                              :
       Plaintiff,             :
                              :
       v.                     :       Civil Action No. 05-1271 (GK)
                              :
UNITED PLANNING ORGANIZATION, :
INC.,                         :
                              :
       Defendant.             :

**MEMORANDUM OPINION**

Plaintiff has filed a First Motion in Limine **[Dkt. #96]** to exclude a number of specific pieces of evidence. Defendant opposes all of Plaintiff's requests. Upon consideration of the Motion, the Opposition, and the Reply, the Court concludes that the Motion should be **granted in part and denied in part.**

Plaintiff has identified approximately 15 different pieces of testimony which he seeks to exclude on a number of different grounds. The Court will address each item of evidence *seriatim*. Many of the issues that Plaintiff raises in his Motion to exclude are indeed very difficult. In particular, Plaintiff argues that many of the pieces of evidence he seeks to exclude are culturally, religiously, and ethnically biased and are either designed to, or will in fact, raise prejudicial passions against Plaintiff as a Muslim. This very valid concern clashes with Defendant's equally valid concern that it be given the opportunity to present all relevant evidence for the jury to hear and assess in order to arrive at a well-reasoned and thoughtful verdict.

It is well established that the Federal Rules of Evidence tilt in favor of admissibility. See Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 588 (1993); Ambrosini v. Labarraque, 101 F.3d 129, 134 (D.C. Cir. 1996). What is more, as any experienced trial judge knows, in the

overwhelming number of cases, we can trust the conscientiousness, attentiveness, and good common sense of our jurors to carefully scrutinize and evaluate the testimony presented to them. The Court will be guided by these basic principles as well as, of course, by the specific Federal Rules of Evidence and applicable case law in deciding what are admittedly some very close questions as to the issues Plaintiff raises.

1. The most serious and difficult issue that Plaintiff raises is the request to exclude any testimony from his daughter, Nabeelah. Approximately six months after Plaintiff was terminated by Defendant United Planning Organization ("UPO") and while Plaintiff was still unemployed, his daughter Nabeelah had successive unexcused absences from school and on multiple occasions failed to return home for several days at a time. In addition, she was refusing to wear the traditional hijab covering her head when she left home. Nabeelah testified in her deposition that on one such occasion, October 23, 2004, after her parents brought her home, Plaintiff struck her on her feet with a bat and shaved her head. Plaintiff's wife witnessed and allegedly approved of this form of punishment. Nabeelah called the police and Plaintiff was arrested for misdemeanor child abuse. Plaintiff spent 12 days and 13 nights in jail. He successfully performed one year of probation and the charge was dismissed in conformity with Virginia law.

There is no question that such testimony, no matter how sensitively presented, would be highly prejudicial to Plaintiff and might well heighten existing negative perceptions of those who practice the Muslim religion and of their traditions and practices vis-a-vis their relationships with women. The issue is whether the danger of unfair prejudice substantially outweighs the probative value of such testimony.

Plaintiff seeks damages for his emotional distress caused by the termination of his employment and alleges that he suffered "humiliation, embarrassment, loss of self-esteem, and has otherwise been damaged psychologically and emotionally by Defendant's actions." See Pl.'s Second Am. Compl., ¶¶ 46, 51, 56, 61 **[Dkt. #23]**. The case law is clear that once a plaintiff makes claims of emotional distress, the defendant is allowed to explore any alternative or contributing causes to that emotional distress. Bell v. Gonzales, 2005 U.S. Dist. LEXIS 37879, *32 (D.D.C. Dec. 23, 2005); Lewis v. District of Columbia, 793 F.2d 361, 363 (D.C. Cir. 1986). In short, a plaintiff seeking damages for emotional distress essentially "opens the door" to intense scrutiny of his psychological status and history.

In this case, it is certainly possible that during Plaintiff's period of unemployment (a time of enormous pressure for any person), family difficulties with an adolescent child could have contributed to his emotional distress. Moreover, the incident of October 23, 2004 certainly had to have been, in and of itself, a traumatic incident for Plaintiff. When a law abiding citizen with no criminal record[1] is arrested, jailed for 12 days and 13 nights, and placed on probation for one year, that person almost certainly has to have suffered a significant emotional impact. Finally, in Plaintiff's own discovery responses, he admitted that he suffered "increase[d] difficulty in interaction with his family members, participating in family activities, and coping with normal stress." See Pl.'s Answers to Def.'s First Set of Interrogatories at 23. The October 23, 2004 incident with Plaintiff's daughter falls squarely within Plaintiff's own description of the emotional difficulties he was experiencing. Defendant has a right to explore these issues, painful as they may be, in front of a jury

---

[1] The Court will assume that Plaintiff has no criminal history since none has been alluded to in any of the papers filed.

which will weigh and make a fair determination as to what, if any, role the October 23, 2004 incident played in Plaintiff's emotional distress.  "Evidence that an event other than his [termination] could have caused the emotional suffering is highly probative on the issue of damages."  Bell, supra.

While Plaintiff may be correct that a limiting instruction will not totally eliminate the prejudicial potential that he fears, the Court will attempt to craft an instruction that will at least minimize it.  Therefore, the parties will be ordered to submit a proposed instruction on this issue no later than **November 26, 2008**, **at 12:00 noon.**

2.   a.   Plaintiff also seeks to exclude any evidence regarding the termination of his employment at Manna, Inc., which specializes in building homes for low income families, any evidence that he worked for the People's Committee, a non-profit organization funded by the Libyan government, and any evidence that he worked for a member of the Saudi royal family.  Plaintiff argues that his termination from Manna, on the basis that his style of management was not conducive to building a strong management team, was not based in any way on his performance and therefore is irrelevant to the issue of mitigation of damages in this case.  Defendant argues that Plaintiff's previous job performance and termination at Manna are relevant to his claim for compensatory damages.

Defendant's argument is unpersuasive.  First, it is hard to understand how Plaintiff's performance at a job prior to working at UPO could be relevant to an alleged failure to mitigate his damages after losing his job at UPO.  As Plaintiff points out, the only issue in considering mitigation of damages is whether an employee made responsible and diligent efforts to obtain a similar employment opportunity.  District of Columbia v. Jones, 442 A.2d 512, 524 (D.C. 1982).

    b. As to Plaintiff's request to exclude evidence concerning his work for the People's Committee and his alleged work for a member of the Saudi royal family, Plaintiff vigorously denies that he worked as an accountant for a member of the Saudi royal family. That fact is obviously a disputed fact to be decided by the jury after cross-examination of the relevant witness. Plaintiff's only argument supporting exclusion of testimony relating to his three years of employment at the People's Committee, is that "it will fuel the fear and negativity associated with Middle-Eastern Muslims in this highly vigilant and charged culture given the events of September 11, 2001." Pl.'s Mem. of Points and Authorities at 11.

 Defendant makes clear in its Opposition, at 6-7, that Plaintiff's religion and national origin are relevant to the actual charge of discrimination which he filed against UPO with the District of Columbia Office of Human Rights based upon his race, color, gender, national origin (Syrian), and religion (Muslim). See Pl.'s Second Am. Compl. at ¶¶ 41, 54. Plaintiff is claiming that UPO terminated his employment, in whole or in part, because he filed these charges of discrimination. In light of those allegations, it would be impossible to omit references to Plaintiff's Syrian background and Muslim religion. There is no way that UPO could defend itself against Plaintiff's allegations of discrimination and retaliation without referring to and presenting evidence about the underlying basis for those claims. As Plaintiff himself has noted, a defendant "takes his victim as he finds him." United States v. Feola, 420 U.S. 671, 685 (1975). In this case, that means that Plaintiff's religion and ethnic background, which are the reasons for the alleged discrimination, are integral elements of the case.

3. Plaintiff seeks to exclude certain opinions which will be offered by Defendant's expert witness, Dr. John Henderson, a forensic psychiatrist.[2] Plaintiff's request will be **granted** as to portions of the testimony and **denied** as to other portions.

   a. Dr. Henderson will not be allowed to offer purely speculative and highly inflammatory testimony about Plaintiff's alleged extra-marital activities. When an expert's testimony is based on "guesswork, speculation or conjecture," it should be excluded. Joy v. Bell Helicopter Textron, Inc., 999 F.2d 549, 568 (D.C. Cir. 1993).

   b. Plaintiff seeks to exclude any references in Dr. Henderson's testimony to Plaintiff's personnel file at Manna and the reasons for his termination. Dr. Henderson's testimony is being offered only to rebut Plaintiff's claim for emotional distress. The facts regarding Plaintiff's problems at Manna are not relevant to this issue, and, therefore, Dr. Henderson will not be allowed to testify about material in his personnel file at his previous employment.

   c. Dr. Henderson will be allowed to testify that he concluded that Plaintiff was not telling him the truth. In reaching this conclusion, Dr. Henderson relied, with great specificity, on contradictions between what Plaintiff told him and what facts were contained in the voluminous medical records he studied. While an expert witness cannot usurp the jury's function by opining on the general credibility or honesty of a person, it is certainly within the expertise of a forensic psychiatrist to opine on whether the individual he is evaluating is telling him the truth during his examination.

---

[2] No Daubert hearing was ever requested to assess the reliability and "fit" of his testimony. See Daubert, supra, and Ambrosini, supra.

   d. As to all the remaining testimony of Dr. Henderson which Plaintiff seeks to exclude, the request is **denied.** It all falls within Dr. Henderson's area of expertise, and uses facts upon which Dr. Henderson relied in reaching his expert conclusions. On cross-examination, Plaintiff will have a full opportunity to establish whether the facts upon which Dr. Henderson relied are accurate or not.  Many of the facts which Dr. Henderson discusses -- such as Plaintiff's wife's training as a medical records specialist, the fact that she works as a housewife in the home rather than outside the home as a medical records specialist, the fact that Plaintiff's wife takes an active role in his medical treatment, etc. -- are all part of the standard family history which any competent psychiatrist would gather in performing a psychiatric assessment.  Any cultural biases which Plaintiff perceives in Dr. Henderson's phrasing can be thoroughly aired in cross-examination.

   4. Plaintiff requests, if the evidence pertaining to the incident involving Nabeelah and the particular portions of Dr. Henderson's testimony are not excluded, that the Court bifurcate the trial into a liability phase and a damages phase in order to eliminate any confusion or bias stemming from the testimony the jurors have heard.  Plaintiff's request is **denied**. First, it is far too late in the very lengthy history of this litigation to make a serious request for bifurcation; trial is scheduled to begin in less than two weeks.  Second, there is no justification for such a request under Rule 42(b) of the Federal Rules of Civil Procedure.

  For all these reasons, Plaintiff's First Motion in Limine is **granted in part and denied in part**.

November 19, 2008           /s/_____
                    Gladys Kessler
                    United States District Judge